## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| ACPRODUCTS, INC., ACPI WOOD PRODUCTS, LLC, CABINETWORKS GROUP MICHIGAN, LLC, CABINETWORKS GROUP MIDDLEFIELD, LLC, MASTER WOODCRAFT CABINETRY L.L.C., AND SMART, LLC<br><br>                              *Plaintiffs,*<br><br>v.<br><br>UNITED STATES,<br><br>                              *Defendant*. | Court No. 24-00155 |

## **COMPLAINT**

Plaintiffs, ACProducts, Inc., ACPI Wood Products, LLC, Cabinetworks Group Michigan, LLC, Cabinetworks Group Middlefield, LLC, Master Woodcraft Cabinetry, L.L.C., and Smart, LLC (collectively, the "Cabinetworks Companies" or "Plaintiffs") by and through their attorneys, alleges and states as follows:

## **ADMINISTRATIVE DETERMINATION TO BE REVIEWED**

1.     This action is brought pursuant to 28 U.S.C. § 1581(c).  The Cabinetworks Companies contest the final scope ruling issued by the U.S. Department of Commerce ("Commerce") concerning certain wooden cabinets that are further processed in Malaysia.  *See* Memorandum from Michael Romani, Senior International Trade Compliance Analyst, Office I, Antidumping and Countervailing Duty Operations, through Alex Villanueva, Senior Director, Office I, Antidumping and Countervailing Duty Operations, to Scot Fullerton, Acting Deputy

Assistant Secretary for Antidumping and Countervailing Duty Operations, *SUBJECT: Wooden Cabinets and Vanities and Components Thereof From the People's Republic of China – Final Scope Ruling on Certain Wooden Cabinets that Are Further Processed in Malaysia* (Jul. 10, 2024) ("Final Scope Ruling"); *see also Wooden Cabinets and Vanities and Components Thereof From the People's Republic of China: Final Scope Determination, Certification Requirements, and Recission of Circumvention Inquiries on the Antidumping and Countervailing Duty Orders*, 89 Fed. Reg. 58,110 (Dep't of Commerce Jul. 17, 2024) ("*Final Scope Determination Publication*"); *Wooden Cabinets and Vanities and Components Thereof From the People's Republic of China: Final Scope Determination, Certification Requirements, and Recission of Circumvention Inquiries on the Antidumping and Countervailing Duty Orders; Correction*, 89 Fed. Reg. 63,404 (Aug. 5, 2024) ("*Final Scope Determination Publication Correction*").

## JURISDICTION

2.     The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c), as this action is commenced under Section 516A(a)(2)(A)(ii) and (B)(vi) of the Tariff Act of 1930, *as amended,* 19 U.S.C. § 1516a(a)(2)(A)(ii) and (B)(vi).

## STANDING

3.     ACProducts, Inc., ACPI Wood Products, LLC, and Cabinetworks Group Middlefield, LLC are United States importers of subject merchandise, and ACProducts, Inc., Master Woodcraft Cabinetry, L.L.C., Smart, LLC, ACPI Wood Products, LLC, Cabinetworks Group Michigan, LLC, and Cabinetworks Group Middlefield, LLC are manufacturers and producers in the United States of a domestic like product.  Plaintiffs, therefore, are interested

parties within the meaning of 19 U.S.C. § 1516a(f)(3), 19 U.S.C. § 1677(9)(A) and 28 U.S.C. § 2631(k)(1).

4.    Plaintiffs participated in the contested proceeding by filing factual information and legal arguments.  Accordingly, Plaintiffs have standing to commence this action pursuant to 28 U.S.C. § 2631(c).

## TIMELINESS OF ACTION

5.    Plaintiffs commenced this action by filing a Summons on August 16, 2024, within 30 days after Commerce mailed its Final Scope Ruling.  *See* Memorandum from Michael A. Romani, Senior International Trade Compliance Analyst, AD/CVD Operations, Office IV, Enforcement and Compliance, to The File, *SUBJECT: Antidumping Duty Order on Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China: Service of Final Scope Ruling* (Jul. 22, 2024).  Plaintiffs file this Complaint within 30 days of its filing the Summons.  The Summons and Complaint are, therefore, timely filed pursuant to 19 U.S.C. § 1516a(a)(2)(A)(ii) and USCIT Rules 3(a)(2) and 6(a).

6.    Because Plaintiffs' Complaint is being filed within the statutorily prescribed time period, this action is timely.

## HISTORY OF THE ADMINISTRATIVE PROCEEDING

7.    On April 21, 2020, Commerce published the antidumping ("AD") and countervailing duty ("CVD") orders on imports of wooden cabinets and vanities and components thereof ("wooden cabinets") from China.  *See Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China: Antidumping Duty Order*, 85 Fed. Reg. 22,126 (Apr. 21, 2020) ("*AD Order*"); *Wooden Cabinets and Vanities and Components Thereof from the*

*People's Republic of China: Countervailing Duty Order*, 85 Fed. Reg. 22,134 (Apr. 21, 2020)

("*CVD Order*") (collectively, "*Orders*"). The scope of the *Orders*, in pertinent part, is as

follows:

> The merchandise subject to this order consists of wooden cabinets and vanities that are for permanent installation (including floor mounted, wall mounted, ceiling hung or by attachment of plumbing), and wooden components thereof. Wooden cabinets and vanities and wooden components are made substantially of wood products, including solid wood and engineered wood products (including those made from wood particles, fibers, or other wooden materials such as plywood, strand board, block board, particle board, or fiberboard), or bamboo. Wooden cabinets and vanities consist of a cabinet box (which typically includes a top, bottom, sides, back, base blockers, ends/end panels, stretcher rails, toe kicks, and/or shelves) and may or may not include a frame, door, drawers and/or shelves. Subject merchandise includes wooden cabinets and vanities with or without wood veneers, wood, paper or other overlays, or laminates, with or without non-wood components or trim such as metal, marble, glass, plastic, or other resins, whether or not surface finished or unfinished, and whether or not completed.
>
> . . .
>
> Subject merchandise includes the following wooden component parts of cabinets and vanities: (1) wooden cabinet and vanity frames (2) wooden cabinet and vanity boxes (which typically include a top, bottom, sides, back, base blockers, ends/end panels, stretcher rails, toe kicks, and/or shelves), (3) wooden cabinet or vanity doors, (4) wooden cabinet or vanity drawers and drawer components (which typically include sides, backs, bottoms, and faces), (5) back panels and end panels, (6) and desks, shelves, and tables that are attached to or incorporated in the subject merchandise.
>
> . . .
>
> Subject merchandise also includes wooden cabinets and vanities and in-scope components that have been further processed in a third country, including but not limited to one or more of the following: trimming, cutting, notching, punching, drilling, painting, staining, finishing, assembly, or any other processing that would not otherwise remove the merchandise from the scope of the order if performed in the country of manufacture of the in-scope product.

*AD Order*, 85 Fed. Reg. at 21,132-21,133; *CVD Order*, 85 Fed. Reg. 22,135.

8.       The American Kitchen Cabinet Alliance ("AKCA"), a petitioner in the underlying investigation, requested Commerce to concurrently initiate a scope inquiry and a country-wide circumvention inquiry to determine whether imports of wooden cabinets and vanities ("WCV") and components thereof produced using WCV components manufactured in China that undergo further processing in Malaysia are covered by the AD and CVD Orders on WCV and components thereof from China.  *See* Letter from Schagrin Associates to Dep't of Commerce, *Re: Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China – Scope Ruling Application and Request for Circumvention Inquiry Concerning Imports of Wooden Cabinets and Vanities and Components Thereof from Malaysia* (Apr. 22, 2022) ("Scope Request").  The Scope Request requested a scope ruling for the following:

> {W}ooden cabinets and vanities ("WCV") and components thereof produced using WCV components (*i.e.*, frames, boxes, doors, drawers, panels, and any attached or incorporated desks, shelves, and tables) whether finished or unfinished, that are manufactured in the People's Republic of China ("China") and that undergo further processing (*e.g.*, trimming, cutting, notching, punching, drilling, painting, staining, finishing, assembly, repackaging, combining into a "ready to assemble" WCV unit, *etc.*) in Malaysia before being exported from Malaysia to the United States.

*Id*. at 5.  At the time of the initial scope request, the AKCA stated that the "WCV components are produced in China.  The WCV components are then shipped from China to Malaysia for further processing before finished WCV components, assembled WCV units ready for installation, and WCV units packaged in 'ready to assemble' flat packs are exported from Malaysia to the United States."  *Id.* at 8.

9.       Commerce issued a questionnaire to the AKCA, requesting clarification of the product covered by the April 22, 2022 Scope Request.  Letter from Dep't of Commerce to American Kitchen Cabinet Alliance, *Re: Wooden Cabinets and Vanities and Components*

*Thereof From the People's Republic of China – Scope Ruling Application and Request for Circumvention Inquiry Concerning Imports of Wooden Cabinets and Vanities and Components Thereof from Malaysia: Questionnaire* (May 13, 2022) ("Supplemental Scope Questionnaire").

10.    In response to the Supplemental Scope Questionnaire, the AKCA explained that the products covered in the scope application as:

- are any and all merchandise that meets the scope of the orders that are further processed in Malaysia and that continue to meet the scope of the orders after further processing in Malaysia and upon entry into the United States;

- include but are not limited to the following components of wooden cabinets and vanities if they are made in China and further processed in Malaysia: (1) wooden cabinet and vanity frames (2) wooden cabinet and vanity boxes (which typically include a top, bottom, sides, back, base blockers, ends/end panels, stretcher rails, toe kicks, and/or shelves), (3) wooden cabinet or vanity doors, (4) wooden cabinet or vanity drawers and drawer components (which typically include sides, backs, bottoms, and faces), (5) back panels and end panels, and (6) desks, shelves, and tables that are attached to or incorporated in the subject merchandise; and

- include all unassembled, assembled and/or "ready to assemble" (RTA) wooden cabinets and vanities, also commonly known as "flat packs," if they are made in China and further processed in Malaysia, except to the extent such merchandise is already covered by the scope of the orders.

Letter from Schagrin Associates to Dep't of Commerce*, Re: Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China – Response to Request for Additional Information* (May 17, 2022) ("Supplemental Questionnaire Response"); *see also* Memorandum

from Michael A. Romani, International Trade Compliance Analyst, AD/CVD Operations Office I, Enforcement and Compliance, *RE: Scope Inquiry of Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China, Subject Initiation of Scope Inquiry* (May 24, 2022) ("Initiation Memorandum") at 2. Further, the AKCA provided the following non-exhaustive list of processing scenarios:

- Scenario 1: finished wooden doors, drawer fronts, and frames produced in China are combined in Malaysia with wooden cabinet and vanity boxes and drawers produced in Malaysia;

- Scenario 2: semifinished wooden doors, drawer fronts, and frames produced in China are further processed in Malaysia (by, for example trimming, cutting, notching, punching, drilling, painting, staining, or other finishing processes), and combined in Malaysia with wooden cabinet and vanity boxes and drawers produced in Malaysia;

- Scenario 3: semifinished parts of wooden cabinet and vanity doors, drawer fronts, and frames (including the rails, stiles, and panels) produced in China are further processed in Malaysia (by, for example trimming, cutting, notching, punching, drilling, painting, staining, or other finishing processes, including the assembly of the parts to produce fully finished WCV doors, drawer fronts, and frames) and combined in Malaysia with wooden cabinet and vanity boxes and drawers produced in Malaysia; and

- Scenario 4: finished wooden toe kicks produced in China combined in Malaysia with all other components necessary for a complete cabinet or vanity that are produced in Malaysia.

*See* Supplemental Questionnaire Response at 5-6.

11.      On May 24, 2022, Commerce initiated the scope inquiry.  *See* Initiation
Memorandum.

12.      On June 10, 2022, Commerce initiated the two country-wide circumvention
proceedings.  *See Wooden Cabinets and Vanities and Components Thereof From the People's*
*Republic of China: Initiation of Circumvention Inquiries on the Antidumping and Countervailing*
*Duty Orders*, 87 Fed. Reg. 35,499 (June 10, 2022).

13.      On July 7, 2022, the Cabinetworks Companies, formerly petitioners in the
underlying AD and CVD investigations, submitted comments in opposition to the initiation of
the scope inquiry filed by the AKCA.  *See* Letter from Sandler, Travis & Rosenberg, P.A. to
Dep't of Commerce, *Re: Wooden Cabinets and Vanities and Components Thereof from the*
*People's Republic of China: Scope Comments* (Jul. 7, 2022).  In the comments, the Cabinetworks
Companies objected to the AKCA's attempt to unlawfully expand the scope of the *Orders* to
cover countries and merchandise not subject to the orders.  Plaintiff further argued, in part, that
(1) the AKCA's scope request is deficient and (2) the scope of the *Orders* is unambiguous and
does not cover products broadly described in Scenario 2 or 3.  Other interested parties also
submitted comments in opposition to the scope inquiry.  *See e.g.*, Letter from deKieffer &
Horgan, PLLC to Dep't of Commerce, *RE: Wooden Cabinets and Vanities and Components*
*Thereof from the People's Republic of China: Post-Initiation Comments on Petitioner's Request*
*for Scope Inquiry* (Jul. 7, 2022); Letter from Grunfeld Desiderio Lebowitz Silverman Klestadt
LLP to Dep't of Commerce, *Re: Prominent Target Sdn Bhd's Comments and Factual*
*Information: Scope Inquiry (Malaysian Processed) in the Antidumping/Countervailing Duty*
*Orders on Wooden Cabinets and Vanities ("WCV") from the People's Republic of China* (Jul. 7,
2022); Letter from Mowry & Grimson, PLLC to Dep't of Commerce, *Re: Antidumping and*

*Countervailing Duty Orders on Wooden Cabinets and Vanities from the People's Republic of China: Comments and Rebuttal Factual Information on Anti-Circumvention Inquiry Request* (Jul. 7, 2022).

14.    On March 16, 2023, Commerce issued its preliminary scope determination, determining that Scenario 1 wooden cabinets and vanities and components thereof (wooden cabinets) that contain doors, drawer faces and frame components produced in China and combined in Malaysia with wooden cabinet boxes and drawer boxes produced in Malaysia and exported to the United States are Chinese in origin and, thus, covered by the scope of the *Orders*. Memorandum from Michael Romani, Senior International Trade Compliance Analyst, Office I, Antidumping and Countervailing Duty Operations, through Alex Villaneuva, Senior Director, Office I, Antidumping and Countervailing Duty Operations, to James Maeder, Deputy Assistant Secretary for Antidumping and Countervailing Duty Operations, *Subject: Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China – Preliminary Scope Determination* (Mar. 16, 2023) ("Preliminary Scope Determination").  With respect to Scenarios 2 and 3, Commerce found that the record contained insufficient information to issue a preliminary scope determination and requested additional information and comments.  *Id.* at 1, 51.  Commerce requested additional information concerning certain factors related to its substantial transformation analysis, specifically, factor 4, 5, and 6 (*i.e.*, the cost of production, the nature and sophistication of production in the third country, and the level of investigation in the third country).  Commerce also found that for Scenario 4 wooden cabinets (*i.e.*, containing a toe kick produced in China and all other wooden parts produced in Malaysia) are third country in origin and not covered by the scope of the *Orders*.  *Id.* at 1-2.

15.    Commerce's Preliminary Scope Determination found that it was not appropriate
to implement a certification process, determining that Commerce intended to evaluate whether a
certification regime was appropriate in the circumvention inquiry.  *Id*. at 42.

16.    On April 13, 2023, the AKCA submitted additional information addressing
substantial transformation for Scenarios 2 and 3.  *See* Letter from Schagrin Associates to Dep't
of Commerce, *Re: Wooden Cabinets and Vanities and Components Thereof from the People's
Republic of China – Factual Information* (Apr. 13, 2023).  The submission contained new factual
information concerning the phases of production for Scenario 2, defined in this submission as
semifinished doors, drawer faces, and frames, and Scenario 3, defined in this submission as
semifinished component parts of doors, drawer faces, and frames.  *Id*.

17.    On May 15, 2023, the Cabinetworks Companies submitted comments on
Commerce's Preliminary Scope Determination.  *See* Letter from Sandler, Travis & Rosenberg,
P.A. to Dep't of Commerce, *Re: Wooden Cabinets and Vanities and Components thereof from
The People's Republic of China: Comments on Preliminary Scope Determination* (May 15,
2023) (Cabinetworks' Post-Preliminary Comments").  In these comments, the Cabinetworks
Companies argued that (1) Commerce continued to consider ill-defined scenarios in its
Preliminary Scope Determination based on a deficient scope ruling application; (2) the plain
language of the China Orders does not include the semi-finished components identified in
Scenarios 2 and 3; (3) only components specified in the *Orders* are subject merchandise; and (4)
Commerce improperly failed to consider 19 C.F.R. § 351.225(k)(3) in its Preliminary Scope
Determination.  Other interested parties commented on Commerce's Preliminary Scope
Determination and further argued that Commerce erred in finding that the intended end-use and
essential characteristics criteria in Scenarios 2 and 3 weigh in favor of finding no substantial

transformation occurred and that the administrative record does not contain useable information for Commerce to properly analyze the value-added factor. *See e.g.*, Letter from deKieffer & Horgan, PLLC to Dep't of Commerce, *RE: Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China: DH Exporters' Comments on the Preliminary Determination* (May 15, 2023).

18.    The AKCA submitted a case brief addressing the Preliminary Scope Determination. *See* Letter from Schagrin Associates to Dep't of Commerce, *Re: Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China: Petitioner's Case Brief* (May 15, 2023).

19.    On May 22, 2023, the Cabinetworks Companies submitted rebuttal comments in response to the AKCA's affirmative comments. *See* Letter from Sandler, Travis & Rosenberg, P.A. to Dep't of Commerce, *Re: Wooden Cabinets and Vanities and Components thereof from The People's Republic of China: Rebuttal Comments* (May 22, 2023). The Cabinetworks Companies argued that the AKCA's comments demonstrated the fundamental flaws of its own initial scope ruling application by focusing on the non-exhaustive list of scenarios, which was deficient on its face. *Id*. at 1. The AKCA failed to again identify a "particular product" as required by 19 C.F.R. § 351.225(c)(1). *Id*. at 2. The undefined scenarios fail to provide information necessary for Commerce to issue a proper determination of whether a particular product is subject merchandise or, for interested parties such as the Cabinetworks Companies, from adequately participating in these proceedings given the lack of understanding, definition, and notice as to the product(s) under consideration. Due to these deficiencies, the Cabinetworks Companies requested that Commerce rescind the scope inquiry with respect to Scenarios 2 and 3. *Id*.

20.    The Cabinetworks Companies' rebuttal comments also reiterated that the plain

language of the *Orders* set forth the components that are deemed subject merchandise and semi-

finished components are not covered by this list.  *Id.* at 2.  The scope language of the *China*

*Orders* provides, in pertinent part:

> Subject merchandise includes the following wooden component
> parts of cabinets and vanities: (1) wooden cabinet and vanity frames
> (2) wooden cabinet and vanity boxes (which typically include a top,
> bottom, sides, back, base blockers, ends/end panels, stretcher rails,
> toe kicks, and/or shelves), (3) wooden cabinet or vanity doors, (4)
> wooden cabinet or vanity drawers and drawer components (which
> typically include sides, backs, bottoms, and faces), (5) back panels
> and end panels, (6) and desks, shelves, and tables that are attached
> to or incorporated in the subject merchandise.

*AD Order* at 22,133; *CVD Order* at 22,135.

In the event that Commerce did not rescind the scope inquiry concerning Scenarios 2 and 3, the

Cabinetworks Companies submitted that Commerce must limit its analysis to the Scenario 2 and

Scenario 3 definitions provided in AKCA's post-preliminary new factual information.  *Id.* at 3.

The information provided in the AKCA's New Factual Information Submission for Scenario 2 and

3 was narrower than that provided for in the Scope Request and the Supplemental Questionnaire

Response.  *Id.* at 4.  Finally, the Cabinetworks Companies argued that Commerce's rejection of a

certification process in its Preliminary Determination was proper.  *Id.* at 4.  Other interested parties

addressed the flaws in the substantial transformation analysis.  *See e.g.,* Letter from deKieffer &

Horgan, PLLC to Dep't of Commerce, *RE: Wooden Cabinets and Vanities and Components*

*Thereof from the People's Republic of China: DH Exporters' Rebuttal Comments* (May 22, 2023).

21.    On September 28, 2023, Commerce issued its Post-Preliminary Analysis, which

conducted a substantial transformation analysis on Scenarios 2 and 3 and revised its analysis for

Scenario 1.  *See* Memorandum from Michael Romani, Senior International Trade Compliance

Analyst, Office I, Antidumping and Countervailing Duty Operations, to James Maeder, Deputy

Assistant Secretary for Antidumping and Countervailing Duty Operations, *SUBJECT: Scope*

*Inquiry on Wooden Cabinets and Vanities and Components Thereof from the People's Republic*

*of China: Post-Preliminary Analysis* (Sept. 28, 2023) ("Post-Preliminary Analysis"); *see also*

Memorandum from Michael Romani, Senior International Trade Compliance Analyst, Office I

Antidumping and Countervailing Duty Operations, *SUBJECT: Wooden Cabinets and Vanities*

*and Components Thereof from the People's Republic of China – Post-Preliminary Analysis*

*Memorandum* (Sept. 28, 2023) ("Post-Preliminary Analysis Memorandum").  Commerce's Post-

Preliminary Analysis continued to find that Scenario 1 is Chinese origin and therefore covered

by the scope of the *Orders*.  *Id.* at 1.  The Post-Preliminary Analysis found that Scenarios 2 and 3

are Chinese in origin and thus covered by the scope of the *Orders*.  *Id.*  Finally, Commerce

continued to find that Scenario 4 is third country in origin and not covered by the scope of the

*Orders*.  *Id.*  The Post-Preliminary Analysis did not address a certification regime.

22.    The Cabinetworks Companies filed a case brief addressing the Post-Preliminary

Analysis on October 19, 2023.  *See* Letter from Sandler, Travis & Rosenberg, P.A. to Dep't of

Commerce, *Re: Wooden Cabinets and Vanities and Components thereof from The People's*

*Republic of China: Cabinetworks Companies' Response to Post-Preliminary Scope Analysis*

(Oct. 19, 2023).  As set forth in the case brief, Commerce's Post-Preliminary Analysis continued

to consider ill-defined scenarios based on a deficient scope ruling application and Commerce's

substantial transformation analysis in Commerce's Post-Preliminary scope analysis was flawed.

*Id.* at 3-7.

23.    Commerce provided interested parties the opportunity to rebut the AKCA's

arguments concerning certification.  *See* Letter from John McGowan, Program Manager, Office

I, AD/CVD Operations, Enforcement and Compliance, to All Interested Parties, *Re: Scope Determination of Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China: Providing an Opportunity to Rebut Arguments Concerning Certification* (Dec. 4, 2023).

24.     The Cabinetworks Companies submitted rebuttal comments addressing certification. *See* Letter from Sandler, Travis & Rosenberg, P.A. to Dep't of Commerce, *Re: Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China: Cabinetworks Companies and Vietbac's Rebuttal Comments on Certification* (Dec. 11, 2023). As noted in these comments, Commerce correctly rejected a certification process in its preliminary determination. *Id.* at 1-2. Further, the Cabinetworks Companies argued that the certification regime would impose unnecessary burdens on interested parties, Commerce should not impose certification processes on hypothetical products, and the requested certification regime amounted to an unreasonable restraint on free trade. *Id.* at 2-5.

25.     On April 3, 2024, Commerce issued a proposal to establish a certification requirement. *See* Memorandum from Michael Romani, Senior International Trade Compliance Analyst, Office I, Antidumping and Countervailing Duty Operations, to James Maeder, Deputy Assistant Secretary for Antidumping and Countervailing Duty Operations, *Subject: Scope Inquiry on Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China: Proposal to Establish a Certification Requirement* (Apr. 3, 2024). Commerce determined that, because the products of the scope inquiry are facially indistinguishable from non-subject merchandise, Commerce found that a certification regime was appropriate to aid in enforcement and prevent evasion of the *Orders*. *Id.* at 8.

26.      The Cabinetworks Companies and other interested parties submitted comments on the proposed certification regime.  *See e.g.,* Letter from Sandler, Travis & Rosenberg, P.A. to Dep't of Commerce, *Re: Wooden Cabinets and Vanities and Components thereof from the People's Republic of China: Cabinetworks' Comments on Proposed Certification Requirement* (Apr. 24, 2024); Letter from deKieffer & Horgan, PLLC to Dep't of Commerce, *RE: Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China: DH Exporters' Comments on Certification* (Apr. 24, 2024).  In its comments, the Cabinetworks Companies objected to the certification regime for several reasons.  *See* Cabinetworks' Comments on Proposed Certification at 1-7.  For instance, the Cabinetworks Companies reiterated that a certification process should not be imposed on hypothetical products and must provide U.S. importers clarity.  *Id.* at 3.  Additionally, the Cabinetworks Companies set forth that the certification proposal creates unreasonable, unnecessary, and burdensome requirements on freely traded goods.  *Id.* at 3-5.  Further, the Cabinetworks Companies highlighted that it is CBP's role as an enforcement agency, not Commerce, to review documents at the time of entry as accurate and complete.

27.      On July 10, 2024, Commerce issued its Final Scope Ruling.  *See* Final Scope Ruling; *see also Final Scope Determination Publication*; *Final Scope Determination Publication Correction*.  The Final Scope Ruling determined that Scenarios 1, 2, and 3 are Chinese in origin and, thus covered by the *Orders*.  Further, Commerce continued to find that Scenario 4 is third country in origin and, thus not covered by the scope of the *Orders*.  In issuing its determination, Commerce further found that the scope inquiries were properly initiated.  *Id.* at 8-11.  Commerce also determined that the list of components set forth in the scope language was an illustrative list of subcomponent parts that did not describe all subject components.  *Id.* at 11-12.  Commerce

conducted a substantial transformation analysis pursuant to 19 C.F.R. § 351.226(j) to determine the country of origin for the Scenarios. *Id*. 12-23. Based on Commerce's analysis, Commerce continued to find that Scenarios 1, 2, and 3 are within the scope of the *Orders* as the country of origin was determined to be China. *Id*. at 13, 40. Commerce also determined that all seven prongs of the substantial transformation analysis were weighted equally. *Id*. at 24-25. Finally, Commerce's Final Scope Ruling determined that it had the authority to implement a certification regime in a scope inquiry, established a country-wide certification regime, found that such a regime was reasonable, and determined to not make changes to the certifications or to alter the language or narrow the meaning of the illustrative scenario descriptions for purposes of the certification regime. *Id*. at 26-38.

28.     With respect to Commerce's substantial transformation analysis conducted pursuant to 19 C.F.R. § 351.226(j), Commerce's Final Scope Ruling continued to find that the intended end use supports finding China as the country of origin for all scenarios. *Id*. at 14-15. Commerce continued to determine that the cost of production analysis from the Post-Preliminary Analysis supports finding that substantial transformation occurred in the third country for Scenarios 3 and 4, but it did not occur in the third country for Scenarios 1 and 2. *Id*. at 15-18. Commerce's found that the nature and sophistication of third country processing alone supported the finding that substantial transformation occurred in the third country for Scenarios 3 and 4 but did not occur in the third country with respect to Scenarios 1 and 2. *Id*. at 18-19. Commerce found that the level of investment in the third country prong supports a finding that substantial transformation occurred in the third country with respect to Scenarios 2 and 3 but not for Scenario 1. *Id*. at 20-21. Finally, Commerce considered the essential component or characteristics pursuant to 19 C.F.R. § 351.226(j)(2), Commerce accounted for where each

wooden component part started production to assess country of origin. *Id*. at 23. Overall, Commerce determined that this factor alone indicated that substantial transformation occurred in the third country for Scenario 4 but not for Scenarios 1, 2, and 3. *Id*. 21-24.

## STATEMENT OF THE CLAIMS

29.   In the following respects, and for the other reasons demonstrated on the record of the administrative proceeding, Commerce's Final Scope Ruling is unsupported by substantial evidence and otherwise not in accordance with law.

## Count I

30.   Plaintiffs herein incorporate by reference paragraphs 1 through 29, *supra*, of this complaint.

31.   Commerce's initiation of the inquiries and Final Scope Ruling failed to comply with the requirements set forth in 19 C.F.R. § 351.225(c) of Commerce's regulations. The products under consideration were not adequately defined, were hypothetical, and/or vague descriptions of product scenarios. Commerce's acceptance of the Scope Ruling Request and Supplemental Questionnaire Response was flawed and the scope inquiries were not properly initiated.

32.   The Final Scope Ruling is not based on particular products and is, therefore, not supported by substantial evidence and not in accordance with law.

## Count II

33.   Plaintiffs herein incorporate by reference paragraphs 1 through 32, *supra*, of this complaint.

34.   Commerce's Final Scope Ruling is inconsistent with the plain language of the scope of the *Orders*. Specifically, Commerce's analysis concerning "semifinished" components

set forth in Scenarios 2 and 3 is flawed.  The scope of the *Orders* provides for the further

manufacturing of "in-scope components" in third countries that would not otherwise remove the

product from the scope.  *See e.g.*, *AD Order* at 22,133.  The scope language explicitly refers to

further manufacturing in third countries that would "not otherwise remove the merchandise from

the scope," thus requiring that the component be subject merchandise (*i.e.*, meet product

specifications/characteristic to being with (*i.e.*, at the time of entry into Malaysia).  Under

Scenarios 2 and 3, because the "semifinished" enter Malaysia as non-scope merchandise (*i.e.*,

"semifinished"), the products do not satisfy the scope requirements that both the components

produced in China and the components further processed in a third country and exported to the

United States meet the physical characteristics of the scope of the *Orders*.  Commerce's Final

Scope Ruling failed to consider the plain language of the scope.

35.    Commerce's Final Scope Determination unlawfully expands the scope of the

*Orders* to include semi-finished components, is not based upon substantial evidence, or

otherwise in accordance with law.

## Count III

36.    Plaintiffs herein incorporate by reference paragraphs 1 through 35, *supra*, of this

complaint.

37.    Commerce's Final Scope Ruling is inconsistent with the 19 C.F.R.

§ 351.225(k)(1) factors, including the description of the merchandise contained in the petition.

The (k)(1) factors, including the petition, demonstrates that the scope of the investigation

covered finished components, not semi-finished components.  Further, Commerce's Final Scope

Ruling failed to adequately define the meaning of "semi-finished."  Commerce's Final Scope

Ruling for Scenarios 2 and 3 is therefore not based upon substantial evidence, or otherwise in accordance with law.

## Count IV

38.    Plaintiffs herein incorporate by reference paragraphs 1 through 37, *supra*, of this complaint.

39.    Commerce's Final Scope Ruling found that the scope of the *Orders* did not list every individual component part included under the *Orders*; rather, Commerce found that the scope provided an illustrative list of subject components.  Commerce's scope analysis is inconsistent with the plain language of the scope of the *Orders*.  Semi-finished component parts are not part of the list of components set forth in the scope language.  Commerce's Final Scope Ruling is therefore not based upon substantial evidence, or otherwise in accordance with law.

## Count V

40.    Plaintiffs herein incorporate by reference paragraphs 1 through 39, *supra*, of this complaint.

41.    Commerce found it was necessary to conduct a substantial transformation analysis to determine the country of origin of the third country WCV produced using the four scenarios pursuant to 19 C.F.R. § 351.226(j).  Commerce individually examined the factors of 19 C.F.R. § 351.226(j) in determining that Scenarios 1, 2, and 3 were country of origin China and, therefore, subject to the *Orders*.  Commerce's determination concerning the 19 C.F.R. § 351.226(j) prongs, specifically intended end use, cost of production and value added, nature and sophistication of third country processing, level of investment in the third country, and the essential component or characteristics analysis, was flawed and unsupported by record evidence.

Commerce's Final Scope Ruling with respect to Scenarios 1-3 is therefore not based upon substantial evidence or otherwise in accordance with law.

### Count VI

42.    Plaintiffs herein incorporate by reference paragraphs 1 through 41, *supra*, of this complaint.

43.    In the Final Scope Ruling, Commerce implemented a country-wide certification regime for all wooden cabinets exported from Malaysia.  The imposition of a certification regime given the facts of this proceeding was unreasonable as it created a complicated, burdensome, and unruly regime given the hypothetical production scenarios set forth in the underlying proceeding. Further, the certification regime imposed unfair burdens on importers of fairly traded goods that Commerce itself confirmed falls outside the scope of the *Order.*  Finally, the certification regime created unnecessary legal hurdles for U.S. importers while ignoring CBP's enforcement capabilities for products subject to AD and/or CVD duties.

44.    Commerce's country wide certification regime is unreasonable, not based upon substantial evidence, or otherwise in accordance with law.

Court No. 24-00155

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs, ACProducts, Inc., ACPI Wood Products, LLC, Cabinetworks Group

Michigan, LLC, Cabinetworks Group Middlefield, LLC, Master Woodcraft Cabinetry, L.L.C.,

and Smart, LLC, request that this Court:

(1) Hold that Commerce's Final Scope Ruling is unreasonable, not supported by substantial evidence and otherwise not in accordance with law;

(2) Remand this matter to Commerce with instructions to issue a new determination that is consistent with this Court's decision; and

(3) Grant such other and further relief as this Court may deem just and appropriate.

Respectfully Submitted,

<u>/s/ Kristen S. Smith</u>
Kristen S. Smith
Sarah E. Yuskaitis
**SANDLER TRAVIS & ROSENBERG, P.A.**
1300 Pennsylvania Avenue, N.W.
Suite 400
Washington, D.C. 20004
Tel: (202) 730-4965
Fax: (202) 842-2247

*Attorneys for ACProducts, Inc., ACPI Wood Products, LLC, Cabinetworks Group Michigan, LLC, Cabinetworks Group Middlefield, LLC, Master Woodcraft Cabinetry, L.L.C., and Smart, LLC*

Dated: September 16, 2024