## UNITED STATES COURT OF INTERNATIONAL TRADE

### BEFORE: THE HONORABLE STEPHEN ALEXANDER VADEN

| | |
|---|---|
| ACPRODUCTS, INC., ACPI WOOD PRODUCTS, LLC, CABINETWORKS GROUP MICHIGAN, LLC, CABINETWORKS GROUP MIDDLEFIELD, LLC, MASTER WOODCRAFT CABINETRY L.L.C., AND SMART, LLC, | |
| *Plaintiffs,* | Before: Stephen Alexander Vaden, Judge |
| v. | Court Nos. 24-00155, 24-00156 |
| UNITED STATES, | |
| *Defendant,* | |
| *and* | |
| AMERICAN KITCHEN CABINET ALLIANCE, | |
| *Defendant-Intervenor.* | |

## ORDER

Upon consideration of the Motion for Judgment on the Agency Record filed by Plaintiffs ACProducts, Inc., ACPI Wood Products, LLC, Cabinetworks Group Michigan, LLC, Cabinetworks Group Middlefield, LLC, Master Woodcraft Cabinetry L.L.C., and Smart, LLC ("collectively "Cabinetworks Companies," or "Plaintiffs"), and upon all other papers and proceedings herein, it is hereby

**ORDERED** that plaintiffs' Motion for Judgment on the Agency Record is granted; and it is further;

**ORDERED** that this action is remanded to the Department of Commerce with instructions to issue a new determination that is consistent with this Court's decision.

Dated:_____                    _____

    New York, New York                    Stephen Alexander Vaden, Judge

## UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE: THE HONORABLE STEPHEN ALEXANDER VADEN, JUDGE

| | |
|---|---|
| ACPRODUCTS, INC., ACPI WOOD PRODUCTS, LLC, CABINETWORKS GROUP MICHIGAN, LLC, CABINETWORKS GROUP MIDDLEFIELD, LLC, MASTER WOODCRAFT CABINETRY L.L.C., AND SMART, LLC, | |
| *Plaintiffs,* | Before: Stephen Alexander Vaden, Judge |
| v. | Court Nos. 24-00155, 24-00156 |
| UNITED STATES, | |
| *Defendant,* | |
| *and* | |
| AMERICAN KITCHEN CABINET ALLIANCE, | |
| *Defendant-Intervenor.* | |

## THE CABINETSWORKS COMPANIES RULE 56.2 MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT ON THE AGENCY RECORD

William Marshall
**Sandler Travis & Rosenberg, P.A.**
1300 Pennsylvania Avenue, N.W.
Suite 400
Washington, DC 20004
Tel: (212) 549-0138
Fax: (202) 842-2247

*Counsel to ACProducts, Inc., ACPI Wood Products, LLC, Cabinetworks Group Michigan, LLC, Cabinetworks Group Middlefield, LLC, Master Woodcraft Cabinetry L.L.C., and Smart, LLC*

Dated: February 26, 2025

**TABLE OF CONTENTS**

**Contents**

I.    INTRODUCTION AND STATEMENT OF THE CASE ............................................ 9

II.   RULE 56.2 STATEMENT ............................................................................................ 9

   A.   Issues Presented ................................................................................................ 10

III.  STATEMENT OF FACTS ......................................................................................... 10

IV.   STANDARDS OF REVIEW ..................................................................................... 24

   A.   Substantial Evidence Standard ......................................................................... 24

   B.   Arbitrary and Capricious Standard ................................................................. 26

V.    ARGUMENT ............................................................................................................... 28

   C.   Commerce's Initiation of Its Scope Inquiry was Unlawful. ........................... 28

   D.   Commerce's Findings in the Final Scope Ruling Were Unlawful And Not Supported By Substantial Evidence. ................................................................................................... 32

   E.   Commerce's Final Scope Ruling is inconsistent with the plain language of the scope of the Orders. .......................................................................................................... 34

   F.   Commerce failed to consider the (k)(1) factors and failed support its findings with substantial evidence. ......................................................................................................... 35

   G.   Commerce in the Final Scope Ruling concluded that out of scope merchandise could be transformed into in scope merchandise based on third country processing. ..... 36

   H.   Commerce's Substantial Transformation Analysis Is Not Supported By Substantial Evidence. .......................................................................................................... 40

   I.   Commerce's Analysis Lacks Substantial Evidence Due to Insufficient Record Support ................................................................................................................................ 42

   J.   Commerce Misapplied the Substantial Transformation Test, Contrary to Law and Precedent ............................................................................................................................. 44

   K.   Commerce Failed to Address Contrary Evidence and Arguments, Violating Procedural Norms .............................................................................................................. 45

      1.   Commerce's Reliance on an Incomplete Record Undermines Its Determination  46

      2.   Analysis ................................................................................................... 46

   L.   Commerce's Country-Wide Certification Regime Is Unnecessary, Overly Burdensome, And Lacks Legal Authority ........................................................................ 51

VI.   CONCLUSION ........................................................................................................... 53

## TABLE OF AUTHORITIES

**Cases**

*Amerijet Int'l, Inc. v. Pistole*, 753 F.3d 1343,
  1350-52 (D.C. Cir. 2014) ................................................................................. 29
*Anderson v. U.S. Sec'y of Agric.*, 462 F. Supp. 2d
  1333, 1339 (Ct. Int'l Trade 2006) .................................................................. 28
*Atlantic
  Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984) ............. 26
*Bell Supply Co., LLC v. United States*, 179 F. Supp. 3d 1082, 1092 (Ct. Int'l Trade 2016) ......... 35
*Bowen v. American Hospital Ass'n*, 476 U.S. 610,
  626 (1986) ...................................................................................................... 27
*Changzhou Wujin Fine Chemical Factory
  Co. v. United States*, 701 F.3d 1367, 1377 (Fed. Cir. 2012) ......................... 27
*Chevron U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837,
  842-443, *reh'g denied* 468 U.S. 1227 (1984) ............................................... 27
*Consolidated Edison Corp. v. NLRB*, 305 U.S. 197, 230 (1938) ......................... 27
*Cooper Tire & Rubber Co. v. United States*, 217 F. Supp. 3d 1373, 1380 (Ct. Int'l Trade 2017) 28
*CS Wind Vietnam Co. v. United States*, 832 F.3d 1367, 1375-81 (Fed. Cir. 2016) ...................... 28
*Diversified Products Corp. v. United States*, 572 F. Supp. 883, 888 (1983) ................................. 26
*Jinan Yipin Corp. v. United States*, 800 F. Supp. 2d 1226, 1233-1234 (Ct. Int'l Trade Sep. 26,
  2011) ............................................................................................................... 26
*Mittal Steel Point Lisas Ltd. v. United States*, 548 F.3d 1375, 1380-1381 (Fed. Cir. 2008) ......... 26
*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 48 (1983) ............... 28
*Novosteel SA v. United States*, 284 F.3d 1261, 1276 (Fed. Cir. 2002) ......................................... 27
*Perfectus Aluminum, Inc. v. United States*, 391 F. Supp. 3d 1341, 1356 (Ct. Int'l Trade 2019) ... 30
*RHP
  Bearings Ltd. v. United States*, 288 F.3d 1334, 1347 (Fed. Cir. 2002) ....................................... 28
*Serampore Industries Pvt. Ltd. v. United States*, 675 F. Supp. 1354, 1357 (Ct. Int'l Trade) ........ 27
*Serv. Women's Action Network v. Sec'y of Veterans Affairs*, 815 F.3d 1369,
  1380 (Fed. Cir. 2016) .................................................................................... 28
*Shenzhen Xinboda Indus. Co. v. United States*, 279 F. Supp. 3d 1265, 1277 (Ct. Int'l Trade 2017)
  ......................................................................................................................... 29
*Shenzhen Xinboda Indus. Co. v. United States*, 279
  F. Supp. 3d 1265, 1305 (Ct. Int'l Trade 2017) ............................................... 27
*SNR Roulements v. United States*, 402 F.3d 1358, 1361 (Fed Cir. 2005) ..................................... 25
*Suramerica de Aleaciones Laminadas, C.A. v. United States*, 44 F.3d 978, 985 (Fed.
  Cir. 1994) ......................................................................................................... 26
*Universal Camera Corp.
  v. NLRB*, 340 U.S. 474, 477 (1951) ................................................................ 26
*USX Corp. v. United States*, 655 F.
  Supp. 487, 489 (Ct. Int'l Trade 1987) ............................................................ 26
*Wheatland Tube Co. v. United States*, 161 F.3d 1365, 1370 (Fed. Cir. 1998) ....................... 35, 37

*Yangzhou Bestpak Gifts*
    *& Crafts*, 716 F.3d 1370, 1378 (Fed. Cir. 2013) ........................................................ 27

**Statutes**

19 U.S.C. §
    1516a(b)(1)(B)(i)....................................................................................................... 25, 27
19 U.S.C. § 1517(b)(3) ................................................................................................... 53
19 U.S.C.
    § 1677f(i)(3)(A) ......................................................................................................... 28
19 U.S.C.§ 1592....................................................................................................... 54
5 U.S.C. § 706(2)(A)...................................................................................................... 27

**Adminsirtative Authority**

*Regulations to Improve Administration and Enforcement of Antidumping and Countervailing*
    *Duty Laws*, 85 Fed. Reg. 49,472, 49,491 (Dep't of Commerce August 13, 2020) .................. 53
*Regulations To Improve Administration and Enforcement of Antidumping and Countervailing*
    *Duty Laws*, 85 Fed. Reg. 49472, 49477 (Aug. 13, 2020)........................................... 30
*Regulations to Improve Administration and Enforcement of Antidumping and Countervailing*
    *Duty Laws*, 86 Fed. Reg. 52,300, 52,362-64 (Dep't of Commerce September 20, 2021) ........ 53
*Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China:*
    Antidumping Duty Order, 85 Fed. Reg. 22,126 (Apr. 21, 2020) ................................. 12
*Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China:*
    Countervailing Duty Order, 85 Fed. Reg. 22,134 (Apr. 21, 2020)............................. 12
*Wooden Cabinets and Vanities and Components Thereof From the People's Republic of China:*
    Final Scope Determination, Certification Requirements, and Recission of Circumvention
    Inquiries on the Antidumping and Countervailing Duty Orders, 89 Fed. Reg. 58,110 (Dep't
    Commerce, July 17, 2024) .......................................................................................11

**Regulations**

**19 C.F.R. § 351.225(a)** ............................................................................................... 29
19 C.F.R. **§ 351.225(c)** ......................................................................................... 29, 30
19 C.F.R. § 351.225(c)(1) ............................................................................................ 20
19 C.F.R. § 351.225(k)(1) ............................................................................................ 37
19 C.F.R. § 351.226(j)(1) ............................................................................................. 42
19 C.F.R. § 351.228 ..................................................................................................... 52
*Canadian Solar, Inc. v.United States*, 918 F.3d 909, 917 (Fed. Cir. 2019).................................. 45

## UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE: THE HONORABLE STEPHEN ALEXANDER VADEN, JUDGE

| | |
|---|---|
| ACPRODUCTS, INC., ACPI WOOD PRODUCTS, LLC, CABINETWORKS GROUP MICHIGAN, LLC, CABINETWORKS GROUP MIDDLEFIELD, LLC, MASTER WOODCRAFT CABINETRY L.L.C., AND SMART, LLC, | |
| *Plaintiffs,* | Before: Stephen Alexander Vaden, Judge |
| v. | Court Nos. 24-00155, 24-00156 |
| UNITED STATES, | |
| *Defendant,* | |
| *and* | |
| AMERICAN KITCHEN CABINET ALLIANCE, | |
| *Defendant-Intervenor.* | |

## THE CABINETSWORKS COMPANIES RULE 56.2 BRIEF IN SUPPORT OF MOTION FOR JUDGMENT ON THE AGENCY RECORD

Plaintiffs ACProducts, Inc., ACPI Wood Products, LLC, Cabinetworks Group Michigan, LLC, Cabinetworks Group Middlefield, LLC, Master Woodcraft Cabinetry L.L.C., and Smart, LLC ("collectively the "Cabinetworks Companies," or "Plaintiffs") by and through its attorneys, hereby submit the following brief in accordance with Rule 56.2(c) of the Rules of the Court of International Trade. For the reasons below, the Cabinetworks Companies respectfully request that the Court hold that Commerce's Final Scope Ruling is unreasonable, not supported by substantial evidence, and otherwise not in accordance with law; remand this matter to Commerce

with instructions to issue a new determination that is consistent with this Court's decision; and grant such other and further relief as this Court may deem just and appropriate.

## I.    INTRODUCTION AND STATEMENT OF THE CASE

Commerce's Final Scope Rulings are unsupported by substantial evidence and are not in accordance with law.  Notably, Commerce's initiation of the scope inquiries failed to comply with the requirements set forth in 19 C.F.R. § 351.225 of Commerce's regulations and its own practice.  Further, Commerce's findings in the Final Scope Rulings are inconsistent with the plain language of the scope of the *Orders* and fail to adequately consider the factors set forth in 19 C.F.R. § 351.225(k)(1).

Second, Commerce's determination concerning the 19 C.F.R. § 351.226(j) prongs – specifically intended end use, cost of production and value added, nature and sophistication of third country processing, level of investment in the third country, and the essential component or characteristics analysis – are flawed and unsupported by substantial evidence.

Finally, Commerce imposed a complicated, and burdensome certification regime based upon hypothetical production scenarios and imposed unfair burdens on importers of fairly traded goods that Commerce itself confirmed falls outside the scope of the *Order*.  Accordingly, the Cabinetworks Companies' Motion for Judgment on the Agency Record should be granted.

## II.    RULE 56.2 STATEMENT

### A.    Administrative Determination Subject to Appeal

Pursuant to 28 U.S.C. § 1581(c), this action seeks judicial review of the U.S. Department of Commerce's ("Commerce") final scope ruling concerning certain wooden cabinets and vanities and components ("WVC") that are further processed in Malaysia and Vietnam.  *See*

*Wooden Cabinets and Vanities and Components Thereof From the People's Republic of China:* Final Scope Determination, Certification Requirements, and Recission of Circumvention Inquiries on the Antidumping and Countervailing Duty Orders, 89 Fed. Reg. 58,110 (Dep't Commerce, July 17, 2024). ("Final Det.") **MPR 231**[1] and **VPR 757**[2] incorporating Commerce's Final Scope Ruling Memorandum on Certain Wooden Cabinets that Are Further Processed in Malaysia ("MY Ruling") **MPR 229** and its Final Scope Ruling Memorandum on Certain Wooden Cabinets that Are Further Processed in the Socialist Republic of Vietnam ("VN Ruling") **VPR 754** (collectively "Final Scope Rulings");.

### A. Issues Presented

The Cabinetworks Companies bring this action to resolve the following issues:

1. Whether Commerce's Final Scope Ruling, which was initiated based on hypothetical scenarios and ignored the plain language in the regulation, was proper.

2. Whether Commerce's Final Scope Rulings, which ignored certain deficiencies outlined by the parties, was proper.

3. Whether Commerce may establish an unnecessary and overly burdensome country-wide certification regime, despite lacking any statutory authority to do so.

### III.    STATEMENT OF FACTS

On April 21, 2020, Commerce published the antidumping ("AD") and countervailing duty ("CVD") orders on imports of WCV and Components thereof from China.  *See Wooden*

---

[1] "MPR" refers to documents from the public record of the scope inquiry from Malaysia. "MCR" refers to documents from the confidential record from the scope inquiry from Malaysia ECF DOC No. 20-1 & 21-2 under Court No 24-155.

[2] "VPR." refers to documents from the public record of the scope inquiry from Vietnam. "VCR" refers to documents from the confidential record from the scope inquiry from Vietnam, ECF DOC No. 20-1 & 21-2 under Court No. 24-156.

*Cabinets and Vanities and Components Thereof from the People's Republic of China:*

Antidumping Duty Order, 85 Fed. Reg. 22,126 (Apr. 21, 2020) ("AD Order"); *Wooden Cabinets*

*and Vanities and Components Thereof from the People's Republic of China:* Countervailing

Duty Order, 85 Fed. Reg. 22,134 (Apr. 21, 2020) ("CVD Order") (collectively, the "Orders").

**Scope of the *Orders***

The scope of the *Orders*, in pertinent part, is as follows:

The merchandise subject to these *Orders* consists of wooden cabinets and vanities that are for permanent installation (including floor mounted, wall mounted, ceiling hung or by attachment of plumbing), and wooden components thereof.  Wooden cabinets and vanities and wooden components are made substantially of wood products, including solid wood and engineered wood products (including those made from wood particles, fibers, or other wooden materials such as plywood, strand board, block board, particle board, or fiberboard), or bamboo.  Wooden cabinets and vanities consist of a cabinet box (which typically includes a top, bottom, sides, back, base blockers, ends/end panels, stretcher rails, toe kicks, and/or shelves) and may or may not include a frame, door, drawers and/or shelves.  Subject merchandise includes wooden cabinets and vanities with or without wood veneers, wood, paper or other overlays, or laminates, with or without non-wood components or trim such as metal, marble, glass, plastic, or other resins, whether or not surface finished or unfinished, and whether or not completed.

Wooden cabinets and vanities are covered by these *Orders* whether or not they are imported attached to, or in conjunction with, faucets, metal plumbing, sinks and/or sink bowls, or countertops.  If wooden cabinets or vanities are imported attached to, or in conjunction with, such merchandise, only the wooden cabinet or vanity is covered by the scope.

Subject merchandise includes the following wooden component parts of cabinets and vanities:  (1) wooden cabinet and vanity frames (2) wooden cabinet and vanity boxes (which typically include a top, bottom, sides, back, base blockers, ends/end panels, stretcher rails, toe kicks, and/or shelves), (3) wooden cabinet or vanity doors, (4) wooden cabinet or vanity drawers and drawer components (which typically include sides, backs, bottoms, and faces), (5) back panels and end panels, (6) and desks, shelves, and tables that are attached to or incorporated in the subject merchandise.

Subject merchandise includes all unassembled, assembled and/or "ready to assemble" (RTA) wooden cabinets and vanities, also commonly known as "flat packs," except to the extent such merchandise is already covered by the scope of antidumping and countervailing duty orders on *Hardwood Plywood from the People's Republic of China. See Certain Hardwood Plywood Products from the People's Republic of China: Amended Final Determination of Sales at Less Than Fair Value, and Antidumping Duty*

*Order*, 83 FR 504 (January 4, 2018); *Certain Hardwood Plywood Products from the People's Republic of China: Countervailing Duty Order*, 83 FR 513 (January 4, 2018). RTA wooden cabinets and vanities are defined as cabinets or vanities packaged so that at the time of importation they may include: (1) wooden components required to assemble a cabinet or vanity (including drawer faces and doors); and (2) parts (*e.g.*, screws, washers, dowels, nails, handles, knobs, adhesive glues) required to assemble a cabinet or vanity. RTAs may enter the United States in one or in multiple packages.

Subject merchandise also includes wooden cabinets and vanities and in-scope components that have been further processed in a third country, including but not limited to one or more of the following: trimming, cutting, notching, punching, drilling, painting, staining, finishing, assembly, or any other processing that would not otherwise remove the merchandise from the scope of the *Orders* if performed in the country of manufacture of the in-scope product.

Excluded from the scope of these *Orders*, if entered separate from a wooden cabinet or vanity are:

> (1) Aftermarket accessory items which may be added to or installed into an interior of a cabinet and which are not considered a structural or core component of a wooden cabinet or vanity. Aftermarket accessory items may be made of wood, metal, plastic, composite material, or a combination thereof that can be inserted into a cabinet and which are utilized in the function of organization/accessibility on the interior of a cabinet; and include:
>
> > • Inserts or dividers which are placed into drawer boxes with the purpose of organizing or dividing the internal portion of the drawer into multiple areas for the purpose of containing smaller items such as cutlery, utensils, bathroom essentials, *etc*.
> > • Round or oblong inserts that rotate internally in a cabinet for the purpose of accessibility to foodstuffs, dishware, general supplies, *etc*.
>
> (2) Solid wooden accessories including corbels and rosettes, which serve the primary purpose of decoration and personalization.
> (3) Non-wooden cabinet hardware components including metal hinges, brackets, catches, locks, drawer slides, fasteners (nails, screws, tacks, staples), handles, and knobs.
> (4) Medicine cabinets that meet all of the following five criteria are excluded from the scope: (1) wall mounted; (2) assembled at the time of entry into the United States; (3) contain one or more mirrors; (4) be packaged for retail sale at time of entry; and (5) have a maximum depth of seven inches.

Also excluded from the scope of the *Orders* are:

> (1) All products covered by the scope of the antidumping duty order on *Wooden Bedroom Furniture from the People's Republic of China. See*

> *Notice of Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order: Wooden Bedroom Furniture from the People's Republic of China*, 70 FR 329 (January 4, 2005).
>
> (2)    All products covered by the scope of the antidumping and countervailing duty orders on *Hardwood Plywood from the People's Republic of China. See Certain Hardwood Plywood Products from the People's Republic of China: Amended Final Determination of Sales at Less Than Fair Value, and Antidumping Duty Order*, 83 FR 504 (January 4, 2018); *Certain Hardwood Plywood Products from the People's Republic of China: Countervailing Duty Order*, 83 FR 513 (January 4, 2018).

Imports of subject merchandise are classified under Harmonized Tariff Schedule of the United States (HTSUS) statistical numbers 9403.40.9060 and 9403.60.8081. The subject component parts of wooden cabinets and vanities may be entered into the United States under HTSUS statistical number 9403.90.7080. Although the HTSUS subheadings are provided for convenience and customs purposes, the written description of the scope of these *Orders* is dispositive.

*AD Order*, 85 Fed. Reg. at 22,131-33; *CVD Order*, 85 Fed. Reg. at 22,135-36.

**History of the Inquiries**

On April 22, 2022, American Kitchen Cabinet Alliance ("AKCA"), a petitioner in the underlying proceeding, requested that Commerce concurrently initiate a scope inquiry and a country-wide circumvention inquiry to determine whether imports of WCV produced using WCV components manufactured in China that undergo further processing in Malaysia or Vietnam are covered by the *Orders*. *See* Letter from AKCA, *Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China – Scope Ruling Application and Request for Circumvention Inquiry Concerning Imports of Wooden Cabinets and Vanities and Components Thereof from Vietnam* (Apr. 22, 2022) ("Viet. Scope Request") (**VCR** 1-7) (**VPR 1-5**); *see also* Letter from AKCA, *Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China – Scope Ruling Application and Request for Circumvention Inquiry Concerning Imports of Wooden Cabinets and Vanities and Components Thereof from*

*Malaysia* (Apr. 22, 2022) ("Malay. Scope Request") (**MCR 1-16**) (**MPR 1-9**).  Specifically,

AKCA inquired whether the following items were covered by the scope of the *Orders*:

> {W}ooden cabinets and vanities ("WCV") and components thereof produced using
> WCV components (*i.e.*, frames, boxes, doors, drawers, panels, and any desks,
> shelves, and tables that are attached to or incorporated in subject merchandise),
> whether finished or unfinished, that are manufactured in China and that undergo
> further processing (*e.g.,* trimming, cutting, notching, punching, drilling, painting,
> staining, finishing, assembly, repackaging, and combining into a "ready to
> assemble" WCV unit) in {Malaysia/Vietnam} before being exported from
> {Malaysia/Vietnam} to the United States.

Malay. Scope Request at 2-3; Viet. Scope Request at 5.  At the time of the initial scope request,

AKCA stated that WCV components are produced in China and then shipped for further processing

and/or assembly in Malaysia/Vietnam into finished WCV components, assembled WCV units

ready for installation, and WCV units packaged in RTA flat packs.  *See* Malay. Scope Request at

8; Viet. Scope Request at 8.

On May 13, 2022, Commerce requested AKCA clarify the products in question.  Letter

from Dep't of Commerce to AKCA, *Wooden Cabinets and Vanities and Components Thereof From*

*the People's Republic of China – Scope Ruling Application and Request for Circumvention Inquiry*

*Concerning Imports of Wooden Cabinets and Vanities and Components Thereof from Vietnam:*

*Questionnaire* (May 13, 2022) (**VPR 32**)); Letter from Dep't of Commerce to AKCA, *Wooden*

*Cabinets and Vanities and Components Thereof from the People's Republic of China – Scope*

*Ruling Application and Request for Circumvention Inquiry Concerning Imports of Wooden*

*Cabinets and Vanities and Components Thereof from Malaysia: Questionnaire* (May 13, 2022)

(**MPR 31**) (collectively "Supplemental Scope Questionnaires") ("Please *clarify the product* that is

covered by your April 22, 2022, application for scope and circumvention inquiries.")  In particular,

Commerce requested that AKCA "{b}e as specific as possible on the WCV and components for

which you seek scope and circumvention."  *Id*.

On May 17, 2022, AKCA responded, stating that the products covered in the scope application:

- include any and all merchandise that meets the scope of the orders that are further processed in Vietnam and continue to meet the scope of the orders after further processing in Vietnam and upon entry into the United States;
- include but are not limited to the following components of wooden cabinets and vanities if they are made in China and further processed in Vietnam: (1) wooden cabinet and vanity frames; (2) wooden cabinet and vanity boxes (which typically include a top, bottom, sides, back, base blockers, ends/end panels, stretcher rails, toe kicks, and/or shelves); (3) wooden cabinet or vanity doors; (4) wooden cabinet or vanity drawers and drawer components (which typically include sides, backs, bottoms, and faces); (5) back panels and end panels; and (6) desks, shelves, and tables that are attached to or incorporated in the subject merchandise; and
- include all unassembled, assembled and/or "ready to assemble" (RTA) wooden cabinets and vanities, also commonly known as "flat packs," if they are made in China and further processed in Vietnam, except to the extent such merchandise is already covered by the scope of the orders.

Letter from AKCA, *Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China – Response to Request for Additional Information* (May 17, 2022) ("Supplemental Questionnaire Response") (V.P.R. 38); *see* Letter from AKCA, *Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China – Response to Request for Additional Information* (May 17, 2022) (collectively "Supplemental Questionnaire Responses") (**MPR 37**).

Further, AKCA provided the following "non-exhaustive" list of processing scenarios:

- Scenario 1: finished wooden doors, drawer fronts, and frames produced in China are combined in Vietnam {or Malaysia} with wooden cabinet and vanity boxes and drawers produced in Vietnam {or Malaysia};
- Scenario 2: semifinished wooden doors, drawer fronts, and frames produced in China are further processed in Vietnam {or Malaysia} (by, for example trimming, cutting, notching, punching, drilling, painting, staining, or other finishing processes), and combined in Vietnam {or Malaysia} with wooden cabinet and vanity boxes and drawers produced in Vietnam {or Malaysia};
- Scenario 3: semifinished parts of wooden cabinet and vanity doors, drawer fronts, and frames (including the rails, stiles, and panels) produced in China are further processed in Vietnam {or Malaysia} (by, for example trimming, cutting, notching, punching, drilling, painting, staining, or other finishing processes, including the assembly of the parts to produce fully finished WCV doors, drawer fronts, and frames) and combined in Vietnam

{or Malaysia} with wooden cabinet and vanity boxes and drawers produced in Vietnam {or Malaysia}; and

- Scenario 4:  finished wooden toe kicks produced in China combined in Vietnam {or Malaysia} with all other components necessary for a complete cabinet or vanity that are produced in Vietnam {or Malaysia}.

*See* Supplemental Questionnaire Responses at 5-6 (**MPR 37**) (**VPR 38**).

On May 24, 2022, Commerce initiated a country-wide scope inquiry into whether the WCV and components identified in the petitioner's scope inquiry requests are subject to the *Orders.  See Memorandum, Scope Inquiry of Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China,* (May 24, 2022) (**VPR. 43**) (**MPR. 41**) ("Initiation Memorandums").  In addition, Commerce also initiated the two country-wide circumvention proceedings.  *Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China:  Initiation of Circumvention Inquiries on the Antidumping and Countervailing Duty Orders*, 87 Fed. Reg. 35,499 (Dep't of Commerce June 10, 2022) (*Circumvention Initiation Notice*).

On July 7, 2022, the Cabinetworks Companies, submitted comments in opposition to the initiation of the scope inquiry filed by AKCA.  *See* Letter from the Cabinetworks Companies, *Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China: Scope Comments* (Jul. 7, 2022) (**V.P.R. 292**) (**V.C.R. 31**) (**M.P.R. 81**) (**M.C.R.40**) ("Cabinetworks Companies Scope Comments").

Furthermore, the Cabinetworks Companies objected to AKCA's attempt to unlawfully expand the scope of the *Orders* to cover countries and merchandise not subject to the orders. Plaintiff argued, in part, that:  (1) AKCA's scope request was deficient because it failed to meet the requirements of 19 C.F.R. § 225(c) as it did not provide a detailed description of the particular product covered by the request; and (2) the scope of the *Orders* is unambiguous and does not cover products broadly described in Scenario 2 or 3.  Other interested parties also

submitted comments in opposition to the scope inquiry. *See e.g.*, Letter from DH Exporters[3]*Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China: Post-Initiation Comments on Petitioner's Request for Scope Inquiry* (Jul. 7, 2022) (**V.P.R. 279**) (**M.P.R. 77**).

On March 16, 2023, Commerce issued its preliminary scope determination, finding that the products described in Scenario 1 – *i.e.*, wooden cabinets and vanities and components thereof (wooden cabinets) that contain doors, drawer faces and frame components produced in China and combined in Vietnam with wooden cabinet boxes and drawer boxes produced in Vietnam and exported to the United States – are Chinese in origin and, thus, covered by the scope of the *Orders*. *Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China – Preliminary Scope Determination* (Mar. 16, 2023) ("Malay. Prelim.") (M.C.R. 43) (M.P.R. 136); Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China – Preliminary Scope Determination Mar. 16, 2023) ("Viet. Prelim.") (**V.C.R. 40**) (**V.P.R. 636**) (collectively "Preliminary Scope Rulings").

Commerce further determined that there was insufficient evidence on the record to addresses Scenarios 2 and 3, *i.e.,* semifinished wooden doors, drawer faces, and frames produced

---

[3] Sanyang Vietnam Furniture Co., Ltd; Goldenland Vietnam Furniture Company Ltd; Blue Valley Wood Co., Ltd; Xin Hong Company Limited; Advanced Cabinets Supply Viet Nam Company Limited; Eagle Wood (Viet Nam) Company Limited; Hong Sheng (Viet Nam) Industrial Company Limited; Fusion Vina Company Limited; Monogram Home Viet Nam Company Limited; Star UN Co., Ltd; Giai MY P&B Co., Ltd; Wissen Wood Vietnam Co., Ltd; Song Ngan Industrial Wood Company Limited; Lamphong Produce and Investment Co., Ltd; Woodworth Cabinetry Vietnam Corporation Limited; Diamond Cabinetry Viet Nam Company Limited; VY KIET CO., LTD.; Hong Lam Service Trading Manufacturing Company Limited, HAO SAM INDUSTRY CO., LTD., Duc Thinh Kitchen Cabinet Co., Ltd, SKS Furniture Company Limited, Highend Vina Company Limited, Le Hoang Minh Co., Ltd, T&T Furniture Company Limited (dba Thai Thinh Co., Ltd), Tien Dat Furniture Corporation, Thien Phat Commercial Production Construction Company Limited, Phu Tai Binh Dinh Wood Company Limited, TEKCOM Corporation, Viet Nam Owen Cabinets Company Limited, Phu Tai Dong Nai Company Limited, VI NA G7 Joint - Stock Company, VHG Styles Viet Nam Joint Stock Company, Nhat Minh Wood Company Limited, Tran Duc Joint Stock Company, Fine Hospitality Furnishings Company Corporation, TDH Green Building Solution Company Limited, Hoa Binh Company Limited, Dai Thanh Furniture JSC, Poh Huat Furniture Industries Vietnam JSC; Best Furniture Company Limited; Kong Richs Furniture Vietnam Co., Ltd; HOCA (Vietnam) Kitchen and Bath Products International Co., Ltd; Fookyik (Vietnam) Furniture Company Limited (collectively, "DH Exporters").

in China and further processed in Vietnam, that are combined in Vietnam with a wooden cabinet

box and drawer box produced in Vietnam.  *See* Viet. Prelim. at 1, 58.  Commerce issued the

same finding for the Malaysian preliminary scope determination.  *See* Malay. Prelim. at 1, 52.

As a result, Commerce requested additional information concerning certain factors related to its

substantial transformation analysis, specifically, factors 4, 5, and 6 (*i.e.*, the cost of production,

the nature and sophistication of production in the third country, and the level of investigation in

the third country).

Commerce also preliminarily determined that the products covered by Scenario 4 (*i.e.*,

wooden cabinets containing a toe kick produced in China and all other wooden parts produced in

Vietnam or Malaysia) are third country in origin and not covered by the scope of the *Orders*.

Viet. Prelim. at 1-2; Malay. Prelim. at 1.  Finally, Commerce found it that it was not appropriate

to implement a certification process, determining that Commerce intended to evaluate whether a

certification regime was appropriate in the circumvention inquiry.  *See* Viet. Prelim. at 42-45;

Malay. Prelim. at 40-42.

On May 22, 2023, the Cabinetworks Companies submitted rebuttal comments in response

to Commerce's preliminary scope determination, and AKCA's case brief.  *See* Letter from The

Cabinetworks Companies, *Wooden Cabinets and Vanities and Components thereof from The*

*People's Republic of China: Rebuttal Comments* (May 22, 2023) ("Cabinetworks Companies

Viet. Rebuttal Comments") (V.P.R. 678); *see* Letter from the Cabinetworks Companies, *Wooden*

*Cabinets and Vanities and Components thereof from The People's Republic of China: Rebuttal*

*Comments* (May 22, 2023) ("Cabinetworks Companies Malay. Rebuttal Comments") (M.P.R.

170); *see also* Letter from AKCA: *Wooden Cabinets and Vanities and Components Thereof from*

*the People's Republic of China: Petitioner's Case Brief* (May 15, 2023) ("AKCA Post Prelim

Comments") (M.C.R. 66) (M.P.R. 162) (V.C.R. 64) (V.P.R. 671). The Cabinetworks Companies argued that AKCA's comments demonstrated the fundamental flaws of its own initial scope ruling application because the comments focus on a non-exhaustive list of scenarios, which is deficient on its face. Cabinetworks Companies Viet. Rebuttal Comments at 1-2; Cabinetworks Companies Malay. Rebuttal Comments at 1-2. In particular, the Cabinetworks Companies argued, AKCA failed to identify a "particular product" as required by 19 C.F.R. § 351.225(c)(1) and therefore fail to provide information necessary for Commerce to issue a proper determination of whether a particular product is subject merchandise or for interested parties, such as the Cabinetworks' Companies, from adequately participating in these proceedings given the lack of understanding, definition, and notice as to the product(s) under consideration. Cabinetworks Companies Viet. Rebuttal Comments at 2; Cabinetworks Companies Malay. at 2. Due to these deficiencies, the Cabinetworks Companies requested that Commerce rescind the scope inquiry with respect to Scenarios 2 and 3. Cabinetworks Companies Viet. Rebuttal Comments at 2; Cabinetworks Companies Malay. at 2.

The Cabinetworks Companies also reiterated that the plain language of the *Orders* sets forth the components that are deemed subject merchandise and semi-finished components are not covered by this list. *See* Cabinetworks Companies Viet. Rebuttal Comments at 2-3; Cabinetworks Companies Malay. at 2-3; *see also AD Order,* 85 Fed. Reg. at 22,133; *CVD Order,* 85 Fed. Reg. at 22,135. The Cabinetworks Companies argued that, moreover, the information provided in AKCA's New Factual Information Submission for Scenario 2 and 3 was narrower than that provided for in the Scope Request and the Supplemental Questionnaire Response. *See* Cabinetworks Companies Viet. Rebuttal Comments at 3-5; Cabinetworks Companies Malay. at 3-5. Other interested parties addressed the flaws in the substantial transformation analysis. *See*

*e.g.*, Letter from DH Exporters, *Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China: DH Exporters' Rebuttal Comments* (May 22, 2023) (M.C.R. 69) (M.P.R. 171) ("DH Exporters' Malay. Rebuttal Comments"); Letter from DH Exporters, *Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China: DH Exporters' Rebuttal Comments* (May 22, 2023) (**V.C.R. 67**) (**V.P.R. 679**) ("DH Exporters' Viet. Rebuttal Comments") (collectively, DH Exporters Rebuttal Comments"). Finally, the Cabinetworks Companies argued that Commerce's rejection of a certification process in its Preliminary Determination was proper. Cabinetworks Companies Viet. Rebuttal Comments at 4-6; Cabinetworks Companies Malay. at 4-6.

On September 28, 2023, Commerce issued its Post-Preliminary Analysis Memorandum in which it conducted a substantial transformation analysis on the products described in Scenarios 2 and 3 and revised its analysis for the products described in Scenario 1. *Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China – Post-Preliminary Analysis Memorandum* (Sept. 28, 2023) (M.C.R.71) (M.P.R. 184); *Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China – Post-Preliminary Analysis Memorandum* (Sept. 28, 2023) (V.C.R. 69) (V.P.R. 691) (collectively "Post-Preliminary Analysis Memorandum"). In its Post-Preliminary Analysis Memorandum, Commerce determined that the products described in Scenarios 1, 2, and 3 were all Chinese origin and therefore covered by the scope of the *Orders. See Post-Preliminary Analysis* at 1-2. Finally, Commerce continued to find that the products described in Scenario 4 are of third country origin and thus not covered by the scope of the *Orders*. *Id*. The Post-Preliminary Analysis did not address the issue of a certification regime.

On October 19, 2023, the Cabinetworks Companies filed a case brief addressing Commerce's Post-Preliminary Analysis.  *See* Letter from Cabinetworks Companies*, Wooden Cabinets and Vanities and Components thereof from The People's Republic of China: Cabinetworks Companies' Response to Post-Preliminary Scope Analysis* (Oct. 19, 2023) ("Cabinetworks Companies Case Brief") (M.P.R. 194) (V.P.R. 703).  Therein, the Cabinetworks Companies reiterated its arguments that Commerce's Post-Preliminary Analysis continued to consider ill-defined scenarios based on a deficient scope ruling application and Commerce's substantial transformation analysis in Commerce's Post-Preliminary scope analysis was flawed. *Id*. at 3-7.

On December 4, 2023, Commerce provided interested parties the opportunity to rebut AKCA's arguments in its case brief concerning certification.  *See* Letter from DOC, *Scope Determination of Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China:  Providing an Opportunity to Rebut Arguments Concerning Certification* (Dec. 4, 2023) (M.P.R. 199) (V.P.R. 711).  On December 11, 2023, the Cabinetworks Companies filed its rebuttal comments addressing certification.  Therein, the Cabinetworks Companies argued that the certification regime would impose unnecessary burdens on interested parties, Commerce should not impose certification processes on hypothetical products, and the requested certification regime amounted to an unreasonable restraint on free trade.  *Id*. at 2-5.

On April 3, 2024, Commerce issued a proposal to establish a certification requirement. *See* Memorandum, *Scope Inquiry on Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China:  Proposal to Establish a Certification Requirement* (Apr. 3, 2024) (M.P.R. 213) (V.P.R. 731).  In its proposal Commerce proffered that, because the products

of the scope inquiry are facially indistinguishable from non-subject merchandise, a certification

regime was appropriate to aid in enforcement and prevent evasion of the *Orders*.  *Id*. at 8.

On April 24, 2024, the Cabinetworks Companies and other interested parties submitted

comments on the proposed certification regime.  *See e.g.,* Letter from Cabinetworks Companies,

*Wooden Cabinets and Vanities and Components thereof from the People's Republic of China:*

*Cabinetworks' Comments on Proposed Certification Requirement* (Apr. 24, 2024) (

"Cabinetworks' Comments on Proposed Certification") (M.P.R. 220) (V.P.R. 740).  In its

comments, the Cabinetworks Companies objected to the certification regime and reiterated that a

certification process should not be imposed on hypothetical products and must provide U.S.

importers clarity.  *Id*. at 3.  Additionally, the Cabinetworks Companies set forth that the

certification proposal creates unreasonable, unnecessary, and burdensome requirements on freely

traded goods.  *Id.* at 3-5.  Further, the Cabinetworks Companies highlighted that it is CBP's role

as an enforcement agency, not Commerce, to review documents at the time of entry as accurate

and complete.

On July 10, 2024, Commerce issued its Final Scope Rulings.  *See* Final Scope Rulings;

*see also Final Scope Determination Publication*; *Final Scope Determination Publication*

*Correction*.  In Commerce's Final Scope Rulings, the agency determined that Scenarios 1, 2, and

3 are Chinese in origin and, thus covered by the *Orders.  See Final Scope Rulings at 1.*  Further,

Commerce continued to find that Scenario 4 is third country in origin and, thus not covered by

the scope of the *Orders.  Id.*  In issuing its determination, Commerce further found that the scope

inquiries were properly initiated.  *Id*. at 8-11.  Commerce also determined that the list of

components set forth in the scope language was an illustrative list of subcomponent parts that did

not describe all subject components.  *Id*. at 11-12.

Further, Commerce conducted a substantial transformation analysis pursuant to 19 C.F.R. § 351.226(j) to determine the country of origin for the scenarios described in the inquiry.  Based on Commerce's analysis, Commerce continued to find that Scenarios 1, 2, and 3 are within the scope of the *Orders* as the country of origin was determined to be China.  *Id*. at 8, 41. Commerce also determined that all seven prongs of the substantial transformation analysis were weighted equally.  *Id*. at 24-25.  Specifically, Commerce's continued to find that the intended end use supports finding China as the country of origin for all scenarios.  *Id*. at 14-15. Commerce continued to determine that the cost of production analysis supported the finding that substantial transformation occurred in the third country for Scenarios 3 and 4, but it did not occur in the third country for Scenarios 1 and 2.  *Id*. at 15-18.  Next, Commerce's found that the nature and sophistication of third country processing alone supported the finding that substantial transformation occurred in the third country for Scenarios 3 and 4 but did not occur in the third country with respect to Scenarios 1 and 2.  *Id*. at 18-19.  Commerce also found that the level of investment in the third country prong supported a finding that substantial transformation occurred in the third country with respect to Scenarios 2 and 3 but not for Scenario 1.  *Id*. at 20-21.  Lastly, Commerce considered the essential component or characteristics pursuant to 19 C.F.R. § 351.226(j)(2), Commerce accounted for where each wooden component part started production to assess country of origin.  *Id*. at 23.  Overall, Commerce determined that this factor alone indicated that substantial transformation occurred in the third country for Scenario 4 but not for Scenarios 1, 2, and 3.  *Id*. 21-24.

In addition, Commerce determined that it had the authority to implement and established a country-wide certification regime, determined to not make changes to the certifications or to

alter the language or narrow the meaning of the illustrative scenario descriptions for purposes of the certification regime. *Id.* at 26-40.

On July 17, 2024, Commerce's final scope ruling was published in the Federal Register. *See Final Scope Determination Publication.* Shortly after, on August 5, 2024, Commerce issued a correction. *Final Scope Determination Publication Correction,* 89 Fed. Reg. at 63,404. Commerce also issued an additional correction on October 23, 2024. *See Wooden Cabinets and Vanities and Components Thereof From the People's Republic of China: Final Scope Determination, Certification Requirements, and Recission of Circumvention Inquiries on the Antidumping and Countervailing Duty Orders; Correction,* 89 Fed. Reg. 84,532 (Dep't of Commerce Oct. 23, 2024) (M.P.R. 251) (V.P.R. 781) ("'Importers of this merchandise, that was declared as non-AD/CVD type (*e.g.,* type 01) and is not subject to the *Orders* must upload certifications into the DIS in ACE for applicable unliquidated entries and applicable entries for which liquidation has not become final.'").

On September 16, 2024, the Cabinetworks Companies commenced these actions against Commerce. *See* Complaint, Ct. No. 24-00155, ECF No. 9 (Sept. 9, 2024); *See* Complaint, Ct. No. 24-00156, ECF No. 9 (Sept. 9, 2024).

## IV.    STANDARDS OF REVIEW
### A.  Substantial Evidence Standard

This Court "shall hold unlawful any determination . . . found . . . to be unsupported by substantial evidence on the record or otherwise not in accordance with law. 19 U.S.C. § 1516a(b)(1)(B)(i); *accord SNR Roulements v. United States*, 402 F.3d 1358, 1361 (Fed Cir. 2005).

"[S]ubstantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951) (*quoting Consolidated Edison Corp. v. NLRB*, 305 U.S. 197, 229 (1938)). Furthermore, "substantial evidence" must be measured by a review of the record as a whole, "including whatever fairly detracts from the substantiality of the evidence. *Atlantic Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984). Thus, "it is appropriate to set aside the ITA's decision when the court 'cannot conscientiously find that the evidence supporting that decision is substantial, when viewed in the light that the record in its entirety furnishes, including the body of evidence opposed to [its] view.'" *Diversified Products Corp. v. United States*, 572 F. Supp. 883, 888 (1983) (*quoting Universal Camera*, 340 U.S. at 488).

Moreover, Commerce's determination cannot be based on "isolated tidbits of data which suggest a result contrary to the clear weight of the evidence. *USX Corp. v. United States*, 655 F. Supp. 487, 489 (Ct. Int'l Trade 1987). The substantial evidence standard "requires more than mere assertion of 'evidence which in and of itself justified {the determination}, without taking into account contradictory evidence or evidence from which conflicting inferences could be drawn.'" *Suramerica de Aleaciones Laminadas, C.A. v. United States*, 44 F.3d 978, 985 (Fed. Cir. 1994) (*quoting Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474, 487-488 (1951); *see Mittal Steel Point Lisas Ltd. v. United States*, 548 F.3d 1375, 1380-1381 (Fed. Cir. 2008) (same); *see also, e.g.*, *Jinan Yipin Corp. v. United States*, 800 F. Supp. 2d 1226, 1233-1234 (Ct. Int'l Trade Sep. 26, 2011).

In addition, Commerce's determinations must be based on actual evidence. As this Court has summarized: "[t]heory will not suffice. The Court of Appeals has underscored this principle, explaining that '[i]t is well established that speculation does not constitute 'substantial evidence.''

*Novosteel SA v. United States*, 284 F.3d 1261, 1276 (Fed. Cir. 2002). The Court of Appeals

continued: 'As the Supreme Court noted in *Bowen v. American Hospital Ass'n*, 476 U.S. 610,

626 (1986), agency deference has not come so far that agency action is upheld whenever it is

possible to conceive a basis for administrative action.' *Id*.; *see also, e.g., Yangzhou Bestpak Gifts

& Crafts*, 716 F.3d 1370, 1378 (Fed. Cir. 2013) (noting that Commerce determinations cannot be

based on "mere conjecture or supposition"). *Shenzhen Xinboda Indus. Co. v. United States*, 279

F. Supp. 3d 1265, 1305 (Ct. Int'l Trade 2017). Furthermore, proffered evidence must be reliable.

"Mere uncorroborated hearsay or rumor does not constitute substantial evidence." *Consolidated

Edison Corp. v. NLRB*, 305 U.S. 197, 230 (1938).

In deciding issues of law, Commerce's interpretation of ambiguities in the antidumping

statute normally is entitled to substantial deference, but "the traditional deference courts pay to

agency interpretation is not to be applied to alter the clearly expressed intent of Congress."

*Serampore Industries Pvt. Ltd. v. United States*, 675 F. Supp. 1354, 1357 (Ct. Int'l Trade)

(citation omitted). Accordingly, when the statute is plain on its face, "that is the end of the

matter; for the court, as well as the agency, must give effect to the unambiguously expressed

intent of Congress." *Chevron U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837,

842-443, *reh'g denied* 468 U.S. 1227 (1984). 1987.

## B.  Arbitrary and Capricious Standard

Federal courts have recognized that the standard of review under 19 U.S.C. §

1516a(b)(1)(B)(i) encompasses the "arbitrary and capricious" standard established under the

Administrative Procedure Act, 5 U.S.C. § 706(2)(A). *Changzhou Wujin Fine Chemical Factory

Co. v. United States*, 701 F.3d 1367, 1377 (Fed. Cir. 2012) (*citing Bowman Transp., Inc. v.

Arkansas-Best Freight Sys., Inc.,* 419 U.S. 281, 284 (1974)). "[A]n agency action is arbitrary

when the agency offer[s] insufficient reasons for treating similar situations differently. *RHP Bearings Ltd. v. United States*, 288 F.3d 1334, 1347 (Fed. Cir. 2002) (*quoting Transactive Corp. v. United States*, 91 F.3d 232, 237, 319 U.S. App. D.C. 428 (D.C. Cir. 1996)). For an agency action to be upheld, it must "offer some rationale that could explain the maintenance of different standards for similarly situated claimants, or it must explain why such claimants are in fact not similarly situated." *Serv. Women's Action Network v. Sec'y of Veterans Affairs*, 815 F.3d 1369, 1380 (Fed. Cir. 2016). *See Cooper Tire & Rubber Co. v. United States*, 217 F. Supp. 3d 1373, 1380 (Ct. Int'l Trade 2017).

Moreover, an agency "must cogently explain why it has exercised its discretion in a given manner." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 48 (1983) (citations omitted). Internal inconsistency and self-contradiction do not satisfy this requirement. Indeed, a "principal justification for the administrative state is that in 'area[s] of limitless factual variations, like cases will be treated alike.'" *Anderson v. U.S. Sec'y of Agric.*, 462 F. Supp. 2d 1333, 1339 (Ct. Int'l Trade 2006) (internal citation omitted) ("Courts will therefore not defer to an agency regulation or adjudicative decision when they produce results which are arbitrary, capricious, or manifestly contrary to the statutory scheme."). Thus, when the administering agency treats similarly situated parties differently or fails to consider an important aspect of a problem, its decisions are arbitrary and capricious and subject to reversal.

Further, Commerce's rationale must address the parties' principal arguments. 19 U.S.C. § 1677f(i)(3)(A) (requiring Commerce to "include in a final determination . . . an explanation of the basis for its determination that addresses relevant arguments, made by interested parties"). *See also CS Wind Vietnam Co. v. United States*, 832 F.3d 1367, 1375-81 (Fed. Cir. 2016)

(analyzing in detail an agency's obligation to set forth a comprehensible and satisfactory

justification for its determinations "as a reasonable implementation of statutory directives

supported by substantial evidence"). Finally, in *Amerijet Int'l, Inc. v. Pistole*, 753 F.3d 1343,

1350-52 (D.C. Cir. 2014) the Court underscored the importance of an agency's obligation to

"articulate an explanation for its action," stating that "a fundamental requirement of

administrative law is that an agency set forth its reasons for decision; an agency's failure to do so

constitutes arbitrary and capricious agency action"); *see Shenzhen Xinboda Indus. Co. v. United

States*, 279 F. Supp. 3d 1265, 1277 (Ct. Int'l Trade 2017).

## V.    ARGUMENT

### C.    Commerce's Initiation of Its Scope Inquiry was Unlawful.

Commerce's initiation of the scope inquiry was unlawful because Petitioner's scope

ruling application failed to comply with the requirements set forth in 19 C.F.R. § 351.225(c).

Specifically, Petitioner's scope ruling application failed to identify specific products and instead

pertained to hypothetical production cycles.  Commerce's initiation of a scope inquiry based on

an ill-defined, hypothetical, and vague description of the covered products did not comport with

its regulations.

Commerce acknowledges that "{q}uestions sometimes arise as to whether *a particular

product* is covered by the scope of an antidumping or countervailing duty order."  19 C.F.R.

§ 351.225(a) (emphasis added).  As such, its regulations provide that Commerce will "initiate

and conduct a scope inquiry and issue a scope ruling to determine whether or not *a product* is

covered by the scope of an order at the request of an interested party or on the Secretary's

initiative."  *Id*.  In other words, scope inquiries are necessary to determine whether specifically

identified products are covered by scopes in existing orders.

To facilitate such a review, Commerce provides that "{a}n interested party may submit a scope ruling application requesting that the Secretary conduct a scope inquiry to determine whether *a product*, which is or has been in actual production by the time of the filing of the application, is covered by the scope of an order." 19 C.F.R. § 351.225(c) (emphasis added). The regulation further provides a detailed list of requirements that a scope ruling applicant must include to support the request. *See* 19 C.F.R. § 351.225(c)(2). Among these requirements is "{a} detailed description of *the product*" covered by the scope ruling application, as well as its uses. 19 C.F.R. § 351.225(c)(2)(i) (emphasis added). In the preamble to Commerce's revised regulations on scope inquiries, Commerce clarified that the scope applications must provide a "concise public description" that "will reflect the 'particular product' at issue—thereby enabling the public and CBP to more easily identify the product at issue." *Regulations To Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws*, 85 Fed. Reg. 49472, 49477 (Aug. 13, 2020). It made this change, in part, to address longstanding concerns that scope inquiry requests "did not always include the requisite sufficient description and supporting information necessary for Commerce to complete {a scope} analysis." *Id.*

As parties to the underlying proceeding noted, this is consistent with Commerce's past practice, which limits scope inquiries to "the specific product at issue." *See* Mowry & Grimson, *Comments and Rebuttal Factual Information on Anti-Circumvention Inquiry Request* (July 7, 2022) at Exs. 1 and 2. Commerce has further explained that "its practice is to 'not conduct hypothetical scope rulings on products that are not yet in production,' and the agency 'will not issue a scope ruling or conduct a scope inquiry on a purely hypothetical product.'" *Perfectus Aluminum, Inc. v. United States*, 391 F. Supp. 3d 1341, 1356 (Ct. Int'l Trade 2019) ("*Perfectus*"), *aff'd,* 836 F. App'x 883 (Fed. Cir. 2020); *see also Antidumping and Countervailing Duty*

*Proceedings: Documents Submission Procedures; APO Procedures*, 73 Fed. Reg. 3,634, 3,639 (Dep't of Commerce Jan. 22, 2008).

This court has determined that the applicant is obligated to meet these factors prior to initiation. *See* 19 C.F.R. § 351.225(a) and (c); *see also Fabuwood Cabinetry Corp. v. United States*, 469 F. Supp. 3d 1373, 1383–84 (Ct. Int'l Trade 2020) (The court noted that Commerce "concluded, without explanation, that the Amended Scope Ruling Request 'provided all requisite information reasonably available to Petitioner-Masterbrand, and provided sufficient detail regarding the products at issue for Commerce to make a final scope ruling." Nevertheless, the court held that, "{this} {} conclusory statement did not meet the 'the obligation to address important factors raised by comments from petitioners and respondents.'") (citing *SKF USA Inc. v. United States*, 630 F.3d 1365, 1374 (Fed. Cir. 2011)) (internal bracketing omitted). The court concluded that Commerce must address the "threshold question of whether the request was specific enough to provide an adequate basis for a scope ruling." *Fabuwood Cabinetry Corp. v. United States*, 469 F. Supp. 1373, 1383 (Ct. Int'l Trade 2020).

In this case, AKCA's scope ruling application failed to meet the requirements established under 19 C.F.R. § 351.225(c)(2). AKCA failed to provide a detailed description of a particular product, a fact which Commerce recognized when AKCA submitted its scope ruling application. In its initial application, AKCA asked Commerce to provide a scope ruling on a broad blanket of products. Specifically, it asked Commerce to evaluate the following:

> This application requests a scope ruling for wooden cabinets and vanities ("WCV") and components thereof produced using WCV components (*i.e.*, frames, boxes, doors, drawers, panels, and any attached or incorporated desks, shelves, and tables), whether finished or unfinished, that are manufactured in the People's Republic of China ("China") and that undergo further processing (*e.g.*, trimming, cutting, notching, punching, drilling, painting, staining, finishing, assembly, repackaging, combining into a "ready to assemble" WCV unit, *etc.*) in

Malaysia before being exported from Malaysia to the United States.  Viet. Scope Request at 5; Malay. Scope Request at 5.

Commerce then issued a supplemental questionnaire in which it asked AKCA to identify the products covered by its scope ruling application with more specificity.  Specifically, Commerce requested that AKCA:

> {A}ddress the coverage of the requested product with respect to WCV cabinets, vanities, and components which were: 1) sourced from China; 2) further processed in Vietnam {or Malaysia}; and 3) exported from Vietnam {or Malaysia}; to the United States.  *Be as specific as possible* on the WCV variations and components for which you seek scope and circumvention inquiries (including sources of various components and the further processing performed in Vietnam {or Malaysia})."

*See* Letter from Commerce, Questionnaire (dated May 13, 2022) (**MPR 31**) (**VPR 31**) (emphasis added).

However, in its response to Commerce's supplemental questionnaire, AKCA again failed to identify a specific product covered by the request.  Instead, AKCA took the position that "the product covered in the application is ***any and all*** merchandise **that meets the scope of the Orders** that is further processed in Malaysia and that continues to meet the scope of the Orders after further processing {sic} Malaysia and upon entry into the United States."  Supplemental Questionnaire Response-From Malaysia (May 17, 2022) at 3.  Not only did AKCA not adequately identify a specific product subject to its scope ruling application,  AKCA inexplicably provided a "non-exhaustive" list of scenarios under which hypothetical products may be produced. *See* AKCA Post Prelim Comments at 1; *see also* Supplemental Questionnaire Responses at 5-6.  Not only did AKCA fail to identify a specific product to which its scope ruling application applies, none of the hypothetical production scenarios are  specifically included in the scope of the *Orders*.  The responses by AKCA to Commerce's supplemental questionnaire did nothing to solve the deficiency recognized by Commerce in the supplemental questionnaire and instead only highlighted the issue that AKCA did not identify a specific

product in its scope ruling application. With AKCA;s responses to Commerce's supplemental questionnaire, the scope ruling drifted even further away from identifying a specific product.

Record evidence in this case clearly establishes that AKCA's scope ruling request failed to identify a *particular product* as is required under Commerce's regulations for initiating a scope inquiry. AKCA's request purports to cover "any and all merchandise that meets the scope of the Orders." Further, AKCA's so-called "scenarios" offer only a list of hypotheticals, which Commerce has stated is insufficient to initiate a scope inquiry. *See Perfectus,* 391 F. Supp. 3d at 1356 (Commerce has explained that "its practice is to 'not conduct hypothetical scope rulings on products that are not yet in production,' and the agency 'will not issue a scope ruling or conduct a scope inquiry on a purely hypothetical product'").

As a result, Commerce's initiation of a scope inquiry, which is based on a broad description of a category of products and a "non-exhaustive" list of scenarios, is wildly divergent with the regulations and its clearly stated practice. As a result, Commerce's determination to initiate this scope inquiry is at odds with its own regulations, which state that scope inquiries are meant to determine to "whether *a particular product* is covered by the scope of an antidumping or countervailing duty order." 19 C.F.R. § 351.225(a) (emphasis added). Consequently, Commerce's initiation of the scope inquiries at issue in this case is not supported by substantial evidence or in accordance with law.

### D. Commerce's Findings in the Final Scope Ruling Were Unlawful And Not Supported By Substantial Evidence.

Congress has authorized Commerce to make determinations "as to whether a particular type of merchandise is within the class or kind of merchandise described in an existing . . . order." 19 U.S.C. § 1516a(a)(2)(B)(vi). Commerce must make a determination regarding whether a particular product is covered by the scope of an order in accordance with the analytical

framework and procedures set forth in its regulations.  19 C.F.R. § 351.225; *see also Shenyang*

*Yuanda Aluminum Indus. Eng'g Co. v. United States*, 776 F.3d 1351, 1354 (Fed. Cir. 2015)

("There is no specific statutory provision governing the interpretation of the scope of {AD} or

{CVD} orders.").  Rather, commerce is often called upon to determine whether a certain product

is included within the scope of an order because it must write scope language in general terms.

19 C.F.R. § 351.225(a); *see Meridian Prods*., 851 F.3d at 1379.

       In making its determination on scope, and pursuant to the regulations, Commerce

examines the scope language of the order at issue and the description of the product which is the

subject of the scope ruling application.  19 C.F.R. § 351.225(k)(1).  At its discretion, Commerce

may also consider primary interpretive sources. 19 C.F.R. § 351.225(k)(1).  These primary

sources (frequently referred to as "(k)(1)" sources/materials) include the petition pertaining to the

order at issue, previous determinations by Commerce (including prior scope determinations),

ITC reports pertaining to the order at issue, and any other relevant record evidence.  *Id*.  "{T}he

regulations at least permit, if not mandate, Commerce to consider the (k)(1) materials."  *Saha*

*Thai*, 101 F.4th at 1326 (emphasis in original).  "Practically, because the scope language is

necessarily written in general terms, Commerce will likely consider the (k)(1) materials to assist

in understanding the meaning of the scope language relevant to the determination of whether a

particular product is within the scope."  *Id*. at 1329 (citing *Regulations To Improve*

*Administration and Enforcement of Antidumping and Countervailing Duty Laws*, 86 Fed. Reg.

52,300, 52,323 (Dep't of Commerce Nov. 20, 2021) (2021 Revised Regulations)) (emphasis in

original).  Further, when parties "explicitly rely on the (k)(1) materials for their contradictory

interpretation of an order, Commerce cannot arbitrarily ignore those arguments and evidence on

the record."  *Id*. at 1328.  If Commerce determines that these sources are dispositive, it will issue

a final scope ruling as to whether the merchandise is covered by the order or orders. 19 C.F.R. §

351.225(d); *see Sango Int'l L.P. v. United States*, 484 F.3d 1371, 1379 (Fed. Cir. 2007)

(recognizing that (k)(1) sources are dispositive when they "definitely answer the scope

question.").

      While "Commerce 'enjoys substantial freedom to interpret and clarify its antidumping

duty orders,' it can neither 'change them,' nor interpret them 'in a way contrary to their terms.'"

*Wheatland Tube Co. v. United States*, 161 F.3d 1365, 1370 (Fed. Cir. 1998) (internal bracketing

and citations omitted); *see also Bell Supply Co., LLC v. United States*, 179 F. Supp. 3d 1082,

1092 (Ct. Int'l Trade 2016) ("Commerce may not interpret an order "so as to change the scope of

that order, nor can Commerce interpret an order in a manner contrary to its terms."). In

determining whether a product falls within the scope of an AD or CVD order, Commerce

"'consider(s) the language of the scope and may make its determination on this basis alone if the

language of the scope, including descriptions of merchandise expressly excluded from the scope,

is dispositive.'" *Hardware Res., Inc. v. United States*, Ct. No. 23-00150, No. 23-00150, 2024

WL 5116800 (Ct. Int'l Trade Dec. 16, 2024) (*Hardware Res., Inc.*).

      Commerce's decision in the Final Scope Ruling is an unlawful expansion of the scope of

the *Orders* because (a) it is inconsistent with the plain language of the scope, and

(b) Commerce's interpretation of "semifinished" improperly expands the scope.

### E. Commerce's Final Scope Ruling is inconsistent with the plain language of the scope of the Orders.

      The courts have concluded that "{s}cope orders may be interpreted as including subject

merchandise only if they contain language that specifically includes the subject merchandise or

may be reasonably interpreted to include it." *Duferco Steel, Inc. v. United States*, 296 F.3d 1087,

1089 (Fed. Cir. 2002).  An analysis of the plain language of the scope of the Orders at issue here makes it clear that "semifinished components" are not covered by the language of the scope and the scope cannot be reasonably interpreted to include it.

The *Orders* explicitly include merchandise with finished and unfinished surfaces and "all unassembled, assembled and/or 'ready to assemble' (RTA) wooden cabinets and vanities."  *See AD Order*, 85 Fed. at 22,133; *CVD Order*, 85 Fed. Reg. at 22,135-36.  Further, the *Orders* unambiguously cover only 6 specific components, namely:

> (1) wooden cabinet and vanity frames (2) wooden cabinet and vanity boxes (which typically include a top, bottom, sides, back, base blockers, ends/end panels, stretcher rails, toe kicks, and/or shelves), (3) wooden cabinet or vanity doors, (4) wooden cabinet or vanity drawers and drawer components (which typically include sides, backs, bottoms, and faces), (5) back panels and end panels, (6) and desks, shelves, and tables that are attached to or incorporated in the subject merchandise.  *See id*.

The scope further clarifies that "in-scope components" that are exported and further processed in a third country remain in scope if the further processing would not have removed the merchandise from the scope of the order if performed in the country of origin.  *Id*.  However, there is no discussion of or reference to "semifinished components."

The text of the scope of the *Orders* includes to specific references to the components subject to the Orders, whether the components have finished surfaces  or unfinished surfaces,. However, there is no reference to semifinished components.  Further, the language of the scope cannot be reasonably interpreted to include semifinished components.

**F.  Commerce failed to consider the (k)(1) factors and failed support its findings with substantial evidence.**

When the language of an order is not clear on its face, Commerce is required to consider the (k)(1) factors.  As explained above, the text of the orders makes no reference to "semifinished components," and Commerce points to no record evidence substantiating its

interpretation that this merchandise should be included in the scope of the *Orders*. *See Meridian Prods. v. United States*, 890 F.3d 1272, 1277 (Fed. Cir. 2018) ("In reviewing the plain language of a duty order, Commerce must consider "the descriptions of the merchandise contained in the petition, the initial investigation, and the determinations of the Secretary (including prior scope determinations) and the Commission.") (internal brackets omitted); *see also SMA Surfaces, Inc. v. United States*, 617 F. Supp. 3d 1263, 1272 (Ct. Int'l Trade 2023) ("First, Commerce must look to the text of an order's scope; second, Commerce will consult descriptions of the merchandise in other sources pursuant to 19 C.F.R. § 351.225(k)(1); and third, if still necessary, Commerce may consider additional factors comparing the merchandise in question to merchandise subject to the order (pursuant to 19 C.F.R. § 351.225(k)(2).") (internal brackets omitted).

Accordingly, Commerce's interpretation of the scope alters the terms beyond the plain reading and interprets the *Orders* in a way contrary to their terms. *See Wheatland Tube Co. v. United States*, 161 F.3d 1365, 1370 (Fed. Cir. 1998).

## G. Commerce in the Final Scope Ruling concluded that out of scope merchandise could be transformed into in scope merchandise based on third country processing.

This court has held that, "if merchandise does not meet one of the parameters – either class or kind, or country of origin – it is outside the scope of the ADD or CVD order." *Ugine and ALZ Belgium, N.V. v. United States*, 517 F. Supp. 2d 1333, 1345 (Ct. Int'l Trade 2007), *affirmed Ugine and Alz Belgium v. United States*, 551 F.3d 1339 (Fed. Cir. 2009).

In its Final Scope Ruling, Commerce determined that products that would not be considered in-scope upon exportation would be rendered in-scope after further manufacturing. In other words, it determined that goods that were not of the class or kind described in the scope

would *become subject to the scope* if they were further processed in a non-subject country.
Under any reasonable interpretation of the terms, such products would not meet the parameters—
class or kind, or country of origin—of the scope of the *Orders*. Therefore, they must be outside
the scope. *See Ugine and ALZ Belgium, N.V. v. United States*, 517 F. Supp. 2d at 1345 (Ct. Int'l
Trade 2007).

       Pursuant to its regulations, Commerce conducts circumvention inquiries to determine
whether products that do not fall within the literal scope language should nonetheless be
considered within the scope of an order. Proposed Regulations, 85 Fed. Reg. at 49476. No such
inquiry was initiated here. There can be no basis, within a scope proceeding, to conclude that
products that do not fall within the literal scope language could in any way be within the scope—
this is antithetical to a request for a scope ruling.

       Nevertheless, Commerce inexplicably detemrined that AKCA's scope request satisfied
the requirements for initiation. Notably, Commerce asserted AKCA's scope application was
sufficient because it included clear and legible photographs, marketing materials, and schematic
drawings of the products at issue. *See* Final Scope Ruling at 8-9 (citing Petitioner's Scope
Ruling Application at 10 and Exhibits 4, 5, and 6). Commerce reasoned that the information was
sufficient because the information came from Chinese producers and exporters of wooden
cabinets that were selected for individual examination in the original AD investigation. *Id*.
However, the initial scope request and subsequent request were deficient, and Commerce
rendered a final scope ruling without regard for specificity. Moreover, parties were forced to
respond to questionnaires without a clear understanding of the type of products and specific
processing under consideration. As a result, Commerce's final scope ruling failed to consider

whether a "particular product" is/is not subject to an AD/CVD order.  *See* 19 C.F.R. § 351.225(a); *Perfectus,* 391 F. Supp. 3d at 1356.

Further, Commerce reasoned that, despite requesting additional specific details from AKCA, the four vague production scenarios were sufficient because they cover a range of products, and *Fabuwood Cabinetry I* is inapplicable.  *See* Final Scope Ruling at 10.  Commerce attempts to absolve itself of the decision to initiate a deficient scope request because *Fabuwood Cabinetry I* involved an amended scope request is without merit.  *See* Final Scope Ruling at 10 (citing *Fabuwood Cabinetry I*, 469 F. Supp. 3d at 1383, sustained in *Fabuwood Cabinetry II*, 519 F. Supp. 3d at 1339 (CIT 2021)).

Instead, Commerce overlooks the Court's instruction that 19 C.F.R. § 351.225(c) requires that a scope ruling request must include a detailed description of the product, including its technical characteristics and uses, and its current U.S. Tariff Classification number.  *See Fabuwood Cabinetry I*, 469 F. Supp. 3d at 1383.  Specifically, Commerce must address the "threshold question of whether the request was specific enough to provide an adequate basis for a scope ruling."  *Id*.  Further, *Fabuwood Cabinetry I* is analogous because "parties commented that 'the request was deficient because it only generally described various alleged products, did not have complete or detailed information on any specific product as imported into the United States, and was insufficiently supported with actual evidence.'"  *Id.* (internal brackets omitted).  Here, AKCA requested a scope ruling on a broad blanket of products, and AKCA continued to request a broad blanket of products in their supplemental questionnaire response.  *See* Supplemental Questionnaire Response at 3.  A request for "any and all merchandise" fails to meet the standard of detailed description of a particular product, which is a fundamental requirement for a valid scope ruling application in accordance with 19 C.F.R. § 351.225(c).

In addition, the third-country processing scenarios set forth in the initial and subsequent supplemental responses provided no detail or foundation to understand which processing was subject to the inquiry as required by 19 C.F.R. § 351.225(c)(2)(i)(E). *See* the Cabinetworks Companies Letter, *Wooden Cabinets and Vanities and Components thereof from The People's Republic of China: Comments on Preliminary Scope Determination* (May 15, 2023) (**VPR 668**); *see also* the Cabinetworks Companies Letter, *Wooden Cabinets and Vanities and Components thereof from The People's Republic of China: Comments on Preliminary Scope Determination* (May 15, 2023) (**MPR** 160). Commerce's stance that the Petitioner does not need to provide specific information and limit scope ruling requests to certain individual production scenarios supplemented with evidence contradicts 19 C.F.R. § 351.225, and judicial precedent. Thus, Commerce's position that the production scenarios at issue were sufficiently supported is unsupported by substantial evidence or in accordance with law.

Commerce also argued that no parties asserted that the production scenarios were vague or unclear, and instead, and claimed not to source wooden cabinets, components, or component parts from China. Final Scope Rulings at 10. In addition, Commerce argued that it would be unreasonable (and inconsistent with 19 C.F.R. § 351.225(c)(2)) to require that the petitioner further limit its scope ruling request to certain individual production scenarios given that detailed firsthand knowledge of the production experiences of Vietnamese cabinet producers is not information that is reasonably available to it. Final Scope Rulings at 10-11. **VPR 754; MPR 229** We can thus, conclude that Commerce acknowledges the failure of AKCA to satisfy the requirements to initiate a scope proceeding under the regulations but nonetheless initiated this instant scope proceedings.

Commerce's determination in the Final Scope Ruling is not supported by substantial evidence or in accordance with law. The Cabinetworks Companies request that the Court remand the agency for reconsideration.

## H. Commerce's Substantial Transformation Analysis Is Not Supported By Substantial Evidence.

Commerce determined that WCV produced in Malaysia or Vietnam under Scenarios 1, 2, and 3 are of Chinese origin. *See* Malay'n. Final Scope Ruling, **MCR 74** at 1; Viet. Final Scope Ruling, **VCR 73** at 1; *Final Scope Determination*. Commerce's scope determination, ostensibly based on its substantial transformation analysis under 19 C.F.R. § 351.226(j), is arbitrary, capricious, unsupported by substantial evidence, and contrary to law.. Commerce's analysis falls short by relying on incomplete and speculative evidence, misapplying the seven-factor test, and ignoring contrary record data and party arguments. The Cabinetworks Companies request that the Court remand the Final Scope Rulings with instructions to reconsider Scenarios 1, 2, and 3 consistent with law and a fully developed evidentiary record.

### 1.     Legal Framework

Scope determinations, such as those at issue in this case, are conducted by Commerce consistent with determining the country of origin under 19 C.F.R. § 351.226(j). This regulation provides that "[i]n considering whether a product is covered by the scope of the order at issue, the Secretary may need to determine the country of origin of the product." 19 C.F.R. § 351.226(j). The regulation further clarifies that "the Secretary may use any reasonable method and is not bound by the determinations of any other agency, including tariff classification and country of origin marking rulings issued by U.S. Customs and Border Protection." *Id*.

Consequently, Commerce is afforded broad discretion to conduct a substantial transformation analysis, tailored to the facts of each case, by evaluating relevant factors such as:

> (i) Whether the processed downstream product is a different class or kind of merchandise than the upstream product;

> (ii) The physical characteristics (including chemical, dimensional, and technical characteristics) of the product;

> (iii) The intended end-use of the downstream product;

> (iv) The cost of production/value added of further processing in the third country or countries;

> (v) The nature and sophistication of processing in the third country or countries; and

> (vi) The level of investment in the third country or countries.

See 19 C.F.R. § 351.226(j)(1).

Additionally, Commerce "may consider where the essential component of the product is produced or where the essential characteristics of the product are imparted." 19 C.F.R. § 351.226(j)(2). This detailed, case-specific approach ensures that the analysis aligns with the statutory goal of preventing circumvention under 19 U.S.C. § 1677j.

Judicial precedent further shapes this framework. The Federal Circuit has consistently endorsed the substantial transformation test as the cornerstone for determining the country of origin of imported articles. In *Bell Supply Co., LLC v. United States*, 888 F.3d 1222, 1228 (Fed. Cir. 2018), the Federal Circuit affirmed that substantial transformation occurs when "as a result of manufacturing or processing steps . . . {,} the {product} loses its identity and is transformed into a new product having a new name, character and use." *Id. citing Bestfoods v. United States*, 165 F.3d 1371, 1373 (Fed. Cir. 1999).

This Court has provided additional guardrails holding that Commerce must consider the totality of production processes, rejecting overly narrow interpretations of transformation. *See Mid Continent Nail Corp. v. United States*, 712 F. Supp. 2d 1370, 1377 (Ct. Int'l Trade 2010), *affirmed by* 825 F.3d 1297 (Fed. Cir. 2016). Significantly, the court has stated that Commerce's failure to address significant contrary evidence renders a determination unsupported, reinforcing the evidentiary rigor required. *See Agilent Techs. v. United States*, 256 F. Supp. 3d 1338, 1343 (Ct. Int'l Trade 2017) ("If the Department fails to consider or discuss record evidence which, on its face, provides significant support for an alternative conclusion, {its} determination is unsupported by substantial evidence.") (internal brackets omitted).

## I.   Commerce's Analysis Lacks Substantial Evidence Due to Insufficient Record Support

Substantial evidence requires "more than a mere scintilla" of proof, grounded in specific, record-based facts. *Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927, 933 (Fed. Cir. 1984). Commerce's conclusions for Scenarios 1, 2, and 3 (Final Scope Rulings at 13-25) fail to meet this standard.  In fact, Commerce's determination in the scope determination at issue in this case rests on vague assertions rather than the "specific and tangible evidence" demanded by the court. *See Sunpreme Inc. v. United States*, 946 F.3d 1300, 1318 (Fed. Cir. 2020).".

With respect to Scenario 1, which addresses finished components combined in a third country, Commerce found no substantial transformation when finished Chinese doors, drawer fronts, and frames are combined with third-country boxes and drawers. *See Final Scope Rulings* at 14-15, 21-23. The record, however, lacks critical data such as actual cost details, investment specifics, or detailed assembly processes—beyond AKCA's broad descriptions of hypothetical scenarios. Malay. Scope Request, **MCR 1-16** at 8; Viet. Scope Request, **VCR 1-7** at 8;

Supplemental Questionnaire Responses, **MPR 37** at 5-6. The Cabinetworks Companies highlighted this gap, yet Commerce's Post-Preliminary Analysis offers no quantifiable support. *See* Cabinetworks Companies Case Brief, **MPR 194** at 3-7; *see also* Post-Preliminary Analysis Memorandum, **MCR 71** at 8-11. This failure to provide evidentiary support renders the finding unsustainable and should therefore be remanded.

In addition, for Scenario 2, which addresses semifinished Chinese components further processed in Vietnam or Malaysia, and Scenario 3, which addresses semifinished parts assembled into finished components, Commerce's Preliminary Scope Rulings admitted "insufficient evidence" on cost, sophistication, and investment. *See* Viet. Prelim., **VCR 40** at 58; Malay. Prelim., **MCR 43** at 52. The Final Scope Rulings claim new data resolves this infirmity but cite only generalized processes such as "trimming, cutting, painting" without metrics like the value added or labor costs. *See* Final Scope Rulings at 15-19.

The Federal Circuit has rejected such conclusory statements absent specific evidence. *See Changzhou Hawd Flooring Co. v. United States*, 848 F.3d 1006, 1011-12 (Fed. Cir. 2017). Commerce's own inconsistent findings on factors such as value add, and the sophistication of the production process support a determination that a substantial transformation resulted from production under Scenario 3 but were insufficient under Scenario 2. *See* Final Scope Rulings at 15-19. The lack of any explanation tied to record data fails to satisfy the requirement for a reasoned basis for Commerce's determination. *See SKF USA Inc. v. United States*, 254 F.3d 1022, 1028 (Fed. Cir. 2001).

The Cabinetworks Companies challenged the evidentiary basis throughout. *See* Cabinetworks Companies Viet. Rebuttal Comments, **VPR 678** at 3-5. Nevertheless, Commerce ignored these critiques. *See* Final Scope Rulings at 8-25. Commerce's failure to address the

significant shortcomings in the evidence in this case must result in a remand for Commerce to reconsider the complete record. *See Timken Co. v. United States*, 894 F.2d 385, 389 (Fed. Cir. 1990).

**J.  Commerce Misapplied the Substantial Transformation Test, Contrary to Law and Precedent**

Commerce applies the substantial transformation test under19 C.F.R. § 351.226(j)(2) to determine country of origin in scope proceedings. *Canadian Solar, Inc. v.United States*, 918 F.3d 909, 917 (Fed. Cir. 2019) . Commerce's analysis deviates from this standard and its own precedent, rendering it not in accordance with law. *See* id.; *see also Motor Vehicle Mfrs. Ass'n of United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 46–49 (1983); *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 516 (2009). Specifically, Commerce unreasonably relied on the intended end use of the finished products, mischaracterized the essential components, and inconsistently weighed the factors under consideration.

Commerce emphasized that under production Scenarios 1, 2, and 3, the finished products retain the intended end use as WCV, negating a claimed substantial transformation. *See Final Scope Rulings* at 14-15. This approach improperly prioritizes a single factor, contrary to the multi-factor balancing required by the regulations and court precedent. In *Bell Supply Co. v. United States*, 888 F.3d 1222, 1228-29 (Fed. Cir. 2018), the Federal Circuit upheld a determination that a substantial transformation had indeed occurred where Chinese steel tubing was processed into finished oil country tubular goods (OCTG) in Indonesia. *Id.* Despite the end use as OCTG remaining consistent, emphasizing that changes in name, character, or technical specifications outweighed the retained functional purpose. *Id*. Here, the production under Scenario 3's involving semi-finished parts into finished components alters their character. *See*

Supplemental Questionnaire Responses at 6.  Commerce dismissed the processing performed

under Scenario 3, emphasizing the consistent end use.

Commerce's focus on where production "started" (Final Scope Rulings at 23)—e.g.,

deeming Chinese semifinished parts the "essential component" in Scenarios 2 and 3 (Id. at 21-

24)—contradicts precedent requiring a totality-of-circumstances approach.  Here, Commerce

overlooked Scenario 2's finishing and Scenario 3's assembly (Final Scope Rulings at 18-19),

despite evidence of value added (DH Exporters' Viet. Rebuttal Comments at 3-4).

Commerce claimed equal weighting of all seven factors notwithstanding the fact that the

value-add, nature and sophistication of the production, and the level of investment each

supported a determination that a substantial transformation has resulted from the production

performed under Scenarios 2 and 3. *See* Final Scope Rulings at 24-25.  Rather, Commerce

unreasonably overrode these factors in favor of an analysis focused almost exclusively on end

use and essential components. *See id*.

### K.  Commerce Failed to Address Contrary Evidence and Arguments, Violating Procedural Norms

Commerce's dismissal of substantial contrary evidence and party arguments renders its

ruling arbitrary (Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43

(1983)). The Cabinetworks Companies argued: (1) AKCA's scenarios were too vague for a

proper analysis (Cabinetworks Companies Scope Comments, V.P.R. 292 at 3-5); (2)

semifinished components fall outside the Orders (Cabinetworks Companies Viet. Rebuttal

Comments at 2-3); and (3) the Post-Preliminary Analysis was flawed (Cabinetworks Companies

Case Brief at 3-7). DH Exporters similarly contested the transformation conclusions (DH

Exporters' Malay. Rebuttal Comments, M.P.R. 171 at 3-5). Commerce's cursory response (Final

Scope Rulings at 8-25) lacks the "reasoned explanation" required (Fuzhou Light Indus. Imp. & Exp. Co. v. United States, 36 CIT 848, 860, 859 F. Supp. 2d 1370, 1380 (2012)).

1. **Commerce's Reliance on an Incomplete Record Undermines Its Determination**
Commerce's shift from "insufficient evidence" in the Preliminary Scope Rulings (Viet. Prelim. at 58) to definitive findings in the Final Scope Rulings (Final Scope Rulings at 15-25) lacks evidentiary grounding. AKCA's narrowed submissions (AKCA Post Prelim Comments, M.C.R. 66) failed to provide specifics like cost percentages or investment data, as noted by the Cabinetworks Companies (Cabinetworks Companies Viet. Rebuttal Comments at 3-5). The CIT has invalidated such "unsupported leaps" (SSAB N. Am. Div. v. United States, 39 CIT __, 82 F. Supp. 3d 1351, 1362 (2015)), and the Federal Circuit requires "substantial evidence of record" for scope rulings (Crawfish Processors All. v. United States, 477 F.3d 1375, 1380 (Fed. Cir. 2007)).

Commerce's substantial transformation analysis is not supported by substantial evidence, relying on speculation over concrete data, and is not in accordance with law, misapplying 19 C.F.R. § 351.226(j) and departing from binding precedent. The Court should remand under 5 U.S.C. § 706(2)(A) and (E), directing Commerce to: (1) reopen the record for specific evidence on all factors; (2) reapply the test consistent with Bell Supply and Mid Continent Nail; and (3) address party objections fully

2. **Analysis**
Commerce's substantial transformation analysis flawed because there were significant issues raised following the issuance of the Preliminary Scope Determination questioning the reliability of Petitioners' data.  Following the issuance of the Preliminary Scope Determination, parties raised concerns concerning the reliability of AKCA's data.  *See* Cabinetworks Companies Case Brief at 7 (adopting other parties comments disputing Commerce's substantial

transformation arguments); s*ee* Letter from American Woodmark Corporation*, Rebuttal Comments on Preliminary Scope Determination, Wooden Cabinets and Vanities and Components Thereof From the People's Republic of China* (May 22, 2023) (M.P.R. 169) (V.P.R. 677) at 2; *see also* DH Exporters' Viet. Rebuttal Comments at 5.  First, AKCA's cost of production model based on data from Wellborn Cabinet, Inc.'s data lacks comparability to China, Vietnam, and Malaysia.  *See* AKCA Letter, Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China –Factual Information (April 13, 2023) (M.P.R. 153-55) (M.C.R. 62-64) (V.P.R. 658-660) (V.C.R. 59-61) ("AKCA NFI Filing").  Further, AKCA's data has not proven reliable given that the calculations are not reconciled to Wellborn's financial statements.  *See e.g.*, DH Exporters' Rebuttal Comments at Section II.  Moreover, these issues continued to be unaddressed.  Finally, Commerce determined that only *three* of the seven prongs support a determination that substantial transformation in Scenario 3, however, Commerce continued to determine that substantial transformation occurred in the third country. *See id*. at 24.

First Commerce's use of the unreliable Wellborn Cabinet, Inc.'s data is unreasonable. Specifically, DH Exporters stated that there were several deficiencies with the Wellborn cost building up because the "Wellborn cabinet model's box is largely made from particle board, which is much cheaper than plywood" and "cabinet producers in China, Vietnam, and Malaysia use plywood to produce cabinet boxes."  DH Exporters' Viet. Rebuttal Comments at 5 (citing Pet. Case Br. at Exhibit 2a, COP Phase 1(a); Dep't Commerce, Memorandum: Information from the First Administrative Review (Mar. 16, 2023) at Attachment 1.  Further, DH Exporters explained AKCA failed to demonstrate that Wellborn's product has 4 doors, 4 drawer faces, but only 2 drawer boxes and no shelf was even a typical RTA cabinet model sold to the U.S. from

China, Vietnam, Malaysia.  There is no information to suggest that this is a typical RTA cabinet Wellborn sold to its U.S. customers in the inquiry period.

Moreover, AKCA only provided the consumption rates of various wood inputs in different stages but did not provide the by-product rates.  As a result, the cost percentage for is significantly overstated and more distortive.  *See* DH Exporters' Viet. Rebuttal Comments at 6.  Next, the Wellborn data also included direct USD cost for some inputs and for others used consumption quantity multiplied by surrogate values.  *See* AKCA Post Prelim Comments at Exhibit 2(e), Input Values.  This results in mixed calculations between non-comparable market economies and surrogate countries comparable with the third country under investigation.

Further, DH Exporters pointed out that the phase 3 cost buildup is highly inaccurate as well.  DH Exporters' Viet. Rebuttal Comments at 6-7.  Therein, the ratio calculated by AKCA failed to establish that it was reasonable to estimate the phase 3 labor consumption rate when there are different scales of factory production and level of mechanization.  *See id*.; *see* AKCA Post Prelim Comments at 12 & Exhibit 2(d), COP Phase 3.  Finally, DH Exporters demonstrated that the Wellborn cost building up contained several deficiencies, such as "the correct number of drawer slides or any screws needed to install hinges or install drawer slides, drawer pulls, door knobs, etc."  *See* DH Exporters' Viet. Rebuttal Comments at 7.  Thus, it is unconscionable for Commerce to sweepingly disregard such deficiencies and continue to rely on the Wellborn Cabinet, Inc.'s data despite the parties raising serious concerns about its deficiencies.

Nevertheless, Commerce summarily asserted that the Wellborn data was suitable because the parties did not provide any additional information.  *See* Final Scope Ruling at 15-18.  However, Commerce's cursory explanation fails to account for the significant deficiencies as outlined by the parties and provides little explanation besides simply stating the issues with the

provided information.  *See Agilent Techs. v. United States*, 256 F. Supp. 3d 1338, 1344 (Ct. Int'l

Trade 2017) ("Commerce's entire analysis of the record evidence was contained, however, in a

single conclusory paragraph," and "Commerce's cursory explanation failed to address the

considerable amount of record evidence submitted by Agilent… .").  Further, parties asserted

that the information placed by Commerce on the record, Qufu was more accurate to the type of

products made in China, Vietnam, and Malaysia.  *See* DH Exporters' Viet. Rebuttal Comments

at 6 ("The Wellborn cabinet model's box is largely made from particle board, which is much

cheaper than plywood.  Cabinet producers in China, Vietnam, and Malaysia use plywood to

produce cabinet boxes.").  Thus, is unreasonable for Commerce summarily ignore facts in favor

reaching its desired outcome.

        Next, Commerce contends that "all seven prongs of the analysis were weighted equally"

yet the agency determined that four of the seven factors indicated that substantial transformation

did not occur in the third country in Scenario 3. *See id*. at 24.  However, the parties explained

that "the intended end-use of the downstream product (i.e., RTA cabinet), as exported from

Vietnam to the U.S., is to function as permanently installed cabinetry," Commerce's analysis of

"the intended end-use of the upstream products exported from China to Vietnam in Scenarios 2

and 3" is flawed.  DH Exporters, Wooden Cabinets and Vanities and Components Thereof from

the People's Republic of China: DH Exporters' Comments on the Preliminary Determination,

(May 15, 2023) at 16-17 (V.P.R. 669); DH Exporters, Wooden Cabinets and Vanities and

Components Thereof from the People's Republic of China: DH Exporters' Comments on the

Preliminary Determination, (May 15, 2023) at 15-16 (M.P.R. 161).  For example, "{i}n both

scenarios, the upstream products could have a different intended end-use, that is, being

incorporated into a cabinet that does not function as permanently installed cabinetry and instead

being incorporated into a free-standing piece of furniture, such as living room display cabinets, television cabinets, buffets and sideboards, sauce and soda stations." *Id*. at 17.  Accordingly, Commerce failed to consider that the upstream unfinished products can be incorporated into any of the free-standing furniture meeting the physical description of the scope but are not for permanent installation.  *See id.*

Moreover, the parties even raised that Commerce previously issued a scope ruling that excluded beverage centers with "cabinet-style box on the bottom designed to house a mini-fridge with shelving units above the box for storing items" and "drawers with a manual close feature, with drawer front."  *See id.* (citing American Home Furnishings Alliance, Antidumping and Countervailing Duty Orders on Wooden Cabinets and Vanities from the People's Republic of China: Comments and Rebuttal Factual Information on Anti-Circumvention Inquiry Request (July 7, 2022) (M.P.R. 82) (V.P.R. 665) at Exhibit 5 (Dep't Commerce, Memorandum, Certain Wooden Cabinets and Vanities and Components thereof from the People's Republic of China: Scope Ruling on Walt Disney Parks & Resorts U.S., Inc.'s Beverage Station and Centers at 2 (May 2, 2022)).  However, this ruling is completely unaddressed in any of Commerce's decisions.  Thus, Commerce disregard for even its own scope rulings to inform the basis of its decision warrants a remand alone.

Therefore, Commerce's substantial transformation analysis relies on deficient information, and the Final Scope Rulings fail to adequately address the parties' arguments.  *See Venus Wire Indus. Pvt. Ltd. v. United States*, 424 F. Supp. 3d 1369, 1380 (Ct. Int'l Trade 2019) ("For these reasons, Commerce's wholesale disregard of its established substantial transformation test requires further consideration and explanation by the agency.").  Thus,

Commerce's substantial transformation analysis is not supported by substantial evidence or in accordance with law.

**L. Commerce's Country-Wide Certification Regime Is Unnecessary, Overly Burdensome, And Lacks Legal Authority**

In the underlying proceeding, Commerce implemented a country-wide certification regime for all wooden cabinets exported from Vietnam. *See* Final Scope Ruling at 26-39; *see also* 19 C.F.R. § 351.228 (noting that Commerce may establish certification requirements in the context of an AD or CVD proceeding). As part of the agency reasoning, it noted that the in-scope inquiry merchandise "is not facially discernible from non-subject merchandise," and constitutes an "evasion concern." Final Scope Ruling 28-29. As a result, Commerce imposed a certification regime that was unreasonable as it created a complicated, burdensome, and inadministrable regime given the hypothetical production scenarios set forth in the underlying proceeding. Further, Commerce failed to meaningful address the issue that a process must be created to allow importers the ability to regain the right to certify after losing it. *See* Cabinetworks' Comments on Proposed Certification at 7. Instead, Commerce decided "{i}f such an issue arises in the future, Commerce can consider it on a case-by-case basis." Final Scope Rulings at 35. Finally, the certification regime created unnecessary legal hurdles for U.S. importers while ignoring CBP's enforcement capabilities for product subject to AD and/or CVD duties.

In its Final Scope Ruling, Commerce argued that it may establish certification requirements in the context of an AD or CVD proceeding even though it is CBP's responsibility, where necessary, to verify that representations made by an importer at the time of entry are correct. *See* Final Scope Ruling at 26-27. Nonetheless, Commerce argued that this agency authority is permissible because of its regulations, *2021 Final Rule*, and agency deference to

interpret its own antidumping and countervailing duty orders.  *Id.*; *see* 19 C.F.R. § 351.228; *see also Regulations to Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws*, 85 Fed. Reg. 49,472, 49,491 (Dep't of Commerce August 13, 2020); *see also Regulations to Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws*, 86 Fed. Reg. 52,300, 52,362-64 (Dep't of Commerce September 20, 2021) (*2021 Final Rule*).  Next, Commerce argued that "…a certification regime is reasonable because it will ensure that Commerce can effectively enforce the *Orders*."  Final Scope Ruling at 28-29.

"However, for a court to conclude that an agency has the power to give meaning to the words of the statute, the source of the agency's authority must be found in the words of the statute; it cannot be presumed by virtue of silence or ambiguity."  *Ventura Coastal, LLC v. United States*, 736 F. Supp. 3d 1342, 1357 (Ct. Int'l Trade 2024) (citing *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 395 (2024)).  Here, Commerce's regulatory overstep is not derived from any statutory authority.  *See generally* 19 U.S.C. § 1671-1677n.  Commerce is responsible for determining a scope of an order, and it is CBP's responsibility for administering its findings.  Commerce has no role in how CBP administers the import of non-subject merchandise.  Moreover, 19 U.S.C. § 1517(b)(3) already permits Commerce refer to an issue to CBP where they have information that reasonably suggests that a person has imported covered merchandise through evasion.  19 U.S.C. § 1517(b)(3).

As a result, Commerce's self-anointed role to also enforce antidumping and countervailing duties orders serves is impermissible because CBP already has the authority to address the misdeclaration of imports and importers must certify the accuracy of declarations made to CBP.  Where importers are found to have misrepresented imports, importers are subject

to steep fines and penalties under 19 U.S.C. § 1592. Thus, Commerce has no congressional authority derived from the statute to impose a complicated, burdensome, and unruly certification regime based upon a hypothetical production scenario. Therefore, the establishment of a certification regime is unnecessary, overly burdensome, and lacks legal authority.

## VI.    CONCLUSION

For the reasons set forth in this brief, the Cabinetworks Companies respectfully requests that this Court hold that Commerce's Final Scope Rulings is not supported by substantial evidence and otherwise not in accordance with law. The Cabinetworks Companies respectfully request this Court to remand this matter to Commerce with instructions to issue a new determination that is consistent with this Court's decision.

Respectfully Submitted,

By:    /s/ William Francis Marshall
William Francis Marshall
**SANDLER TRAVIS & ROSENBERG, P.A.**
1300 Pennsylvania Avenue, N.W.
Suite 400
Washington, DC 20004
Tel: (212) 549-0138
Fax: (202) 842-2247

*Counsel to ACProducts, Inc., ACPI Wood Products, LLC, Cabinetworks Group Michigan, LLC, Cabinetworks Group Middlefield, LLC, Master Woodcraft Cabinetry L.L.C., and Smart, LLC*

Dated:  February 26, 2025

**Certificate of Compliance**

The undersigned hereby certifies that the foregoing brief contains 13,837 words, inclusive of footnotes, exclusive of the table of contents, table of authorities, certificates of counsel, and counsel's signature block, and therefore complies with the maximum 14,000-word count limitation.

By:     <u>/s/ William Francis Marshall</u>
*Counsel to ACProducts, Inc., ACPI Wood Products, LLC, Cabinetworks Group Michigan, LLC, Cabinetworks Group Middlefield, LLC, Master Woodcraft Cabinetry L.L.C., and Smart, LLC*

Dated:  February 26, 2025