# UNITED STATES COURT OF INTERNATIONAL TRADE

**BEFORE: THE HONORABLE STEPHEN ALEXANDER VADEN**

| | |
|---|---|
| ACPRODUCTS, INC., ACPI WOOD PRODUCTS, LLC, CABINETWORKS GROUP MICHIGAN, LLC, CABINETWORKS GROUP MIDDLEFIELD, LLC, MASTER WOODCRAFT CABINETRY L.L.C., AND SMART, LLC, <br><br> *Plaintiffs,* <br><br> v. <br><br> UNITED STATES, <br><br> *Defendant,* <br><br> *and* <br><br> AMERICAN KITCHEN CABINET ALLIANCE, <br><br> *Defendant-Intervenor.* | Court Nos. 24-00155, 24-00156 |

## PLAINTIFF'S REPLY BRIEF TO DEFENDANT AND DEFENDANT-INTEVENORS' RESPONSE

William Marshall
**Sandler Travis & Rosenberg, P.A.**
675 Third Avenue
Suite 2425
New York, New York  10017
Tel: (212) 549-0138

Dated: June 27, 2025

**TABLE OF CONTENTS**

I.    **Standard of Review** ................................................................................................ 1

II.   **COMMERCE'S INITIATION OF A SCOPE INQUIRY ON THE BASIS OF UNSUBSTANTIATED AND HYPOTEHTICAL PRODUCTION SCENARIOS WAS CONTRARY TO LAW** ........................................................................................ 3

III.  **COMMERCE'S DETERMINATION IS AN IMPERMISSBLE EXPANSION OF THE SCOPE OF THE ORDERS** ........................................................................................ 5

IV.   **COMMERCE'S SUBSTANTIAL TRANSOFMRATION ANALYSIS IS UNSUPPORTED BY RECORD EVIDENCE** ........................................................................................ 6

V.    **CONCLUSION** ........................................................................................ 8

<u>**TABLE OF AUTHORITIES**</u>

**Cases**

*Am. Silicon Techs. v. United States,* 261 F.3d 1371, 1376 (Fed. Cir. 2001)................................... 2

*Chevron, U.S.A., Inc. v. NRDC, Inc*., 467 U.S. 837, 865, 866 (1984) .................................. 1

*Fabuwood Cabinetry Corp. v. United States*, 469 F. Supp. 3d. 1373 (Ct. Int'l Trade 2020).......... 5

*Fabuwood Cabinetry Corp. v. United States*, 519 F. Supp. 3d. 1335 (Ct. Int'l Trade 2021).......... 5

*Fujitsu Gen. Ltd. v. United States,* 88 F.3d 1034, 1044 (Fed. Cir. 1996) ....................................... 2

*Glycine & More, Inc. v. United States*, 880 F.3d 1335, 1344 (Fed. Cir. 2018) .............................. 4

*JBLU, Inc. v. United States*, 813 F.3d 1377, 1380 (Fed. Cir. 2016)................................................ 4

*Loper Bright Enters. V. Raimondo*, 144 S. Ct. 2244 (2024) ...................................................... 1, 2

*SKF USA Inc. v. United States*, 254 F.3d 1022, 1028 (Fed. Cir. 2001).......................................... 9

**Statutes**

19 U.S.C. § 1677j(b)(1)(E) ................................................................................................... 3

**Administrative Authorities**

*Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China: Antidumping Duty Order*, 85 Fed. Reg. 22,126 at 21,133 (Apr. 21, 2020) ........................... 5, 6

*Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China: Countervailing Duty Order*, 85 Fed. Reg. 22,134 (Apr. 21, 2020)............................................. 5

**Regulations**

19 C.F.R. § 351.225(a)...................................................................................................... 3, 4

19 C.F.R. § 351.225(c)(1) ...................................................................................................... 3

19 C.F.R. § 351.225(c)(1)(i) ................................................................................................... 3

Consolidated Plaintiffs Cabinetworks Group, Inc. f/k/a/ ACProducts, Inc., ACPI Wood Products, LLC, Cabinetworks Group Middlefield, LLC, Cabinetworks Group Michigan, LLC, (collectively, "Plaintiffs"), by and through their attorneys, hereby submit the following reply to Defendant United States' Response to Plaintiffs' Rule 56.2 Motions for Judgment on the Agency Record (June 6, 2025), ECF No. 40 ("Def. Br.") and Defendant-Intervenor he American Kitchen Cabinet Alliance ("AKCA") Response to Motion for Judgment on the Agency Record (BPI Final Version, June 6, 2025), ECF No. 41 ("AKCA Resp. Br.").

## ARGUMENT

### I.    STANDARD OF REVIEW

Defendant misconstrues the standard of review in this case.  At the outset, Plaintiffs note that the Supreme Court decided *Loper Bright Enters. V. Raimondo* on June 28, 2024,, which changes the standard of review and the level deference to which a government agency may be entitled. S*ee Loper Bright Enters. V. Raimondo*, 144 S. Ct. 2244 (2024). *Loper* concerned the question as to whether the Court owed deference under *Chevron* to the National Marine Fisheries Service's interpretation of its authority to require owners of regulated vessels to pay for at-sea monitors. *Loper*, 144 S. Ct. 2244, 2256. The National Marine Fisheries Service is a U.S. Federal agency within the U.S. Department of Commerce, and according to the *Chevron* doctrine, courts were required to defer to "permissible" agency interpretation of the statutes they administer. *Id*. at 2254. *See Chevron, U.S.A., Inc. v. NRDC, Inc*., 467 U.S. 837, 865, 866 (1984). In *Loper*, the Supreme Court overruled *Chevron*, stating:

> *Chevron* is overruled. Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires. Careful attention to the judgment of the Executive Branch may help inform that inquiry. And when a particular statute delegates authority to an agency consistent with constitutional limits, courts must respect the

1

delegation, while ensuring that the agency acts within it. But courts need not
and under the APA may not defer to an agency interpretation of the law
simply because a statute is ambiguous.

*Loper*, 144 S. Ct. 2244, 2273. The standard of review for this court is therefore to apply all

relevant tools in interpreting the U.S. antidumping statute to conclude which interpretation is

best. *Id*. at 2266 ("It therefore makes no sense to speak of a 'permissible' interpretation that

is not the one the court, after applying all relevant interpretive tools, concludes is best. In the

business of statutory interpretation, if it is not the best, it is not permissible.").

In their response briefs, neither the Government nor AKCA discussed the effect that *Loper* has

on this Court's review of Commerce's circumvention determination, which is the subject of this

litigation. Indeed, neither Defendant nor Defendant-Intervenors contended with *Loper* at all.

*See* Def. Rsp, Br. at 8*;* AKCA Rsp. Br. at 3. Defendant cited *Am. Silicon Techs. v. United

States,* 261 F.3d 1371, 1376 (Fed. Cir. 2001), which itself cites *Fujitsu Gen. Ltd. v. United

States,* 88 F.3d 1034, 1044 (Fed. Cir. 1996) articulating the substantial evidence standard. *See*

Def. Resp. Br. at 8. It is thus the contention of the Government and AKCA that the applicable

standard of review here is limited to that of Commerce's findings of fact. *See* Def. Rsp, Br. at

8*;* AKCA Rsp. Br. at 3. However, the questions before this court go the meaning of the

antidumping statute—authority delegated to this Court by Congress and not to Commerce. *See*

Loper Bright 144 S. Ct. 2244 (2024).

Further, in relying of *Fujitsu* and its progeny, Defendant apparently maintains that

"'{t}his deference is both greater than and distinct from that accorded the agency in

interpreting the statutes it administers, because it is based on Commerce's technical expertise

in identifying, selecting and applying methodologies to implement the dictates set forth in the

governing statute, as opposed to interpreting the meaning of the statute itself where

2

ambiguous.'" *Id*. Defendant's arguments misconstrue the standard of review and the standard

it puts forth here has been invalidated by *Loper*.

The circumvention statute does not delegate unfettered authority to Commerce. The

current antidumping statute provides that Commerce must determine whether action is

appropriate, but only if the criteria set forth in 19 U.S.C. § 1677j(b)(1)(A) – (D) are met. 19

U.S.C. § 1677j(b)(1)(E). Commerce's statutory interpretations under this circumvention

statute is not binding. The Court owes no deference to Commerce's interpretations under this

statute.

## II.     COMMERCE'S INITIATION OF A SCOPE INQUIRY ON THE BASIS OF UNSUBSTANTIATED AND HYPOTEHTICAL PRODUCTION SCENARIOS WAS CONTRARY TO LAW

The regulations authorize scope ruling proceedings only when "{i}ssues arise as to

whether a particular product is included within the scope of an antidumping or countervailing

duty order . . . ." 19 C.F.R. § 351.225(a) (emphasis added). An interested party may apply for a

scope ruling "as to whether a particular product is within the scope of an order . . . ." 19 C.F.R. §

351.225(c)(1) (emphasis added). The application must contain "a detailed description of the

product, including its technical characteristics and uses, and its current U.S. Tariff Classification

number." 19 C.F.R. § 351.225(c)(1)(i) (emphasis added). The U.S. Court of Appeals for the

Federal Circuit has explained that "{w}hen construing an agency regulation as a matter of law,

{a court} use{s} basically the same rules {it} would use in construing a statute." *Glycine &*

*More, Inc. v. United States*, 880 F.3d 1335, 1344 (Fed. Cir. 2018) (internal citations omitted). On

appeal, the Court should give effect to the plain meaning of regulations. *See JBLU, Inc. v. United*

*States*, 813 F.3d 1377, 1380 (Fed. Cir. 2016) ("If a regulation is clear on its face, no deference is

given to the promulgating agency's interpretation, and {the court} interpret{s} the regulation in accordance with its unambiguous meaning." (citation omitted)).

As explained more fully in Plaintiff brief, the repeated use of the term "particular" in section 351.225 of the regulations emphasizes the need for an application to provide details about the product for which the requestor seeks a scope ruling. Pl. Br. at 28.  There was nothing "particular" about the scope ruling request in this case. To the contrary, AKCA took the position that "the product covered in the {scope} application is *any and all* merchandise that meets the scope of the Orders that is further processed in Malaysia and that continues to meet the scope of the Orders after further processing {sic} Malaysia and upon entry into the United States." AKCA Response to Request for Additional Information (May 17, 2022) at 3 (Appx1942-1952).  The Government attempts to address this obvious deficiency by stating that the regulations only require parties to provide information that was reasonably available to them. Def. Br. at 11.

As a result, Commerce's initiation of a scope inquiry, which is based on a broad description of a *category* of products and a "non-exhaustive" list of hypothetical production scenarios, is entirely inconsistent with the Department of Commerce's own regulations and its clearly stated practice.  The clear mandate of Commerce's regulations provide that scope inquiry is intended to determine "whether a *particular* product is covered by the scope of an antidumping or countervailing duty order." 19 C.F.R. § 351.225(a) (emphasis added).

The Government attempts to distinguish the instant case from that at issue in *Fabuwood Cabinetry Corp. v. United States*, 469 F. Supp. 3d. 1373 (Ct. Int'l Trade 2020) ("*Fabuwood Cabinetry I*") *sustained  by Fabuwood Cabinetry Corp. v. United States*, 519 F. Supp. 3d. 1335 (Ct. Int'l Trade 2021) ("*Fabuwood Cabinetry II*").  The Government claims that Commerce addressed the insufficiency of AKCA's initial scope inquiry request in contrast to *Fabuwood*

4

*Cabinetry I*. Def. Br. at 11. There can be no reconciliation between the regulatory requirements for a valid scope application and the request filed by AKCA, despite the Government's conclusory statements to the contrary. As a result, Commerce's initiation of the scope inquiries at issue in this case is not supported by substantial evidence or in accordance with law

## III.    COMMERCE'S DETERMINATION IS AN IMPERMISSBLE EXPANSION OF THE SCOPE OF THE ORDERS

The Government contends that "the plain language" compels the determination that semifinished components finished in Malaysia and Vietnam are within the scope of the Orders. Def. Br. at 13-14. However, contrary to Defendant's contention, the scope of the Orders does not at all address nor define "semifinished components." As a result, the determination at issue in this case is an impermissible expansion of the scope.

The Orders explicitly include merchandise with finished and unfinished surfaces and "all unassembled, assembled and/or 'ready to assemble' (RTA) wooden cabinets and vanities." *See Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China: Antidumping Duty Order*, 85 Fed. Reg. 22,126 at 21,133 (Apr. 21, 2020); *Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China: Countervailing Duty Order*, 85 Fed. Reg. 22,134 (Apr. 21, 2020). In addition, the Orders unambiguously cover only 6 specific components, namely:

> *wooden cabinet and vanity frames (2) wooden cabinet and vanity boxes (which typically include a top, bottom, sides, back, base blockers, ends/end panels, stretcher rails, toe kicks, and/or shelves), (3) wooden cabinet or vanity doors, (4) wooden cabinet or vanity drawers and drawer components (which typically include sides, backs, bottoms, and faces), (5) back panels and end panels, (6) and desks, shelves, and tables that are attached to or incorporated in the subject merchandise.*

*See id.*

The scope further clarifies that "in-scope components" that are exported and further processed in a third country remain in scope if the further processing would not have removed the merchandise from the scope of the order if performed in the country of origin. *Id.* In all of this discussion in the scope definition of third country further processing and components of wooden cabinets and vanities, there is no discussion of or reference to "semifinished components." In fact, language of the scope cannot be reasonably interpreted to include "Semifinished components."

According to Defendant and AKCA, the phrase "semifinished components" merely refers to components in which "certain production processes occur in China, and others in the third country." Def. Br. at 13.. This phrase, which appears for the first time in AKCA's scope ruling application, is not defined anywhere in the scope definition. Thus, the plain language of the scope of the Orders at issue here makes it clear that "semifinished components" are not covered by the language of the scope and the scope cannot be reasonably interpreted to include such semifinished components.

## IV.    COMMERCE'S SUBSTANTIAL TRANSOFMRATION ANALYSIS IS UNSUPPORTED BY RECORD EVIDENCE

In its brief, the Government contends that its substantial transformation analysis is supported by substantial record evidence. Def. Br. at 21. This substantial record evidence consists of AKCA's scope ruling application and new factual information provided by AKCA. *Id.* Indeed, the record here is clear that Commerce relied on AKCA's new factual information to conduct its substantial transformation analysis for Scenarios 2 and 3 concerning the analysis of the cost of production; nature and sophistication of processing in the third country, level of

investment in the third country, and the essential character of the components. *See Dept. of Commerce Post Prelim Analysis* (Appx 4953-4961).

Commerce utilized Petitioners' NFI to assess whether each of the prongs of the analysis for Scenarios 2 and 3 weigh in favor or against finding that substantial transformation occurred in the third country. However, there were significant issues raised following the issuance of the Preliminary Scope Determination questioning the reliability of Petitioners' data. *See* L*etter from Curtis, Mallet-Provost, Colt & Mosle LLP to Dep't of Commerce, Re: Rebuttal Comments on Preliminary Scope Determination, Wooden Cabinets and Vanities and Components Thereof From the People's Republic of China* (May 22, 2023) at 2;(appx 4815-1818); *see also* L*etter from DeKieffer & Horgan Rebuttal Comments* at Section II (Appx 4835-4853). These issues are ignored in Commerce's analysis.

For example, interested parties raised serious concerns regarding the AKCA's cost of production model based on data from Wellborn Cabinet, Inc.'s ("Wellborn") production in the United States. *See AKCA's Apr. 13th New Factual Information* at 3-5 and Exhibit 1 (appx. 4572-4640). Specifically, this cost of production data lacks comparability to China, Vietnam, and Malaysia. Moreover, this data has not proven reliable given that the calculations are not reconciled to Wellborn's financial statements. All issues that were raised by interested parties and which Commerce failed to address. The lack of any explanation tied to record data fails to satisfy the requirement for a reasoned basis for Commerce's determination. *See SKF USA Inc. v. United States*, 254 F.3d 1022, 1028 (Fed. Cir. 2001) Commerce's failure to address the significant shortcomings in the evidence in this case must result in a remand for Commerce to reconsider the complete record.

7

## V.    CONCLUSION

In light of the foregoing, Commerce's *Final Determination* is not supported by substantial evidence or in accordance with law.  Plaintiff respectfully requests that this Court remand this matter to Commerce with instructions to issue a new determination that is consistent with this Court's decision.

Respectfully Submitted,

By:    /s/ William Marshall
       William Marshall

       **SANDLER TRAVIS & ROSENBERG, P.A.**
       675 Third Avenue
       Suite 2425
       New York, New York, 10017
       Tel: (212) 549-0138

       *Counsel to Plaintiffs,*

June 27, 2025

**CERTIFICATE OF COMPLIANCE**

Pursuant to Chamber Procedure 2(B)(1), the undersigned certifies that this brief complies with the word limitation requirement. The word count for Plaintiffs' Reply Brief, as computed by Sandler, Travis & Rosenberg P.A.'s word processing system (Microsoft Word), is **2,541** words.

<u>/s/ William Marshall</u>
William Marshall

Counsel to Plaintiffs

June 27, 2025