IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HONORABLE LEO GORDON

| | |
|---|---|
| ACPRODUCTS, INC. *et al.*, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> UNITED STATES, ) <br> ) <br> Defendant, ) <br> ) | Court Nos. 24-00155, -00156 |

**DEFENDANT'S RESPONSE TO PLANTIFF'S SUPPLEMENTAL BRIEF**

For the first time at oral argument, ACP argues that Commerce's initiation of a scope inquiry was founded on an incorrect legal interpretation of the phrase "particular product." The phrase appears only in the regulation's introduction, which also sets forth the general circumstances under which Commerce may determine that "a product" is covered by the scope of an order. Commerce applied the specific requirements of 19 C.F.R. § 351.225(c) and determined the scope application was sufficient to initiate an inquiry, a matter for substantial evidence review.

**ARGUMENT**

**I.  Review of Commerce's Scope Inquiry Initiation Does Not Require a Legal Interpretation of "Particular Product"**

ACP incorrectly argues that the phrase "particular product" under 19 C.F.R. § 351.225(a) poses a legal question that must be interpreted in determining whether Commerce properly initiated a scope inquiry. Supp. Br., ECF 69 at 4. Indeed, the phrase "particular product" appears only once in § 351.225 – in the introduction. The introduction provides a general explanation as to why a scope ruling may be necessary: "Questions sometimes arise as to whether a *particular product* is covered by the scope of an antidumping or countervailing duty

order." 19 C.F.R. § 351.225(a) (emphasis added). But "particular product" is not the only language the introduction uses to describe products subject to a scope inquiry. The introduction explains that Commerce will conduct a scope inquiry "to determine whether or not *a product* is covered by the scope of an order." *Id.* (emphasis added). The introduction then contemplates different scenarios under which Commerce may conduct a scope inquiry. *Id.; see also Regulations To Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws,* 86 Fed. Reg. 52300, 52312 (Dep't of Commerce Sept. 20, 2021) (*2021 Final Rule*) ("Commerce has explained that it will conduct a scope ruling at the request of an interested party or on Commerce's initiative."). Commerce's regulations contain specific requirements for initiating scope inquiries. Relevant to this proceeding, 19 C.F.R. § 351.225(c) identifies the specific information a scope ruling application must contain. It does not use the phrase "particular product," but rather states that parties may request that Commerce determine whether "a product" is covered by the scope of an order and sets forth the factual information that an application must contain about "the product" that is subject to the request. 19 C.F.R. § 351.225(c).

Thus, the use of the phrase "particular product" in the introduction at 19 C.F.R. § 351.225(a) does not set forth an "unambiguous…regulatory mandate," Supp. Br., ECF 69 at 4, that requires a legal interpretation; the phrase is used only to explain why a scope ruling may be necessary. The phrase also requires no legal interpretation because provision (c) of § 351.225 sets forth the relevant factual criteria for determining whether to initiate a scope inquiry based on an application. 19 C.F.R. § 351.225(c)(2)(i) outlines how an interested party must identify the product subject to its application. Those requirements do not depend upon a legal interpretation of "*particular product*," but rather set out the product information necessary for Commerce to

determine whether to initiate an inquiry. *2021 Final Rule,* 86 Fed. Reg. at 52313 (explaining that the elements in section 351.225(c) responded to "various concerns . . . that 'scope ruling requests do not always include the requisite sufficient description and supporting information necessary for Commerce to complete an analysis.'") Therefore, an assessment of whether to initiate a scope inquiry on "a product" or "the product" that is subject to a scope ruling application is not a question of law, but is instead a factual inquiry appropriately reviewed under a substantial evidence standard.

**II.     Commerce Applied the Regulation To The Facts Of The Scope Application Which Requires Substantial Evidence Review**

ACP cannot identify how Commerce interpreted *particular product*. *See* Supp. Br. at 2. Instead, ACP settles on an interpretation that can be "inferred from [Commerce's] determination."[1] This resolves the issue as to whether ACP's challenge is a purely legal one or a challenge to the application of law to fact. Commerce's determination to initiate a scope inquiry here is simple: an application of the requirements of § 351.225(c) to the scope application. And the application of the law to the facts is a substantial evidence challenge. *See Wind Tower Trade Coal. v. United States,* No. 24-00070, 2025 LEXIS 154 at 4-5 (Ct. Int'l Trade Dec. 2, 2025).

---

[1] ACP cites to *Gujarat Fluorochemicals Ltd. v. United States,* 154 F.4th 1376, 1380-81 (Fed. Cir. 2025) for the proposition that where Commerce's interpretation can be inferred from its determination, the Court should analyze the issue as a legal question. Supp. Br. at 2. The Court in that case never mentions Commerce's interpretation of the statute at issue but simply characterizes the dispute as "whether Inox's wind energy was 'primarily dedicated' to Gujarat's downstream production under 19 C.F.R. § 351.525(b)(6)(iv)." *Gujarat,* 154 F.4th at 1381. The issue on appeal was therefore "one of regulatory interpretation." *Id.* ACP's reliance on *Itochu Building Products v. United States,* 733 F.3d 1140 (Fed. Cir. 2013) is similarly misplaced. Supp. Br. at 2. In *Itochu,* the Court considered whether the exhaustion doctrine was correctly applied to preclude appellant's argument. 733 F.3d at 1145-46. Although the Court explained that "[r]equiring exhaustion may also be inappropriate where the issue for the court is a 'pure question of law,'" this was not the basis of the Court's ruling. *Id.* at 1146. Either way, determining whether ACP's challenge here raises a legal question of regulatory interpretation has nothing to do with the considerations underlying the exhaustion doctrine.

ACP defines *particular product* as "specifically described," "well-defined" and having a "sufficient description to allow the public to easily identify the product at issue." Supp. Br. at 1, 3. These definitions are not necessarily inconsistent with 19 C.F.R. § 351.225(c). Section (c)(2)(i) requires a "*detailed description* of the product and its uses" and identifies six categories of information about the product to be included. § 351.225(c)(2)(i). The public summary required by (c)(2)(ii) must include a product's physical characteristics; its country of origin, production, and export; and certain classification information. § 351.225(c)(2)(ii). Commerce explains that the public summary is required *to allow the public to easily identify the product*. *Regulations To Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws,* 85 Fed. Reg. 49,472, 49,477 (Dep't of Commerce Aug. 13, 2020) *(2020 Proposed Rule)* ("It is Commerce's intent that the description {} will reflect the 'particular product' at issue – thereby enabling the public and CBP to more easily identify the product at issue."). Finally, in adopting the 2021 amendments to § 351.225, Commerce explained that requiring specific information in the application, as laid out in subsection 351.225(c), responded to "various concerns . . . that 'scope ruling requests do not always include the requisite *sufficient description* and supporting information necessary for Commerce to complete an analysis.'" *2021 Final Rule,* 86 Fed. Reg. at 52313.

Commerce understood the information necessary to determine initiation, and promulgated regulations to that effect. The regulations identify what a "well-defined product with a sufficient description" looks like. ACP challenges Commerce's *application* of those regulations – specifically, § 351.225(c) – to the petitioner's application. Such a challenge is reviewed for substantial evidence. That analysis is fully contained in the parties' Rule 56 briefs. *See* ECF No. 40 at 9-13; *and see* Final Scope Ruling at 8-11.

4

For example, ACP argues that Commerce's interpretation of *particular product* "utterly lacked a detailed description of the product," and instead included a "broad non-descript category of products based on a non-exhaustive list of production scenarios." Supp. Br. at 4. But Commerce's "interpretation" here simply reflects Commerce's application of the requirements in § 351.225(c)(2)(i) to the facts of the scope request before it. ACP may disagree with Commerce, but that does not transform ACP's challenge into one of regulatory interpretation. The possibility of disagreement is contemplated by the regulations, which permit an interested party to submit comments and factual information to rebut, clarify, or correct information in the application. *See* § 351.225(f)(2). Here, Commerce solicited comments on the illustrative production scenarios outlined in the Initiation Memo and invited parties to identify other specific production scenarios. *See* Initiation Memo at 3-4 (P.R. 41). No party responded by arguing that the scenarios were "vague or unclear." *See* Final Scope Ruling at 10 (P.R. 98).

Finally, ACP points to the preliminary scope ruling, where Commerce lacked sufficient information to complete its country-of-origin analysis, as proof that Commerce could not have lawfully initiated a scope inquiry that included two of the production scenarios. Supp. Br. at 4-5. This argument confuses initiation with substantial transformation. Initiating on a scope request is governed by § 351.225(c)(2). The inquiry that follows to determine whether the product is in scope might include a substantial transformation analysis under § 351.225(j)(1). The standards for initiation and substantial transformation are different. *See* § 351.225(j)(1)(i)-(vi) (considering the intended end-use of the downstream product and the cost of production of further processing in the third country). ACP cites Commerce's need for more information as part of its substantial transformation analysis, but seeking further information from the parties after initiation of the scope inquiry is contemplated by the regulations. *See, e.g.,* §

351.225(e)(2)(i) (contemplating that the Secretary may issue questionnaires to request information). The need for more information during the inquiry has no bearing on Commerce's determination to initiate.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

s/Tara K. Hogan by s/ Claudia Burke
TARA K. HOGAN
Assistant Director

s/ Margaret J. Jantzen
MARGARET J. JANTZEN
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480, Ben Franklin Station
Washington, D.C. 20004
Telephone: (202) 353-7994
E-mail: Margaret.j.jantzen@usdoj.gov

*Attorneys for Defendant*

OF COUNSEL

HEATHER HOLMAN
Attorney
Office of the Chief Counsel
  for Trade Enforcement and Compliance
United States Department of Commerce