UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HONORABLE LEO M. GORDON, SENIOR JUDGE

| | |
|---|---|
| ACPRODUCTS, INC., ACPI WOOD PRODUCTS, LLC, CABINETWORKS GROUP MICHIGAN, LLC, CABINETWORKS GROUP MIDDLEFIELD, LLC, MASTER WOODCRAFT CABINETRY L.L.C., and SMART, LLC,<br><br>        *Plaintiffs,*<br><br>v.<br><br>UNITED STATES,<br><br>        *Defendant,*<br><br>   and<br><br>AMERICAN KITCHEN CABINET ALLIANCE,<br><br>        *Defendant-Intervenor.* | Court Nos. 24-00155, 24-00156 |

## THE AMERICAN KITCHEN CABINET ALLIANCE'S RESPONSE TO PLAINTIFFS' SUPPLEMENTAL BRIEF

Luke A. Meisner
Alessandra A. Palazzolo
SCHAGRIN ASSOCIATES
900 Seventh Street, NW,
Suite 500
Washington, DC 20001
(202) 223-1700
*Counsel for the American Kitchen Cabinet Alliance*

Dated: February 27, 2026

**TABLE OF CONTENTS**

ARGUMENT ................................................................................................................................. 1

    I.    The Present Judicial Review Does Not Require a Legal Interpretation of the Phrase "Particular Product" ............................................................................................................ 1

    II.   Commerce's Initiation of the Scope Inquiry Was Consistent With Its Regulations and Prior Practice ........................................................................................................................ 2

i

# TABLE OF AUTHORITIES

**Cases**

*AA Metals, Inc. v. United States*, No. 22-00051, 2023 WL 2446767 (Ct. Int'l Trade Mar. 10, 2023) .................................................................................................................................. 3, 4
*Asia Wheel Co. v. United States*, 762 F. Supp. 3d 1316 (Ct. Int'l Trade 2025) .......................... 3, 4
*Bell Supply Co., LLC v. United States*, 83 F. Supp. 3d 1311 (Ct. Int'l Trade 2015) ................... 3, 4
*Bell Supply Company, LLC v. United States*, 393 F. Supp. 3d 1229 (Ct. Int'l Trade 2019) ........... 3
*Bell Supply Company, LLC v. United States*, 888 F.3d 1222 (Fed. Circ. 2018) ............................. 3
*Fabuwood Cabinetry Corp. v. United States*, 469 F. Supp. 3d. 1373 (Ct. Int'l Trade 2020) .......... 5
*Murphy v. Matheson*, 742 F.2d 564 (10th Cir. 1984) ..................................................................... 5
*Saha Thai Steel Pipe Pub. Co. Ltd. v. United States*, 101 F.4th 1310 (Fed. Cir. 2024) .................. 2
*Velasquez v. Benov*, 518 Fed. Appx. 555 (9th Cir. 2013) ............................................................... 5

**Regulations**

19 C.F.R. § 351.225(a) ..................................................................................................................... 1
19 C.F.R. § 351.225(c)(2) ................................................................................................................ 1

Defendant-Intervenor the American Kitchen Cabinet Alliance ("AKCA") agrees with the Defendant that Plaintiffs incorrectly argue that the interpretation of the phrase "particular product" in 19 C.F.R. § 351.225(a) poses a legal question. The Department of Commerce ("Commerce") properly initiated the scope inquiry at issue on the basis of product descriptions that were sufficiently detailed to satisfy the relevant requirements of 19 C.F.R. § 351.225(c), and Commerce's inquiry initiation here is consistent with prior scope inquiries based on production processes in third countries.

## ARGUMENT

### I. The Present Judicial Review Does Not Require a Legal Interpretation of the Phrase "Particular Product"

The issue here is not, as Plaintiffs argue, a legal question of how to interpret the phrase "particular product" under 19 C.F.R. § 351.225(a), but a factual question of whether the products in the AKCA's request for a scope inquiry were described in sufficient detail for Commerce to initiate a scope inquiry. *See* Def.'s Resp. to Pl.'s Supp. Br., ECF No. 70 at 2-3. The information requested in 19 C.F.R. § 351.225(c)(2)(i) is for a "detailed description of the product and its uses," including "physical characteristics" and "{a} description of the parts, materials, and the production process employed in the production of the product." 19 C.F.R. § 351.225(c)(2)(i). In initiating this scope inquiry, Commerce properly found that the AKCA's description of the products at issue was sufficiently detailed to satisfy the regulation.

To the extent that the phrase "particular product" as used in the introduction to 19 C.F.R. § 351.225 is relevant here, it simply reiterates the need for a "detailed description" outlined later in this regulation. *See* 19 C.F.R. § 351.225(a) and § 351.225(c)(2)(i). In their supplemental brief, Plaintiffs now explain that "the dictionary definition of 'particular' is 'of, relating to, or concerned with details.'" Pl.'s Supp. Br., ECF No. 69 at 3 (citing *Particular*, Merriam-Webster,

1

https://www.merriam-webster.com/dictionary/particular (last visited Feb. 9, 2026)). As Defendant-Intervenor previously argued, this is exactly what Commerce's regulations require: a detailed description of the merchandise that will allow identification of the product. The regulations did not require the AKCA to point to a single, specific cabinet and ask Commerce to make a scope ruling on that specific cabinet. *See* AKCA's Resp. Br., ECF No. 42 at 17-18.

II.     **Commerce's Initiation of the Scope Inquiry Was Consistent With Its Regulations and Prior Practice**

Commerce's treatment of the level of detailed description needed to initiate a scope inquiry in this case is consistent with its past approach, affirmed by the courts, that the product at issue may be a category of products defined by a shared physical characteristic. *See Saha Thai Steel Pipe Pub. Co. Ltd. v. United States*, 101 F.4th 1310, 1319 (Fed. Cir. 2024) (affirming that a scope applied to a category of pipes that were dual-stenciled as meeting the specifications for both standard pipe and line pipe). Here, the relevant physical characteristic is that certain cabinet components left China in an unfinished state and were completed by further processing in Malaysia and Vietnam. Commerce properly found that this characteristic was sufficiently described in Defendant-Intervenor's scope inquiry request and response to Commerce's supplemental questionnaire. Indeed, contrary to Plaintiffs' argument that the description was not sufficient to allow the public to identify the product at issue, Commerce stated in its final scope determination that, among the "numerous submissions from interested parties" that Commerce received in response to its request for comments on the scope ruling application, none expressed any concerns with the level of detail in the AKCA's description of the production scenarios:

> Notably, no party argued that the production scenarios were vague or unclear. Instead, most parties, based on the production scenarios provided by the petitioner, claimed not to source wooden cabinets, components, or component parts from China, while other parties argued even though they had sourced such items from China, these items should not be considered covered by the scope of the *Orders* for various reasons.

2

Commerce's Final Scope Ruling Memo for Malaysia (July 10, 2024) at 10, (P.R. 74).

Plaintiffs also argue that Commerce may not "initiate a scope proceeding based on a broad description and a non-exhaustive list of production scenarios." Pl.'s Supp. Br., ECF No. 69 at 4-5. This plainly is not the case, as Commerce has previously initiated and conducted scope inquiries based on production process scenarios that take place in a third country, and such inquiries have been upheld by the courts. *See Bell Supply Co., LLC v. United States*, 83 F. Supp. 3d 1311, 1330 (Ct. Int'l Trade 2015); *Asia Wheel Co. v. United States*, 762 F. Supp. 3d 1316, 1330 (Ct. Int'l Trade 2025); *AA Metals, Inc. v. United States*, No. 22-00051, 2023 WL 2446767, at *1 (Ct. Int'l Trade Mar. 10, 2023).

In *Bell Supply*, Commerce considered whether unfinished oil country tubular goods ("OCTG") from China, finished in a third country, were covered by the antidumping ("AD") and countervailing ("CVD") orders on OCTG from China. *Bell Supply*, 83 F. Supp. at 1318. In doing so, Commerce conducted a substantial transformation analysis and determined that "seamless unfinished OCTG manufactured in the PRC and finished in third countries is within the scope of the Orders." *Id.* On appeal, the Court of Appeals for the Federal Circuit ("Federal Circuit") affirmed that "Commerce may rely on the substantial transformation analysis to determine whether the imported OCTG can be considered from China." *Bell Supply Company, LLC v. United States*, 888 F.3d 1222, 1231 (Fed. Circ. 2018); *see also Bell Supply Company, LLC v. United States*, 393 F. Supp. 3d 1229, 1233 (Ct. Int'l Trade 2019) (sustaining remand determination in which Commerce concluded, based on substantial transformation analysis, that unfinished OCTG from China finished in third countries was covered by the orders).

The present case is similar to *Bell Supply*. First, both inquiries focused on certain unfinished merchandise from China that undergoes further processing in third countries; second,

3

for both inquiries, Commerce applied a substantial transformation analysis to determine whether the third country processing resulted in a different country of origin that removed the finished merchandise from the scope of the orders on merchandise from China. Indeed, there was even *less* detail in the product definition for *Bell Supply* than at issue here, as petitioners in *Bell Supply* had asked for a scope ruling on "unfinished {OCTG} (including green tubes) produced in the PRC, regardless of where the finishing of such OCTG takes place." *Bell Supply*, 83 F. Supp. at 1314. As the scope inquiry in *Bell Supply* was upheld by the Court of Appeals for the Federal Circuit and the Court of International Trade ("CIT"), the present inquiry should also be upheld by the CIT.

In *Asia Wheel Co.*, the CIT upheld Commerce's scope ruling that steel wheels manufactured in Thailand from Chinese-origin discs and Thai-origin rims were within the scope of AD/CVD orders on certain steel wheels from China that "includes rims and discs that have been further processed in a third country." *Asia Wheel Co.*, 762 F. Supp. 3d at 1325-26. In other words, the relevant characteristic for the product in the scope inquiry underlying *Asia Wheel Co.* was the production scenario that the merchandise underwent in a third country, *i.e.*, assembly in a third country from Chinese- and third country-origin inputs.

In *AA Metals*, Commerce initiated a scope inquiry on a covered merchandise request from Customs and Border Protection based on two production scenarios for Chinese-origin aluminum sheet which underwent minor further processing in Turkey. *AA Metals*, 2023 WL 2446767 at *3. Commerce ultimately found that Scenario 2 merchandise was within the scope, but not Scenario 1 merchandise. *Id.* The CIT affirmed Commerce's determination. *Id.* at *1. Essentially, this is the same situation as the underlying scope inquiry here: Commerce considered whether Chinese-origin merchandise that underwent described processing or production

4

scenarios in a third country fell within the scope of an order, and found that certain production scenarios resulted in merchandise within the scope of the order and certain scenarios resulted in merchandise outside of the scope of the order.

Plaintiffs make much ado about nothing when they complain that the list of production scenarios was inadequate because it was "non-exhaustive." As an initial matter, that argument is moot, because Commerce only made final determinations with respect to the four production scenarios that were on the list. Moreover, a primary purpose of requiring a detailed description in a scope ruling application is to provide adequate notice of the merchandise at issue to the public. *See, e.g., Fabuwood Cabinetry Corp. v. United States*, 469 F. Supp. 3d. 1373, 1383 (Ct. Int'l Trade 2020). The fact that the list of production scenarios was non-exhaustive does not mean it was vague and failed to provide adequate notice. *See, e.g., Velasquez v. Benov*, 518 Fed. Appx. 555, 555 (9th Cir. 2013) (rejecting claim that provision was vague because it gave "fair notice of what conduct is prohibited by including a non-exhaustive list of proscribed acts"); *Murphy v. Matheson*, 742 F.2d 564 (10th Cir. 1984) (holding that a provision giving non-exhaustive list of prohibited items enhanced, rather than diminished, notice of proscribed conduct and thus did not render statute unconstitutionally vague). Here, the list of production scenarios that the AKCA provided in its supplemental response enhanced the description of the merchandise at issue and thus provided an adequate basis for initiating the scope inquiry.

Commerce's initiation of these scope inquiries satisfied the requirements for a detailed description of the merchandise in 19 C.F.R. § 351.225(c) and is thus in accordance with law and consistent with Commerce's treatment in previous scope inquiries upheld by this Court and the Federal Circuit.

5

                                      Respectfully submitted,

                                      /s/ Luke A. Meisner
                                      Luke A. Meisner
                                      Alessandra A. Palazzolo
                                      SCHAGRIN ASSOCIATES
                                      900 Seventh Street, NW
                                      Suite 500
                                      Washington, DC 20001
                                      (202) 223-1700
                                      *Counsel for the American Kitchen*
                                      *Cabinet Alliance*

Dated: February 27, 2026

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing supplemental brief complies with the Court's order of February 6, 2026 (ECF No. 68), limiting defendant-intervenor's supplemental brief to a maximum of five pages of text.

                                              Respectfully submitted,

/s/ Luke A. Meisner
Luke A. Meisner
Alessandra A. Palazzolo
SCHAGRIN ASSOCIATES
900 Seventh Street, NW
Suite 500
Washington, DC 20001
(202) 223-1700
*Counsel for the American Kitchen Cabinet Alliance*

Dated: February 27, 2026