Slip Op. 26-39

# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| ACPRODUCTS, INC., ACPI WOOD PRODUCTS, LLC, CABINETWORKS GROUP MICHIGAN, LLC, CABINETWORKS GROUP MIDDLEFIELD, LLC, MASTER WOODCRAFT CABINETRY LLC, and SMART, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> AMERICAN KITCHEN CABINET ALLIANCE, <br><br> Defendant-Intervenor. | Before: Leo M. Gordon, Judge <br><br> Court No. 24-00155 |

## OPINION

[Sustaining Commerce's final scope determination for the antidumping and countervailing duty orders covering wooden cabinets and vanities and components thereof from the People's Republic of China with respect to further processing in Malaysia.]

Dated: April 21, 2026

Sarah M. Wyss, Mowry & Grimson, PLLC of Washington, D.C., argued for Plaintiffs ACProducts, Inc. ACPI Wood Products, LLC, Cabinetworks Group Michigan, LLC, Cabinetworks Group Middlefield, LLC, Master Woodcraft Cabinetry LLC, and Smart, LLC. On the supplemental brief with her was Yixin Li. On the opening brief and reply was William F. Marshall, Sandler, Travis & Rosenberg P.A. of Washington, D.C.

Margaret J. Jantzen, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., argued for Defendant United States. On the briefs were Brett A. Shumate, Assistant Attorney General, Patricia M. McCarthy, Director, and Tara K. Hogan, Assistant Director. Of counsel was Heather Holman, Office

Court No. 24-00155                                                    Page 2

of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, D.C.

Luke A Meisner, Schagrin Associates of Washington, D.C., argued for Defendant-Intervenor American Kitchen Cabinet Alliance.

Gordon, Judge: This matter involves a challenge by Plaintiffs ACProducts, Inc., ACPI Wood Products, LLC, Cabinetworks Group Michigan, LLC, Cabinetworks Group Middlefield, LLC, Master Woodcraft Cabinetry LLC, and Smart, LLC (collectively, "Plaintiffs") to the U.S. Department of Commerce's ("Commerce") final scope determination as to the antidumping ("AD") and countervailing duty ("CVD") orders covering wooden cabinets and vanities ("WCV") and components thereof from the People's Republic of China. See Compl., ECF No. 9; Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China, 89 Fed. Reg. 58,110 (Dep't Commerce July 17, 2024) (Final Scope Determination, Certification Reqs., and Recission of Circumvention Inquiries on AD/CVD Orders) MPR[1] 231 ("Final Scope Determination"), which incorporated Commerce's Final Scope Ruling Memorandum on Certain Wooden Cabinets that Are Further Processed in Malaysia ("MY Ruling") MPR 229; see also Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China, 85 Fed. Reg. 22,126 (Apr. 21, 2020) ("AD Order"); Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China, 85 Fed. Reg. 22,134 (Apr. 21, 2020) ("CVD Order") (and together with AD Order,

---

[1] "MPR" refers to documents from the public record of the scope inquiry as to further processing in Malaysia, ECF Nos. 20-1 & 21-1. "MCR" refers to documents from the confidential record of the scope inquiry from Malaysia, ECF Nos. 20-2 & 21-2.

the "Orders").[2]  Specifically, Plaintiffs challenge the lawfulness of Commerce's initiation of the scope review underlying the MY Ruling, as well as whether Commerce's determinations in that Ruling were supported by substantial evidence.[3]

Before the court is Plaintiffs' motion for judgment on the agency record pursuant to USCIT Rule 56.2.  See Pls.' 56.2 Mot. for J. on the Agency R., ECF No. 36 ("Pls.' Mot."); see also Def.'s Resp. in Opp'n, ECF No. 40 ("Def.'s Resp."); Def.-Intervenor American Kitchen Cabinet Alliance ("AKCA") Resp. in Opp'n, ECF No. 41 ("AKCA Resp."); Pls.' Reply, ECF No 43.  The court held oral argument on February 4, 2026.  See Oral Arg., ECF No. 67.  Thereafter, the parties filed supplemental briefs providing clarification as to the appropriate framework for considering Plaintiffs' challenge to the lawfulness of the initiation of the underlying scope inquiry.   See Pls.' Suppl. Br., ECF No. 69; Def.'s Suppl. Br., ECF No. 70; AKCA Suppl. Br., ECF No. 71.  For the reasons set forth below, the court will deny Plaintiffs' motion for judgment on the agency record.

---

[2] In a companion opinion presenting nearly identical issues and arguments, the court reaches the same outcome with respect to challenges to Commerce's scope findings as to WCV and WCV components undergoing further processing in Vietnam.  See Slip Op. No. 26-40, Court No. 24-00156.

[3] Plaintiffs initially also challenged "Commerce's country-wide certification regime."  See Pls.' Mot. at 51–53; see also Def.'s Resp. at 27–29; AKCA Resp. at 36–39.  Subsequently, at oral argument, Plaintiffs' counsel confirmed that Plaintiffs were withdrawing all arguments as to this issue.  See Oral Arg. at 8:04–8:35.  Accordingly, the court does not address Commerce's certification requirements.

Court No. 24-00155                                                        Page 4

### I. Standard of Review

The court sustains Commerce's "determinations, findings, or conclusions" unless they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law."  19 U.S.C § 1516a(b)(1)(B)(i).  More specifically, when reviewing agency determinations, findings, or conclusions for substantial evidence, the court assesses whether the agency action is reasonable given the record as a whole.  Nippon Steel Corp. v. United States, 458 F.3d 1345, 1350–51 (Fed. Cir. 2006).  Substantial evidence has been described as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  DuPont Teijin Films USA v. United States, 407 F.3d 1211, 1215 (Fed. Cir. 2005) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  Substantial evidence also has been described as "something less than the weight of evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence."  Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966).

Fundamentally, though, "substantial evidence" is best understood as a word formula connoting a reasonableness review. 4 Charles H. Koch, Jr., Administrative Law and Practice § 9.24 (3d ed. 2026).  Therefore, when addressing a substantial evidence issue raised by a party, the court analyzes whether the challenged agency action "was reasonable given the circumstances presented by the whole record."  8A West's Fed. Forms, National Courts § 3.6 (5th ed. 2025).

Separately, when reviewing challenges to Commerce's interpretation of its own regulations, the court follows Kisor v. Wilkie, 588 U.S. 558 (2019), which holds that courts

should not afford deference to the agency unless the regulation is genuinely ambiguous. See also 4 Charles H. Koch, Jr., Administrative Law and Practice § 11.38 (discussing uncertainty as to whether judicial deference to agency interpretation of regulations, as set forth as standard in Auer v. Robbins, 519 U.S. 452 (1997) and preserved in Kisor, still survives in light of Loper Bright Enters. v. Raimondo, 603 U.S. 369 (2024)).

## II. Background

On April 22, 2022, AKCA, the petitioner in the underlying proceeding, requested that Commerce concurrently initiate a scope inquiry and a country-wide circumvention inquiry to determine whether imports of WCV that were produced using WCV components manufactured in China and subsequently undergo further processing in Malaysia are covered by the Orders. See Pls.' Mot. at 13 (citing Letter from AKCA, Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China – Scope Ruling Application and Request for Circumvention Inquiry Concerning Imports of Wooden Cabinets and Vanities and Components Thereof from Malaysia (Apr. 22, 2022), MCR 1–16, MPR 1–9). A few weeks later, after considering AKCA's request, Commerce sought clarification as to the products at issue before initiating the scope proceeding. See Pls.' Mot. at 14 (citing Letter from Dep't of Commerce to AKCA, Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China – Scope Ruling Application and Request for Circumvention Inquiry Concerning Imports of Wooden Cabinets and Vanities and Components Thereof from Malaysia: Questionnaire (May 13, 2022), MPR 31. "In response to Commerce's request, the petitioner provided four illustrative production scenarios that involved varying degrees of production in China and

the third country.  Further, the petitioner explained that these scenarios encompass any and all merchandise covered by the scope of the Orders as well as language which preserves Chinese country of origin status for wooden cabinet components that undergo certain processing/finishing in third countries."  See MY Ruling at 9–10. After receiving responses to its follow-up questions, Commerce determined that it had enough information to initiate a "country-wide scope inquiry into whether the WCV and components identified in the petitioner's scope inquiry requests are subject to the Orders." See Pls.' Mot. at 16 (citing Memorandum, Scope Inquiry of Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China, (May 24, 2022), MPR 41.[4]

The four scenarios Commerce adopted for its scope inquiry are:

> Scenario 1: finished wooden doors, drawer faces, and frames produced in China are combined in Malaysia with wooden cabinet boxes and drawer boxes produced in Malaysia;
>
> Scenario 2: semifinished wooden doors, drawer faces, and frames produced in China are further processed in Malaysia and then combined in Malaysia with wooden cabinet boxes and drawer boxes produced in Malaysia;
>
> Scenario 3: semifinished parts of wooden cabinet and vanity doors, drawer faces, and frames (including the rails, stiles, and panels) are produced in China and are further processed in Malaysia and then combined in Malaysia with wooden cabinet boxes and drawer boxes produced in Malaysia; and
>
> Scenario 4: finished wooden toe kicks produced in China are combined in Malaysia with all other components necessary to build a complete wooden cabinet that are started and finished in Malaysia.

---

[4] Plaintiffs highlight that Commerce also initiated two country-wide circumvention proceedings shortly after its scope inquiry initiation.  Pls.' Mot. at 16.

MY Ruling at 1 n.1.  Commerce determined that "Scenarios 1, 2, and 3 wooden cabinets and vanities and components thereof (wooden cabinets) produced in the People's Republic of China, and combined in Malaysia with wooden cabinet wooden component parts produced in Malaysia, and exported to the United States, are Chinese in origin and, thus, covered by the scope of the [Orders] on wooden cabinets from China." See MY Ruling at 1.  Commerce also found that "for Scenario 4 wooden cabinets, containing a wooden toe kick produced in China and all other wooden parts produced in Malaysia, are third country in origin and, thus, not covered by the scope of the Orders." MY Ruling at 1.

Plaintiffs submitted comments challenging Commerce's MY Ruling, arguing that the initiation of the scope inquiry was unlawful and unsupported by substantial evidence given the lack of specificity in identifying a particular product for the scope proceeding. In responding to Plaintiffs' arguments, Commerce noted that at the time it solicited comments regarding initiation on the scenarios provided in the petitioners' supplemental questionnaire response, "no party argued that the production scenarios were vague or unclear."  See MY Ruling at 10; see also Oral Arg. at 46:20–49:04 (defense counsel discussing with court Commerce's invitation to comment on scope inquiry scenarios and fact that Plaintiffs did not raise vagueness issue in any comments).  Commerce thus rejected Plaintiffs' arguments that the production scenarios provided by AKCA were too vague to justify initiation of the scope inquiry.

Instead, Commerce found, "based on the nature of the scope language and information submitted by interested parties, … that the petitioner used a variety of

reasonably available information to sufficiently define the products at issue in these scope inquiries." MY Ruling at 10.  Commerce further explained that "[w]hile the production scenarios cover a range of manufacturing processes in China and a third country, it would be unreasonable (and inconsistent with 19 CFR 351.225(c)(2)) to require that the petitioner further limit its scope ruling request to certain individual production scenarios given that detailed firsthand knowledge of the production experiences of Malaysian cabinet producers is not information that is reasonably available to it." MY Ruling at 10-11 (also finding that "petitioner adequately described the production scenarios at issue using reasonably available evidence, which included affidavits, EAPA investigation determinations, trade data, and evidence of the types of wooden cabinets and components produced by Chinese companies").

After Commerce rejected Plaintiffs' arguments that the scope review was unlawfully initiated, the agency also considered and rejected Plaintiffs' arguments that the findings and determinations in the scope inquiry were unsupported by substantial evidence. See MY Ruling at 10.  After Commerce issued its Final Scope Determination, Plaintiffs brought this action.

### III. Discussion

Plaintiffs' challenge to the Final Scope Determination appears to consist of the following arguments: (1) Commerce's initiation of the scope ruling proceeding was unlawful, as Commerce misinterpreted its regulation governing the initiation of scope inquiries, 19 C.F.R. § 351.225; (2) alternatively, Commerce's initiation of the scope ruling proceeding was unsupported by substantial evidence; and (3) Commerce's findings and

Court No. 24-00155                                                                    Page 9

conclusions in the MY Ruling were unsupported by substantial evidence.  See Pls.' Mot.;

Pls.' Suppl. Br.

### A. Legal Challenge to Initiation

The court begins with Plaintiffs' legal challenge to the initiation of the underlying

scope inquiry, as the court need not reach the substantial evidence challenges if it agrees

with Plaintiffs on the legal challenge.  See Oral Arg. at 1:11:29–1:11:52 (Plaintiffs' counsel

agreeing that court need not reach substantial evidence issues if it concludes that

Plaintiffs prevail on challenge to legality of initiation).

The regulation at issue here is 19 C.F.R. § 351.225, and Plaintiffs ask the court to

focus the first sentence in its introductory subpart, which provides:

> Introduction.  Questions sometimes arise as to whether a
> particular product is covered by the scope of an antidumping
> or countervailing duty order. Such questions may arise for a
> variety of reasons given that the description of the
> merchandise subject to the scope is written in general terms.
> The Secretary will initiate and conduct a scope inquiry and
> issue a scope ruling to determine whether or not a product is
> covered by the scope of an order at the request of an
> interested party or on the Secretary's initiative. A scope ruling
> that a product is covered by the scope of an order is a
> determination that the product has always been covered by
> the scope of that order. This section contains rules and
> procedures regarding scope rulings, including scope ruling
> applications, scope inquiries, and standards used in
> determining whether a product is covered by the scope of an
> order. Unless otherwise specified, the procedures as
> described in subpart C of this part (§§ 351.301 through
> 351.308 and §§ 351.312 through 351.313) apply to this
> section.

19 C.F.R. § 351.225(a).  The remaining subparts of the regulation describe the necessary

requirements for an interested party to seek commencement of a scope inquiry via an

application, as well as the procedures for initiating and conducting any resulting scope inquiry.  See 19 C.F.R. §§ 351.225(c)–(q).

Plaintiffs frame their legal argument by noting that "[w]hen reviewing Commerce's interpretation of its own regulations, the court follows Kisor v. Wilkie, 588 U.S. 558, 559 (2019), which holds that courts should not afford deference to the agency unless the regulation is genuinely ambiguous."  Pls.' Suppl. Br. at 3.  Plaintiffs also maintain that "[w]hen a term is not defined in the regulations, the Court relies on dictionary definitions to discern the common meaning of the term."  Id. (citing Kalle USA, Inc. v. United States, 923 F.3d 991, 995 (Fed. Cir. 2019)).  Plaintiffs further argue that "the term 'a particular product' in the regulations unambiguously means a well-defined product with a sufficient description to allow the public to easily identify the product at issue," and maintain that Commerce's "interpretation" of § 351.225 "utterly lacked a detailed description of the product."  Id. at 3–4.

Defendant disagrees, arguing that Plaintiffs are trying to bring a challenge to a "legal interpretation" that simply did not occur.  Rather, Defendant maintains that Commerce followed the plain language of § 351.225 and that Plaintiffs' challenge focuses on the reasonableness of the agency's application of § 351.225, not its interpretation. See Def.'s Suppl. Br. at 1–3.  Defendant further explains why Plaintiffs' arguments as to the meaning of "particular product" do not create a legal challenge.  See id. at 2–5 (explaining that term "particular product" as used in § 351.225(a) can be understood by context of § 351.225(c) that provides specific guidelines for identifying product at issue).  Defendant-Intervenor concurs, contending that Plaintiffs have only brought

substantial evidence arguments, not legal challenges.  See AKCA Suppl. Br. at 1

("The issue here is not, as Plaintiffs argue, a legal question of how to interpret the phrase

'particular product' under 19 C.F.R. § 351.225(a), but a factual question of whether

the products in the AKCA's request for a scope inquiry were described in sufficient detail

for Commerce to initiate a scope inquiry.").

Starting with the plain language of the regulation, the parties dispute the meaning

of the term "particular" as it appears in § 351.225(a).  See Pls.' Mot. at 19, 29–32; AKCA

Resp. at 17–19 ("Plaintiffs attempt to confine the term 'particular' in the regulations

to mean 'of, relating to, or being a single person or thing,' but the term also means

'of, relating to, or concerned with details.'" (internal citations omitted)); Pls.' Reply at 4;

see also Def.'s Suppl. Br.; Pls.' Suppl. Br.; AKCA Suppl. Br.  Defendant maintains that

the term "particular product" in § 351.225(a) requires consideration of subsequent guiding

language in the regulation consisting of "two limiting clauses: 'to the extent reasonably

available,' and 'as necessary.'"  Def.'s Resp. at 12 (quoting 19 C.F.R.

§ 351.225(c)(2)(i)(E)); see also AKCA Suppl. Br. at 1 (emphasizing "particular product"

reference in 19 C.F.R. § 351.225(a) must be understood in light of "detailed description"

requirement of § 351.225(c)(2)(i)).  Plaintiffs acknowledge the existence of § 351.225(c)

but generally disregard its contents in arguing that Commerce's "interpretation of the

phrase 'a particular product' utterly lacked a detailed description of the product." See Pls.'

Suppl. Br. at 4.

In sum, Plaintiffs seek to have the court focus on a two-word phrase in

the introductory subpart of a regulation over the remainder of the regulation's contents

that provides clarity and definitional context.  See Def.'s Suppl. Br. at 5 (explaining how Commerce's alleged "interpretation" of § 351.225(a) "simply reflects Commerce's application of the requirements in § 351.225(c)(2)(i) to the facts of the scope request before it").  The court agrees with Defendant that "Commerce understood the information necessary to determine initiation, and promulgated regulations to that effect. The regulations identify what a 'well-defined product with a sufficient description' looks like. [Plaintiffs challenge] Commerce's application of those regulations – specifically, § 351.225(c) – to the petitioner's application. Such a challenge is reviewed for substantial evidence."  Def.'s Suppl. Br. at 4; see also Oral Arg. at 24:15–29:19 (colloquy between Plaintiffs' counsel and court expressing concern that Plaintiffs' challenge focused on application rather than regulatory interpretation).

Plaintiffs also rely on Fabuwood Cabinetry Corp. v. United States, 44 CIT ___, 469 F. Supp. 3d 1373 (2020) ("Fabuwood") in support of the legal argument that Commerce erred in its interpretation of § 351.225(a).  See Pls.' Suppl. Br. at 5 (relying on Fabuwood for proposition that "[f]ar from simply a procedural error, Commerce's initiation based on a broad product description directly affected the lawfulness of its scope ruling"); see also MY Ruling at 8–11 (distinguishing Fabuwood and rejecting Plaintiffs' arguments relying on that decision as applicable to this proceeding); Pls.' Mot. at 30, 38 (responding to Commerce's distinguishing of Fabuwood).  In Fabuwood, the court observed that when initiating a scope inquiry, Commerce must address the "threshold question of whether the request was specific enough to provide an adequate basis for a scope ruling."  44 CIT at ___, 469 F. Supp. 3d at 1383.  In that matter, the court explained that:

Court No. 24-00155                                                                    Page 13

>Commerce acknowledged in a footnote that certain parties commented that "the request [was] deficient because it only generally describe[d] various alleged products, [did] not have complete or detailed information on any specific product as imported into the United States, and [was] insufficiently supported with actual evidence." Commerce, however, then concluded, without explanation, that the Amended Scope Ruling Request "provide[d] all requisite information reasonably available to Petitioner-Masterbrand, and provide[d] sufficient detail regarding the products at issue for Commerce to make a final scope ruling." The conclusory statement did not meet the "the obligation to address important factors raised by comments from petitioners and respondents."

Fabuwood, 44 CIT at ___, 469 F. Supp. 3d at 1383–84 (internal citations omitted).

Defendant explains that because "Commerce fully addressed the application's sufficiency at length: in the initiation memoranda, the preliminary scope ruling, and the final scope ruling[, this matter] is therefore distinguishable from Fabuwood, in which Commerce's analysis of objections to the inadequacy of the request was limited to a footnote." See Def.'s Resp. at 11. Defendant highlights that Commerce's decision in the underlying proceeding to issue a supplemental questionnaire to ensure adequate specificity further distinguishes this matter from Fabuwood, where Commerce summarily rejected interested parties' challenges to the adequacy of specificity in the scope request. Id. In addressing Defendant's explanation for why Fabuwood is not applicable here, Plaintiffs offer but a single sentence in reply: "[t]here can be no reconciliation between the regulatory requirements for a valid scope application and the request filed by AKCA, despite the Government's conclusory statements to the contrary." See Pls.' Reply at 4-5.

Court No. 24-00155                                                    Page 14

The court agrees with Commerce that Plaintiffs' reliance on <u>Fabuwood</u> is misplaced.  This is particularly true regarding Plaintiffs' attempt to rely on <u>Fabuwood</u> for its legal argument given that the <u>Fabuwood</u> opinion expressly premised its holding on the conclusion that "Commerce failed to show that it accepted the Amended Scope Ruling Request <u>based on substantial evidence</u>."  <u>See</u> <u>Fabuwood</u>, 469 F. Supp. 3d at 1383 (emphasis added); cf. Pls.' Suppl. Br. at 5 & n.1 (relying on <u>Fabuwood</u> in support of legal argument as well as insisting rescission as "only meaningful remedy" in this action).

Ultimately, for all of Plaintiffs' legal arguments purportedly challenging Commerce's regulatory interpretation, the court agrees with Defendant and AKCA that the heart of Plaintiffs' challenge to the <u>MY Ruling</u> is that of misapplication of the regulation, not misinterpretation.[5]  Accordingly, the court rejects Plaintiffs' contentions that Commerce misinterpreted the applicable law in this matter.

### B. Substantial Evidence Challenge to Initiation

If the court rejects Plaintiffs' legal argument, Plaintiffs nevertheless maintain that the initiation of the subject scope inquiry was unsupported by substantial evidence. <u>See</u> Pls.' Mot. at 40–50; Pls.' Reply at 6–7; <u>see also</u> Pls.' Suppl. Br. at 5.  Specifically, Plaintiffs argue that it was unreasonable for Commerce to initiate the scope inquiry on the basis of the information provided by AKCA because "AKCA failed to provide a

---

[5] It is particularly ironic that Plaintiffs cite "<u>Wind Tower Trade Coal. v. United States</u>, 49 CIT ___, 2025 Ct. Intl. Trade LEXIS 154 at *8 n. 5 (Dec. 2, 2025) (discussing misinterpretation and misapplication of the law)" in support of their position that they are making a legal challenge, given how that reference supports the conclusion that Plaintiffs' challenge is one of application as it requires consideration of factual elements.  <u>See</u> Pls.' Suppl. Br. at 1.

Court No. 24-00155                                                    Page 15

detailed description of a particular product" as required under 19 C.F.R. § 351.225(a) &

(c).  See Pls.' Mot. at 28–32.

Plaintiffs insist that, even after Commerce issued a supplemental questionnaire to

AKCA to identify a specific product for the requested scope inquiry, AKCA still failed to

submit information as required under the regulation.  Id. (arguing that AKCA's reliance on

"non-exhaustive" list of scenarios for hypothetical product production covering "any and

all merchandise" described cannot qualify as sufficiently specific under applicable

regulations).  Plaintiffs rely on Perfectus Aluminum, Inc. v. United States, 43 CIT ___,

391 F. Supp. 3d 1341 (2019) ("Perfectus"), aff'd, 836 F. App'x 883 (Fed. Cir. 2020), for

the proposition that Commerce may not conduct scope inquiries as to "purely hypothetical

product[s]."  See Pls.' Mot. at 29, 32 (quoting Commerce's statement in Perfectus that

"its practice is to 'not conduct hypothetical scope rulings on products that are not yet in

production,' and the agency 'will not issue a scope ruling or conduct a scope inquiry on a

purely hypothetical product'").[6]

To the contrary, Defendant and AKCA disagree with Plaintiffs, maintaining that

Commerce's initiation of the scope inquiry under § 351.225 was reasonable.  See Def.'s

Resp. at 7, 9–15; AKCA Resp. at 16–25.  Defendant highlights two key points: "[f]irst, the

product described by the scope ruling application is not hypothetical, because it is based

on a detailed description and evidence that merchandise produced under all four

---

[6] While Plaintiffs' motion makes some references to Commerce's past practice, Plaintiffs confirmed at oral argument that they were not contending that Commerce's acted in an arbitrary or capricious manner in light of Commerce's past practice.  See Oral Arg. at 38:15–40:29 (noting court's concern with variety of standards argued by Plaintiffs and confirming Plaintiffs' withdrawal of arguments regarding Commerce's past practice).

scenarios is currently being imported into the United States. Second, as Commerce found, the application was complete, and therefore warranted initiation under 19 C.F.R. § 351.225(d)(1)."  Def.'s Resp. at 9–10.  Defendant emphasizes that AKCA "proffered evidence describing changes in export percentages following the imposition of the orders, production practices of specific companies operating in Vietnam and Malaysia, and evidence collected by U.S. Customs and Border Protection (CBP) in the context of an Enforce and Protect Act (EAPA) proceeding[, and therefore] the production scenarios in this case are not hypothetical because there is record evidence demonstrating that such production scenarios exist."  Id. at 10 (internal citation omitted).

Defendant also argues that Plaintiffs' reliance on Perfectus is misplaced because the U.S. Court of Appeals for the Federal Circuit confirmed in that matter that Commerce's decision to initiate a scope inquiry did not involve a "hypothetical product," given that the record demonstrated the existence of products described in the scope inquiry request. Id. (arguing that similar conclusion should apply here "because there is evidence on the record that subject merchandise further processed in Vietnam and Malaysia exists and is being imported to the United States"); see also MY Ruling at 10–11 ("based on the nature of the scope language and information submitted by interested parties, we find that the petitioner used a variety of reasonably available information to sufficiently define the products at issue in these scope inquiries.  While the production scenarios cover a range of manufacturing processes in China and a third country, it would be unreasonable (and inconsistent with 19 CFR 351.225(c)(2)) to require that the petitioner further limit its scope ruling request to certain individual production scenarios given that detailed firsthand

knowledge of the production experiences of Malaysian cabinet producers is not information that is reasonably available to it. Given these circumstances, we find that the petitioner adequately described the production scenarios at issue using reasonably available evidence, which included affidavits, EAPA investigation determinations, trade data, and evidence of the types of wooden cabinets and components produced by Chinese companies").

Plaintiffs do not dispute the existence of such evidence in the record, but maintain, in a conclusory fashion, that the "product" identified by AKCA could not reasonably be defined by the overly broad and hypothetical descriptions provided, and that Commerce's initiation of a scope inquiry on such a basis was unreasonable. See Pls.' Reply at 4–5 (reiterating arguments against "hypothetical production scenarios" and citing Fabuwood). Given the totality of the circumstances, the court cannot agree with Plaintiffs that Commerce failed to identify a particular product in applying § 351.225.

Plaintiffs raise two other arguments as to the reasonableness of Commerce's scope inquiry initiation. First, that "analysis of the plain language of the scope of the Orders at issue here makes it clear that 'semifinished components' are not covered by the language of the scope and the scope cannot be reasonably interpreted to include it." Pls.' Mot. at 35; see also Pls.' Reply at 5–6. Second, even if the plain language of the Orders does not compel exclusion of "semifinished components," that is nevertheless the inescapable conclusion when the language of the Orders is read in light of the interpretive

aids listed in 19 C.F.R. § 351.225(k)(1)[7].  Pls.' Mot. at 33–36.  Neither argument is

persuasive.

### 1. Reasonableness of Including "Semifinished Components" in Scope

Plaintiffs argue that the MY Ruling "is inconsistent with the plain language of the

scope of the Orders," see Pls.' Mot. at 34–35, and that Commerce improperly concludes

that "out of scope merchandise could be transformed into in scope merchandise based

on third country processing."  Id. at 36–40.  They contend that Commerce's inclusion

of the term "semifinished" in its scope inquiry scenarios improperly expands the scope as

that term cannot be found in the Orders.  Id. at 34–35.  Similarly, Plaintiffs maintain that

by including "semifinished components" from China that receive further finishing

in Malaysia within the scope (as described in Scenarios 2 and 3), Commerce is improperly

expanding the scope of the Orders.  Id. at 34–40.

Defendant makes clear that "[b]ased on the orders' plain language, Commerce

found that the components of wooden cabinets produced in China in all four of the

production scenarios are subject to the orders."  Def.'s Resp. at 13.  Defendant explains

its view that "'semifinished components" are covered by the scope language because

---

[7] 19 C.F.R. § 351.225(k)(1) provides four "primary interpretive sources" that Commerce may consider in evaluating the scope of AD and CVD orders.  These are:
(A) The descriptions of the merchandise contained in the petition pertaining to the order at issue;
(B) The descriptions of the merchandise contained in the initial investigation pertaining to the order at issue;
(C) Previous or concurrent determinations of the Secretary, including prior scope rulings, memoranda, or clarifications pertaining to both the order at issue, as well as other orders with same or similar language as that of the order at issue; and
(D) Determinations of the Commission pertaining to the order at issue, including reports issued pursuant to the Commission's initial investigation.

"[t]hat phrase merely refers to components in which 'certain production processes occur in China, and others in the third country.'" Id. (quoting Commerce's Preliminary Scope Ruling at 20, MPR 135, MCR 43).  Defendant further highlights language in the Orders listing various components included with the scope, along with language confirming that further processing of components in a third country does not remove such components from the scope.  Id. at 13–14; see also AKCA Resp. at 25–30 (referencing language in Orders and petition demonstrating that Plaintiffs' preferred reading of scope language is untenable).  The court agrees with Defendant and AKCA that Commerce's inclusion of the term "semifinished components" in its scope inquiry did not result in an unreasonable expansion of the scope of the Orders.

## 2. Failure to Consult (k)(1) Sources

As to the argument regarding Commerce's failure to rely on the (k)(1) sources, Defendant and AKCA maintain that even accepting the premise that Commerce did not consider any of the (k)(1) factors, there is no reversible error, as the plain language of the Orders justified Commerce's scope inquiry including "semifinished components."  See id. at 30 ("because the plain language of the scope makes it clear that semifinished components are covered, there was no need to resort to the (k)(1) factors"); Def.'s Resp. at 14–15 (maintaining that "because Commerce found the scope language to unambiguously cover the inquiry merchandise, no further analysis of the (k)(1) sources was warranted").

Given that Plaintiffs never identified which, if any, of the (k)(1) sources Commerce should have considered, much less how that consideration would have altered the

Court No. 24-00155                                                                    Page 20

ultimate outcome, the court is unpersuaded that Commerce acted unreasonably in its consideration of the Orders' scope language, including the decision not to examine the (k)(1) factors. Accordingly, the court rejects Plaintiffs' arguments that Commerce's initiation of the scope inquiry here was unsupported by substantial evidence.

**C. Substantial Evidence Challenge to Substantial Transformation Analysis**

Finally, the court turns to Plaintiffs' arguments challenging the reasonableness of Commerce's application of 19 C.F.R. § 351.225(j), which provides seven factors for Commerce to consider in conducting its substantial transformation analysis. See 19 C.F.R. § 351.225(j)(1) (providing six factors of "(i) whether the processed downstream product is a different class or kind of merchandise than the upstream product; (ii) The physical characteristics (including chemical, dimensional, and technical characteristics) of the product; (iii) The intended end-use of the downstream product; (iv) The cost of production/value added of further processing in the third country or countries; (v) The nature and sophistication of processing in the third country or countries; and (vi) The level of investment in the third country or countries."); 19 C.F.R. § 351.226(j)(2) (providing additional factor that Commerce "may consider where the essential component of the product is produced or where the essential characteristics of the product are imparted."); see also Pls.' Mot. at 40–50 (challenging reasonableness of Commerce's findings under § 351.226(j)); Def.'s Resp. at 24–27 (discussion of Commerce's application of § 351.226(j) and support for its findings with substantial

evidence on record).   Commerce explained how it applied the analysis to the four

scenarios:

> There were seven factors examined in the substantial transformation analysis, including the essential characteristic. In this case, all seven prongs of the analysis were weighted equally. Qualitative analysis of the first prong (class or kind), the second prong (physical characteristics), and the third prong (intended end-use) all indicated that substantial transformation did not occur in the third country and China is the country of origin. Outcomes of our quantitative analysis are described in the Post-Preliminary Analysis calculations, where we calculated an average outcome of the items used to determine each prong of the analysis. We found that an average outcome above 50 percent for a prong of the analysis indicated that the product was substantially transformed in the third country.
>
> For Scenario 3, three factors – the COP/value added in the third country, nature and sophistication of processing in the third country, and level of investment in the third country – indicate that substantial transformation occurred in the third country. In contrast, the essential characteristic factor indicates that substantial transformation did not occur in the third country. Therefore, three of the seven prongs of the analysis indicate that substantial transformation occurred in the third country but four of the seven factors (the three qualitative prongs and the essential characteristics) indicate that substantial transformation did not occur in the third country. As such, most of the factors indicate that substantial transformation did not occur in the third country, and therefore, the country of origin is China. Further, no qualitative factors supported finding that Scenario 1 was substantially transformed in the third country, thus all seven prongs support the finding that China is the country of origin for Scenario 1. Only one qualitative factor supporting finding that substantial transformation occurred in the third country for Scenario 2; thus, six of the seven factors supporting finding China as the country of origin. Finally, all four quantitative factors of the analysis supported finding that substantial transformation occurred in the third country for Scenario 4, and the three qualitative factors of the analysis supported finding that China

Court No. 24-00155                                                                 Page 22

> was the country of origin; thus, four of seven factors of the analysis support finding that the merchandise is of third country origin.

MY Ruling at 24–25 (footnotes omitted).

Defendant highlights that "Commerce relied primarily on the scope ruling application and petitioner's new factual information following the preliminary scope ruling to complete its substantial transformation analysis."  Def.'s Resp. at 21.  There appears to be no dispute about the information upon which Commerce relied.  See id. (noting that for surrogate value data calculations, "Commerce used data from the first administrative review, regarding Qufu Xinyu Furniture Company (Qufu), and data submitted by the petitioner regarding a wooden cabinets producer (Company A, whose identity is confidential), and Wellborn Cabinet Inc. (Wellborn), a United States wooden cabinets producer."); Pls.' Reply at 6 ("This substantial record evidence consists of AKCA's scope ruling application and new factual information provided by AKCA.  Indeed, the record here is clear that Commerce relied on AKCA's new factual information to conduct its substantial transformation analysis for Scenarios 2 and 3 concerning the analysis of the cost of production; nature and sophistication of processing in the third country, level of investment in the third country, and the essential character of the components." (internal citations omitted)).

Rather than challenge Commerce's substantial transformation analysis on a factor-by-factor basis, Plaintiffs' argument generally deals with how Commerce weighed the factors.  See generally Pls.' Mot. at 40–50 (explaining Commerce's application of § 351.225(j) and challenges thereto).  Specifically, Plaintiffs contend that Commerce

overvalued the third factor and "unreasonably relied on the intended use of the finished products."  Pls.' Br. at 44, 49.  Commerce found that the intended end-use of the downstream product (i.e., complete wooden cabinets) does not change from when a company first produced the component in China until the packaging of the finished wooden cabinet in the third country.  MY Ruling at 14–15.  Commerce determined that this factor supports finding China as the country of origin for all scenarios because in each instance third country processing did not alter the physical characteristics of the complete wooden cabinet beyond subject merchandise.  Id.  Plaintiffs also argue that "the upstream products could have a different intended end-use, that is, being incorporated into a cabinet that does not function as permanently installed cabinetry and instead being incorporated into a free-standing piece of furniture, such as living room display cabinets, television cabinets, buffets and sideboards, sauce and soda stations."  Pls.' Br. at 49–50.  However, as Commerce made clear in its final scope ruling, the scope inquiry only covered WCV for permanent installation, and Commerce was thus not ruling on any scenario involving the use of wooden cabinet components to produce free-standing wooden cabinets.  MY Ruling at 15.  Accordingly, the court agrees with Defendants that Commerce's findings as to the downstream products' intended end-use in its substantial transformation analysis were reasonable.

Plaintiffs next argue that in conducting its substantial transformation analysis, Commerce "improperly prioritize[d] a single factor, contrary to the multi-factor balancing required by the regulations and court precedent."  Pls.' Mot. at 44 (citing Bell Supply Co. v. United States, 888 F.3d 1222 (Fed. Cir. 2018)).  In particular, Plaintiffs contend that

Commerce failed to equally weigh the seven factors and instead "focused almost exclusively on end use and essential components."  Id. at 45 (maintaining that Commerce's approach unreasonably discounted facts "that the value-add, nature and sophistication of the production, and the level of investment each supported a determination that a substantial transformation has resulted from the production performed under Scenarios 2 and 3.").   Further, Plaintiffs maintain that "Commerce determined that only three of the seven prongs support a determination that substantial transformation in Scenario 3 [sic], however, Commerce continued to determine that substantial transformation occurred in the third country."   Pls.' Br. at 47.   Plaintiffs' argument, however, does not accurately reflect the administrative record nor Commerce's findings.

First, Commerce clearly stated that "[t]here were seven factors examined in the substantial transformation analysis" and "all seven prongs of the analysis were weighted equally."  MY Ruling at 24. Second, to the extent Plaintiffs believe Commerce incorrectly weighed the factors, they seem to be confused.  In actuality, Commerce found in scenario 3 that "four of the seven factors … indicate that substantial transformation did not occur in the third country."  MY Ruling at 24 (emphasis added). Commerce thus determined that substantial transformation did not occur as a majority of the seven factors cut against such a finding.  To the extent that Plaintiffs seek to have the court reweigh those factors to arrive at a different conclusion than Commerce, Plaintiffs' hopes are misguided as that is not the role of judicial review.   See AKCA Resp. at 35 (citing Shanghai Tainai Bearing Co. v. United States, 47 CIT ___, ___, 658 F. Supp. 3d

1269, 1291 (2023) for proposition that "this Court may not reweigh the evidence and substitute its judgment for Commerce's")).

As for Plaintiffs' reliance on Bell Supply for the position that the MY Ruling must be remanded, that reliance too is misplaced.  The court agrees with Defendant's thorough explanation for why Bell Supply simply requires Commerce to conduct and explain its substantial transformation analysis in light of the totality of the circumstances, and nothing more.  See Def.'s Resp. at 20–21 (noting that Commerce engaged in precise analysis required by Bell Supply on remand in that matter, as well as in underlying rulings at issue here).  Given the above, the court does not agree with Plaintiffs that Commerce's substantial transformation analysis was unsupported by substantial evidence.

Turning from Commerce's application of the factors of the substantial transformation analysis to Plaintiffs' challenge to the information on the record, Plaintiffs maintain that Commerce's conclusions for Scenarios 1, 2, and 3 fail as they lack "more than a mere scintilla" of reliable record support and are therefore unsupported by substantial evidence. Pls.' Mot. at 42.  Specifically, Plaintiffs challenge the propriety of Commerce's determination using the surrogate data available on the record, suggesting that Commerce had an obligation to gather additional, more reliable surrogate data.  See, e.g., Pls.' Mot. at 42–44 (section entitled "Commerce's Analysis Lacks Substantial Evidence Due to Insufficient Record Support"); see also id. at 46–50 (arguing that "Commerce's Reliance on an Incomplete Record Undermines Its Determination"); Pls.' Reply at 7. Plaintiffs insist that the purported unreliability, and

therefore incompleteness, of Commerce's selected surrogate data "must result in a remand for Commerce to reconsider the complete record." Pls.' Reply at 7.

Plaintiffs maintain that Commerce unreasonably based its surrogate value calculations on "unreliable" data. See Pls.' Mot. at 46–49 (highlighting various arguments against use of Wellborn data selected by Commerce). Defendant, however, explains that all of Plaintiffs' concerns regarding the Wellborn data were directly addressed and rejected by Commerce in the underlying determinations. See Def.'s Resp. at 23–27 (referencing Commerce's engagement and rejection of Plaintiffs' arguments throughout MY Ruling). Defendant further highlights that in making its surrogate value calculations, Commerce must use the "best available information regarding the values of such factors in a market economy country." Id. at 24 (quoting 19 U.S.C. § 1677b(c)(1)(B)). In selecting the "best available information," Commerce "generally values those surrogate values which are 'publicly available, product specific, reflect a broad market average, and are contemporaneous with the period of review.'" Id. (quoting QVD Food Co. v. United States, 658 F.3d 1318, 1323 (Fed. Cir. 2011)). It is a long-standing principle that "Commerce has broad discretion to determine the best available information for an antidumping review, given that the term 'best available information' is not defined by statute." QVD Food Co., 658 F.3d at 1323. In exercising this discretion, Commerce is obligated to explain its decisions regarding surrogate data selection. See Downhole Pipe & Equip., L.P. v. United States, 776 F.3d 1369 (Fed. Cir. 2015) (Commerce "appropriately evaluated each of the alternatives on the record and provided an ample explanation as to why it should be rejected").

Here, Commerce selected the Wellborn data and explained why that choice reasonably constituted the "best available information" on the record for that surrogate value data.  See Def.'s Resp. at 23–27 (summarizing information available on record, Plaintiffs' challenges to Wellborn data, and Commerce's rejection of Plaintiffs' arguments in MY Ruling).  Given the above, the court rejects Plaintiffs' arguments that Commerce's determination was unreasonable in light of the alleged inadequacy of the record.  To do otherwise would impermissibly shift the burden of building the administrative record from the interested parties to Commerce.  See QVD Food Co., 658 F.3d at 1324 ("[T]he burden of creating an adequate record lies with [interested parties] and not with Commerce." (internal quotation marks omitted)); see also SolarWorld Americas, Inc. v. United States, 910 F.3d 1216, 1225 (Fed. Cir. 2018) (sustaining Commerce's surrogate value selection as best available information, in part because it was only surrogate value information on record).  That the court will not do.

Ultimately, none of Plaintiffs' arguments persuade the court that Commerce acted unlawfully or unreasonably in reaching its Final Scope Determination and the underlying MY Ruling.

### IV. Conclusion

For the foregoing reasons, the court denies Plaintiffs' motion for judgment on the agency record and sustains Commerce's <u>Final Scope Determination</u>.  Accordingly, the court will enter judgment in favor of Defendant.

       /s/ Leo M. Gordon      
Judge Leo M. Gordon

Dated: April 21, 2026
      New York, New York